UNITED STATED DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHESTER J. CHALUPOWSKI, Jr. and | ) | |
| MALGORZATA B. CHALUPOWSKI, | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 05-1138-GAO |
| | ) | |
| SHARON D. MEYERS, | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF SHARON D. MEYERS

I, Sharon D. Meyers, under oath, do hereby depose and state:

1. My name is Sharon D. Meyers and I am an attorney admitted to the bars of the Commonwealth of Massachusetts (1979), United States District Court of Massachusetts (1980), the First Circuit Court of Appeals (1980), United States District Court for Northern Virginia (1989), Fourth Circuit Court of Appeals (1990), United States District Court, Northern District of Illinois, pro hac vice (2002) and the State of Vermont (2002).

2. I am a member of good standing, and maintain a principle place of business at 30 Federal Street, Suite 200, Salem, Massachusetts.

3. On or about October 15, 2001, the Honorable John C. Stevens, Iii, Chief Justice of the Essex County Probate and Family Court issued an amended order, appointing me as Guardian Ad Litem "to represent the interest of Judith Chalupowski Vento in those proceedings now pending in this court in which she has an interest." See copy of Amended Order, attached hereto as Exhibit 1.

4. The purpose behind this appointment was not because Judith was mentally ill, incompetent or disabled, but because she had filed numerous motions and other papers with the court that were "scattered and at times incoherent." See Exhibit 1, paragraph 2.

5. The court found that "it is apparent that [Judith] is in need of a guardian-ad-litem to assist her (and indirectly assist the other litigants and the court) in framing the issues and advocating for her interests in the various proceedings now pending. For that reason, a guardian-ad-litem to represent her interests is being appointed pursuant to the authority of this Court to protect the interest of a person in these proceedings (and cases cited therein)."

1

6. In reviewing the pleadings, I discovered that there was substantial acrimony leading to seven years of litigation between the Chalupowski siblings, Chester Chalupowski, Jr., and his two older sisters, Judith Chalupowski Venuto and Donna Chalupowski and their mother, Mary Jane Chalupowski.

7. There appeared to be two primary elements in dispute: a sum of money that had been in Mary Jane Chalupowski's name, and real estate, consisting of two small apartment buildings. Over the course of the years, conservatorships had been brought for Mary Jane Chalupowski, a money trust had been formed to hold the money belonging to Mary Jane Chalupowski, and the real estate which had been in one real estate trust had been conveyed to another real estate trust.

8. My client had filed many motions, scraps of paper, and various items with reference to her interests in the proceedings.

9. As my first task, I filed an opposition to the Memorandum and Decision of the Order of the Court dated February 13, 2001, a copy of which is attached hereto as Exhibit 2.

10. The court issued its Decision and Orders on December 14, 2001. See Order, attached hereto as Exhibit 3.

11. Included it its Order was the provision that " (6) If a petition by Donna and/or Judith is filed by January 15, 2002 for the removal of Chester as trustee of the 26 through 30 Andrew Street Realty Trust, that petition shall be consolidated with the pending proceeding (Docket No. 00E0127-GC1)."

12. I filed such a Petition on January 14, 2002.

13. The Petition of Judith Venuto to remove Chester J. Chalupowski, Jr. as Trustee of the 26-30 Andrew Street Realty Trust was filed. It was received by all counsel representing clients. A copy of this Petition is attached hereto as Exhibit 4.

14. At some point, it was discovered that the pleading was not docketed, but was held by a clerk in the probate department, as the person was unclear whether the pleading should be granted a new docket number.

15. After the Decision issued, and I had an opportunity to discuss various matters with my client, I suspected that she may have been mentally ill, incompetent or disabled. It was my opinion that she should be examined and I sought leave from the court for that examination.

16. My client denied any mental illness, incompetence or disability, and refused to undergo an examination.

17. Although she did not submit to an examination, the court did not terminate my appointment as guardian ad litem, as the reason behind my appointment had not changed. My client still needed assistance in framing the issues and advocating her interests in the proceedings that were pending. As a result of her failure to submit to an examination, the court ordered that she could not seek appointment as successor trustee of the 26-20 Andrews Street Realty Trust. A copy of my motion and the subsequent order by the court is attached hereto as Exhibit 5.

18. All parties proceeded under the Docket No. 00E-0127-GC1, which was the Petition of Donna M. Chalupowski to Remove Chester J. Chalupowski, Jr. as Trustee of the Mary Jane O. Chalupowski and the Chester Chalupowski, Jr. Family Trust and the Petition of Judith Venuto to Remove Chester Chalupowski, Jr. as the Trustee of the 26-30 Andrew Street Realty Trust.

19. As part of the multitude issues in this matter, Chester sought to have his sisters, Donna and Judith evicted from their apartments. See Salem District Court Docket No. 0136 CV 1360 and Salem District Court Docket No. 0136 CV 1361, attached hereto as Exhibit 6.

20. Judith was of the opinion that Chester simply could not do this, and failed to appear in court. A default judgment entered against her.

21. Both Donna's attorney and I sought a restraining order under the Probate & Family Court's general equity power to enjoin Chester from evicting Donna and Judith from the premises, which was denied by Stevens, J. See Exhibit 7.

22. On or about January 25, 2002, Donna's attorney filed for a Motion to Stay Judgments and for Interlocutory Relief before the Appeals Court, which became known as *Donna M. Chalupowski v. Judith Chalupowski Venuto, Et Al.*, Massachusetts Appeals Court Docket No. 02-J-57. A copy of the transmittal letter to the Appeals Court is attached hereto as Exhibit 8.

23. I did not file a separate appeal on behalf of Judith.

24. That court, Barry, J. granted the injunction, prohibiting the eviction of Donna or Judy. A copy of the Appeals Court order of February 4, 2002 is attached hereto as Exhibit 9.

25. The Appeals Court issued a Supplemental Order, dated May 29, 2002 requesting an update concerning the status of the properties at 26 and 30 Andrew Street, Salem, MA. A copy of the Supplemental Order is attached hereto as Exhibit 10.

26. Pursuant to that Appeals Court order, I filed a status report. A copy of this report is attached hereto as Exhibit 11. Donna's attorney also filed a status report.

27. On or about July 13, 2002, Chester, by and through a different attorney than the one representing him in the Essex Probate and Family Court filed an (Amended) Motion to Vacate Stay Under M.R.A.P. 6(A) As This Court Lacks Subject Matter Jurisdiction; or in the Alternative, That J. Berry Recuse Herself. See copy of motion, attached hereto as Exhibit 12.

28. On behalf of my client, I filed an opposition. A copy of that opposition is attached hereto as Exhibit 13.

29. The Appeals Court, Barry, J. issues an Order on Stay Pending Appeal. A copy of this order is attached hereto as Exhibit 14.

30. The Essex Probate and Family Court case was set for trial on February 25 and 26, 2003.

31. Chester was not happy about my appointment to represent his sister, and on or about October 15, 2002, Chester attempted to remove me as Guardian Ad Litem. After hearing, his request was denied on October 21, 2002. A copy of his motion and the order entry is attached hereto as Exhibit 15.

32. I issued a subpoena to take Chester's deposition. A copy of this subpoena is attached hereto as Exhibit 16.

33. Chester failed to appear at his deposition or bring records, and a motion to compel his testimony was sought.

34. As a result, I issued subpoenas to various financial institutions, including but not limited to the Keeper of the Records at Eastern Bank. A copy of this subpoena is attached hereto as Exhibit 17.

35. Eastern Bank, as well as Fidelity Investments, Salem Five Bank and Harbor Realty Management all properly responded to the request.

36. The trial did not occur. Instead, there was a multi-day session attempting to reduce an agreement to writing.

37. Ultimately, there was no agreement and the case was set down for another trial date.

38. Over the course of the summer of 2002, I was contacted by a State Police Officer Anthony LaPlata, investigating a complaint brought by Chester against Judith.

39. Trooper LaPlata told me that Judith had obtained a checkbook from a home equity loan granted by Sovereign Bank, and had written checks against the account.

40. I do not know what happened to the criminal investigation.

41. I spoke to my client about the funds she allegedly took. She admitted to me that she took the funds, but that since she firmly believed that she was the Trustee of the property, she took the money in order to make improvements.

42. After further investigation on my part, as Guardian Ad Litem for Judith, it appeared to me that by obtaining the home equity loan, Chester may have violated an order of the Appeals Court.

43. The Essex Probate and Family Court case was set for trial November 25, 2003.

44. I was informed by Attorney Jeffrey G. Sweeney that Judith was involuntarily committed to the Tewksbury State Hospital on or about November 20 or 21, 2003, pursuant to the provisions of M.G.L. c. 123, §12, by order of the Salem District Court.. She remained committed through February 2004, part of that time was on a voluntary basis.

45. As a result of her inability to appear, Chester's then counsel brought a motion to continue the matter, which granted, and the case set for trial January 26, 27 and 28, 2004.

46. I obtained copies of the Home Equity Line of Credit Account Agreement, the Trustee's Certificate and a copy of the Open end mortgage. After reviewing the same, on or about December 24, 2003, and after consultation with the Appeals Court as to the proper form of pleading to be used, I filed a Motion for Contempt against Chester. A copy of the Motion for Contempt is attached hereto as Exhibit 18.

47. The Appeals Court scheduled the matter for hearing on February 10, 2004.

48. On January 26, 2004, all counsel appeared for trial. My client was in a voluntary hospitalization at that point, and was to be available for trial if necessary.

49. Although I appeared ready for trial, the trial did not proceed as there was an emergency in the trial judge's family, which caused a postponement.

50. All the attorneys agreed that the Appeals Court matter concerning the motion for contempt, which had been scheduled for February 10, 2004 should be continued.

51. I sought and obtained a continuance in the Appeals Court matter.

52. The Essex County Probate and Family Court case was set for trial on May 24, 25 and 26, 2004 before DiGangi, J.

53. On or about May 10, 2004, Chester filed a Motion to Dismiss Essex Probate and Family Court Docket No. 00E0127 GC1. A copy of this motion to dismiss, without the attachment (a copy of a complaint filed in Essex Superior Court against his sister Donna) is attached hereto as Exhibit 19.

54. Chester alleged in his Motion to Dismiss that "...as of April 2004,the res of the Mary Jane Family Trust has been reverted to the Annuity, and Mary Jane started to receive her, now guaranteed again, monthly payment of $566.67. As a result of the reversal of funds back to the Annuity, the Mary Jane Family Trust has no assets, this renders the case at hand moot." See paragraph 9, Exhibit 19.

55. I became alarmed that Chester had transferred money, and after discussion with Donna's attorney, we both filed a motion to order Chester to return the trust funds to the Trust. A copy of that motion is attached hereto as Exhibit 20.

56. The Essex Probate and Family Court, DiGangi, J. ordered Chester to appear and account for the monies. See Exhibit 21.

57. Chester failed to appear and the court issues an order for his appearance, and a capias if he failed to appear and sanctions if he did not comply with the court's order.

58. In addition, the court appointed Attorney Anthony M. Metaxes to act as Receiver and escrow agent.

59. Chester failed to turn over the accounts to Attorney Metaxes as ordered, and the court ordered Chester to be committed to jail, among other orders. A copy of the Court's order is attached hereto as Exhibit 22.

60. The trial proceeded on May 24, 2004 as planned. Chester failed to appear for the second day of trial, and on behalf of my client, I moved for a Default Judgment. The court granted this Default Judgment, and requested all parties file proposed findings of fact and conclusions of law.

61. I did so, as did the other counsel involve. As part of that request, I asked for attorney's fees and included a copy of my bill.

62. The case before the Appeals Court moved forward on June 10 and 11, 2004.

63. All parties appeared in the Appeals Court and a hearing on the motion for contempt began. At the conclusion of the day's activities on June 10, 2004, Chester became irate and threatened me.

64. Chester was restrained by two Appeals Court court officers. I chose not to bring charges against Chester, but as the Boston Police had been summonsed by the

Appeals Court officer(s), I am aware that an incident report was filed. A copy of the incident report is attached hereto as Exhibit 23.

65. I reviewed a copy of that report and noted that there were several errors. I filed a letter with the Boston Police Department noting the errors. A copy of that letter is attached hereto as Exhibit 24.

66. The Essex County Probate and Family Court issued its Procedural History, Findings of Fact, Rationale and Judgment. A copy of which is attached hereto as Exhibit 25.

67. As part of the court's Judgment, Attorney Anthony Metaxes was appointed receiver and was ordered to hold and administer funds consistent with the court's order. See Paragraphs 4, 6 and 9, 15, 17.

68. I was in communication with Mr. Metaxes, who informed me that it did not appear that Chester intended to comply with the Judgment of the court.

69. I worked with Mr. Metaxes to prepare an affidavit in support of the Trustee's Motion for Equitable Relief. A copy of this motion and the supporting affidavits are attached hereto as Exhibit 26.

70. Based on the information I received from Mr. Metaxes, I then filed an Ex parte Motion for Seizure and Attachment of Funds, a copy of which is attached hereto as Exhibit 27.

71. Attorney Anthony Metaxes, in his capacity as Receiver and Escrow Agent came ultimately came into possession of the funds and this motion was not acted upon.

72. After the funds were transferred to Mr. Metaxes, I was requested Supplemental Attorney's Fees, to cover my costs to prepare and attend a deposition in a superior court matter entitled *Chester Chalupowski Jr., in his capacity as the Trustee of the 26-30 Andrew Street Realty Trust, Trustee of the Chalupowski Realty Trust, and individually and Malgorzata B. Nabialcyzk v. Donna Chalupowski* Essex Superior Court Docket No. 04-0879-A. See copy of motion, attached hereto as Exhibit 28.

73. My deposition was stayed and I have incurred no costs related to that matter.

Signed under the pains and penalties of perjury, this 19 day of June, 2005.

Sharon D. Meyers

## COMMONWEALTH OF MASSACHUSETTS

**ESSEX DIVISION**

**PROBATE AND FAMILY COURT**
**DOCKET NOS. 94P 0314-C1**
      **01E 0005-GC1**
      **00E 0126**
      **00E 0127**

## IN RE: CHALUPOWSKI REALTY TRUST, CHALUPOWSKI FAMILY TRUST and 26-30 ANDREW STREET TRUST

### AMENDED FURTHER ORDER

On February 12, 2001, this Court (Stevens, J.) issued a memorandum of decision and order dismissing a complaint by Judith Chalupowski Venuto with regard to the Chalupowski Realty Trust. At that time and subsequently, various proceedings have been filed in this inter-family dispute that relates to certain real estate formerly owned by Chester Chalupowski, Sr. and Mary Jane Chalupowski as well as certain funds in a trust known as the Chalupowski Family Trust.

This Court previously disposed of a petition by Judith Chalupowski Venuto ("Judith") seeking to remove her brother, Chester J. Chalupowski, Jr. ("Chester") as trustee of the Chalupowski Realty Trust. Prior to that motion and subsequently, Judith has appeared on numerous occasions *pro se* and has filed a number of motions and other papers with this Court. Her filings tend to be scattered and at times incoherent. She has difficulty framing her issues and arguments in a coherent fashion, particularly in the context of this contested and confusing inter-family dispute.

I make no finding that Judith is mentally ill, incompetent or disabled at this time. However, it is apparent that she is in need of a guardian-ad-litem to assist her (and indirectly to assist the other litigants and the Court) in framing the issues and advocating for her interests in the various proceedings now pending. For that reason, a guardian-ad-litem to represent her interests is being appointed pursuant to the authority of this Court to protect the interests of a person in these proceedings. Gershaw v. Gershfield, 52 Mass. App. Ct. 81, 95 (2001), Superintendent of Belchertown State School v. Saikewicz, 373 Mass. 728, 755 (1977).

Page 2.

Accordingly, it is **ORDERED** that:

1) The appointment of Denise Woodruff, Esquire as guardian-ad-litem to represent the interests of Judith Chalupowski Venuto is vacated.

2) Sharon D. Meyers, Esquire, 30 Federal Street, Salem, MA 01970 (978-745-0575) is appointed as guardian-ad-litem to represent the interests of Judith Chalupowski Venuto in those proceedings now pending in this Court in which she has an interest.

3) Judith shall at all times cooperate with the guardian-ad-litem appointed to represent her interests and shall only file pleadings and other papers with this Court through her guardian-ad-litem.

4) Attorney Meyers shall be paid as the Court may determine or by written agreement of all parties.

5) Attorney Meyers is granted leave until November 16, 2001 to submit such pleadings, responses and/or other filings as she deems necessary on behalf of Judith in pending proceedings.

6) All matters now under advisement by the Court shall remain under advisement until after November 16, 2001.

7) Except as otherwise provided herein, all prior orders of this Court now in effect are ratified and confirmed.

October 15, 2001

John C. Stevens, III., Justice
Essex Probate and Family Court

## Commonwealth of Massachusetts
### The Trial Court

_Essex_ **Division**    **Probate and Family Court Department**    **Docket No.** 94P0314-C1
01E0005-GC1
00E 0126-
00E 0127-

#### In the Matter of

In re: Chalupowski Realty Trust, Chalupowski Family Trust,
and 26-30 Andrew Street Trust.

#### Appointment of Guardian ad Litem

Whereas in the matter of _____

it appears that _____ Judith Chalupowski Venuta _____ is — are.—

a person(s) under disability — there are persons not ascertained or not in being who are or may become interested

in this case, therefore _____ Sharon Meyers, Esq. of 30 federal St., Salem, MA

in the County of _____ Essex _____ is hereby appointed to act as guardian ad litem/next friend

for such person(s) to represent his — her — their interests in said case.

The guardian ad litem shall be paid by ☒ via Court order or agreement of the parties
☐ the Commonwealth of Massachusetts. _____ hours are authorized
with leave to request more by motion if necessary.

Date OCT 29 2011 _____    _____
JUSTICE OF THE PROBATE AND FAMILY COURT

I hereby accept the above appointment.

(FOR ALL APPOINTMENTS made after 7/1/2000) I understand that; pursuant to Supreme Judicial Court Rule 1:07(7) no payment shall be made to or received by me from any source on account of this appointment until I have filed the required certification with the court. I certify that I have filed all of the fee reports required by that rule for payments made to me in the fiscal year previous to this fiscal year.

(FOR COMMONWEALTH PAID ONLY) I acknowledge receipt of Fiscal Year 1997 Memo #14 of the Chief Justice for Administration and Management with the Certificate of Services Form and Instructions.

_____
(Signature)

_____, ss.    _____, 20____

Personally appeared the above named _____ and made oath
that (s)he would faithfully and impartially perform the duty imposed on him — her by the foregoing appointment.

_____
NOTARY PUBLIC

Having fully examined and considered the matter of _____

_____

I hereby — assent — object — to the _____

_____

_____

Date _____    _____
GUARDIAN AD LITEM / NEXT FRIEND

(PFC 3/00 Temp)

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss
PROBATE & FAMILY COURT
DOCKET NO. 94P 0314 C-1
01E 0005-GC1
00E 0126
00E 0127

)
IN RE:                                                    )
                                                          )
IN THE MATTER OF THE                    )
CHAULPOWSKI FAMILY TRUST and  )
26-30 ANDREW STREET TRUST          )
_____)

## JUDITH (CHALUPOWSKI) VENUTO'S MEMORANDUM OF LAW IN OPPOSITION TO THE MEMORANDUM OF DECISION AND ORDER OF THE COURT DATED FEBRUARY 13, 2001

Now comes Judith (Chalupowski) Venuto, ("Judith") by and through her

Guardian Ad Litem, appointed by the court for the purpose of framing Ms. Venuto's

issues and presenting those issues to this Court for its consideration. Ms. Venuto objects

to the Court's Decision and Order dismissing her complaint seeking to remove her

brother Chester J. Chalupowski, Jr. ("Chester, Jr.") as Trustee of the Chalupowski Realty

Trust.

## PRELIMINARY MATTERS AND BACKGROUND

Judith adopts pages one through six of the Memorandum of Decision and Order

of the Court to extent mentioned herein and has attached the relevant pages to this

Memorandum as Exhibit 1.

It is important to note some of the procedural history. In 1984, Chester Chalupowski, Sr.

initiated an estate plan, which provided for a life estate for his wife, and upon her death

the residual estate, if any, to be divided in equal shares between his three children, Judith,

1

Donna and Chester, Jr. The principal problem was that at the death of Chester, Sr., he
specified the succession of trustees, which had Chester, Jr. last on the list, that is last in
line to manage and control the assets. Trusteeship went jointly to his wife and eldest
daughter, Judith, then to Donna, and finally to Chester, Jr.

Chester apparently did not like his position and in 1993, Chester began the first of
several moves to gain control over his anticipated inheritance. This anticipated
inheritance consisted of two parts, liquid funds in the amount of $176,022.21[1], and real
property, consisting of several apartments in two houses, located at 26-30 Andrew Street,
Salem, MA. Chester, Jr.'s activities and his sisters' objections to the procedures are
detailed in the Court's Memorandum, paragraphs four through twenty-two, twenty-four
through twenty-eight, are the essence of the litigation found *In the Matter of: The Petition
for Conservatorship of Mary Jane Chalupowski,* Essex Probate & Family Court 94P
0314-C1, 94P 0314 CV2 and *In the Matter of: The Petition for Order and Protective
Service, Pursuant to G.L. c. 19A, §20, Mary Jane Chalupowski.*

The litigation between Chester and his sisters took a hiatus with Judge Highgas's
decision issued July 3, 1996.

Judge Highgas ordered:

*    *    *

2.      Mary Jane Chalupowski has indicated her desire to have her son, Chester
        J. Chalupowski, Jr. assist her in the management of the properties at 26
        Andrew Street and 30 Andrew Street, Salem, Massachusetts. The Court

---

[1] Ultimately, the $176,220.21 became the trust corpus of the Mary Jane O. Chalupowski, Judith
Chalupowski Venuto, Donna Chalupowski and Chester J. Chalupowski, Jr. Family Trust ("Family Trust").
The actions of Chester, Jr., concerning his failure to account for the sums and the allegations of
mismanagement of these funds as well as other issues concerning Chester's Jr. duties as a fiduciary are the
subject of additional litigation, *Mary Jane Chalupowski, by Donna M. Chalupowski, Next Friend v. Chester
J. Chalupowski, Jr.,* Essex Superior Court Docket No. 93-2465-B and Petition *to Remove Chester J.
Chalupowski Jr. as Trustee of the Mary Jane O. Chalupowski, et al Family Trust,* Essex Probate & Family
Court Docket No. 00E 0127 GC1.

finds that said properties are held by the CHALUPOWSKI REALTY
TRUST, under a Declaration of Trust dated December 19, 1984 and
recorded with Essex Southern District Registry of Deeds in Book 7612,
Page 409, Mary Jane Chalupowski and Judith M. Chalupowski, Trustees.

3.    The said Chester J. Chalupowski, Jr., with Mary Jane Chalupowski's
continuing assent, shall continue to manage the properties located at 26
Andrew Street and 30 Andrew Street, Salem, Massachusetts. Chester H.
Chalupowski, Jr., shall, on the 15th day of each month. Commencing July
15, 1996, render an accounting to the Trustees of all income received and
all funds disbursed for the preceding month.

\*        \*        \*

The Chalupowski litigants accepted Judge Highgas's order of July 3, 1996.

Unfortunately for the litigants, Judge Highgas decision fails to mention the actions of

Chester, Jr. in creating the 26 through 30 Andrew Street Realty Trust on October 4, 1995,

recorded at Essex County South Registry of Deeds, Book 13236 Page 196. Judge

Highgas's decision also failed to mention that on October 4 and 13, 1995, Judith and her

mother Mary Jane, as Co-Trustees of the Chalupowski Realty Trust conveyed the entire

corpus of the Chalupowski Realty Trust, namely, the real property known Twenty-Six

(26) through Thirty (30) Andrew Street, to a new entity, the 26 Through 30 Andrew

Street Realty Trust. Chester, Jr. recorded the quitclaim deed regarding the transaction on

October 15, 1995. A copy of the deed is attached hereto as Exhibit 2.

This omission is critical, as Judge Highgas's decision of July 3, 1996 is based on

hearings occurring June 27, 1996 and further hearing on October 30, 1996 and the Order

is in actuality dated "October 30, 1996 for July 3, 1996." During the time period in

between the hearing dates and the decision issuing, Judith did not bring the change of

ownership to the court's attention, nor did any other litigant. There is some concern of

3

this Guardian Ad Litem whether Judith had the capacity to do so.[2] A clear inference can be made that none of the litigants brought the change of ownership to the Court's attention.

It is the position of Chester, Jr. that Judge Highgas's order "erroneously" identifies the Chalupowski Realty Trust as the owner of 26 through 30 Andrew St., Salem, Massachusetts due to the fact that the creation of the 26 through 30 Andrew St. Trust and deed of the subject real estate into the 26 though 30 Andrew St. Trust was not brought to his attention. Chester Jr. also argues that notwithstanding Judge Highgas's erroneous finding this court should find that the effect of Judge Highgas's order was to ratify the creation of and deeding of the subject real estate into, the 26 though 30 Andrew St. Trust.

His argument cannot stand. It has long been held that to ratify an action there must be knowledge and understanding of the prior facts. *Culver v. Ashley,* 36 Mass. 300, 303 (1837). If all the facts were known to Judge Highgas, and if a presumption could be made that he was aware of the 26-30 Andrew Street Realty Trust, Judge Highgas's decision, assuming that he was "ratifying" the terms of the second trust, would not have contained the language it did. The decision did not affirm Chester, Jr. position as sole trustee, only of Mary Jane's right to have her son advise her in her position as Trustee. The decision allowed Mary Jane's to designate Chester to manage the property under the

---

[2] The Guardian Ad Litem learned that Judith was in an involuntary evaluation placement at Tewksbury State Hospital by order of the Peabody District Court, during the time preceding her signing of the deed. Judith has stated that her brother and his girlfriend, whom Judith believes to have been a lawyer, visited her while she was hospitalized and asked her to sign the deed. A copy of the deed reveals that the notarization was performed by Chester, Jr.'s attorney, Jayne S. Davidson, Esq. Whether or not Ms. Davidson was Mr. Chalupowski's girlfriend is not clear, however, she did represent him and was representing him in the interfamily litigation during 1994-1996. More than a mere inference of undue influence can be raised. See copy of docket sheets attached hereto as Exhibit 3.

terms of the Chalupowski Realty Trust, which would be to act as a manager in conjunction with the wishes of both trustees, Judith and her mother Mary Jane.

Of all the parties to the litigation, Chester had the most to lose had the court failed to properly designate the parties in interest and if the court failed to use the correct terminology as to what entity owned the real property at 26-30 Andrew Street. There is no record of any appeal or request for modification. Judge Highgas's ruling stands as the law of the case. Therefore, the issues raised by Judith and Donna in the recent proceedings, 00E 0126 GC1, 00E 0127 GC1and 01E 005 GC1, "present the prototypical res judicata case; i.e., one in which there has been a final judgment, concerning parties to the prior action, of an issue actually litigated and essential to the judgment and over which the court had jurisdiction. *Roche v. Roche*, 20 Mass. App. Ct. 306, 308 (1986). *Restatement (Second) of Judgments* §§ 13, 34, 20 and 27 (1982). The effect of res judicata, whether it be issue preclusion or claim preclusion is the same, the prior decision acts to bar further litigation of all matters that were or should have been adjudicated in the action. *Heacock v. Heacock*, 402 Mass. 21, 23 (1988).

The three elements that must be considered to determine whether further litigation is barred exist are present in the prior litigation and in current issues. First, there was final judgment on the merits in the prior adjudication. Second, the parties involved in the present litigation were the parties involved in the prior litigation, or stood in privity with a party to the prior litigation. Third, the issues at hand are identical to the issues in the current litigation. In addition, the issue decided in the prior adjudication was essential to the earlier judgment. *Commissioner of the Dept. of Employment & Training v. Dugan*, 428 Mass. 138, 142 (1998), *TLT Construction Corp. v. Anthony Tappe &*

5

*Assoc.*, 48 Mass. App. Ct. 1, (1999).   Therefore, Chester, Jr. is barred from raising the issue.

In addition, it is clear to this Guardian Ad Litem that Judith did not understand the consequences of any actions she may have taken in October 1995.  This is demonstrated by her action on April 20, 2000, believing that Chester, Jr.'s position was the one defined by Judge Highgas, and she filed a Petition to Remove Chester J. Chalupowski as Trustee of the Chalupowski Realty Trust, and requested that she be allowed to resume her duties as Trustee under the terms of the Chalupowski Realty Trust.  A person who suffers from periodic mental infirmities, such as Judith, might reasonably assume Judge Highgas's order to suggest that Chester, Jr. in assuming the functions of his mother was also assuming the functions of Judith in managing the real property.

The litigation filed by Donna on December 8, 2000, Probate Docket No. 00E 0126 GC1 and on January 5, 2001, 01E 005 GC1, should be joined with this action, so as to conserve judicial resources and bring final resolution to all issues of ownership and management of the real property in question, bearing in mind the Settlor's, Chester, Sr.'s intent, that his wife Mary Jane have a life estate in all properties, and upon Mary Jane's death, the residue, if any, be distributed in equal shares to the three children.  This memorandum addresses the issues raised in the complaints jointly.

### THE TRUST INSTRUMENTS

The Chalupowski Realty Trust and the 26-30 Andrew Street Trust, although having a similar identity of parties in interest, are vastly different, giving the Trustees then in power, vastly different powers and consequences for the abuse or misuse of those powers.  While the Trustees of the Chalupowski Realty Trust had the right to sell or

convey the real property, they had the continuing duty to assure that the Settlor's intent was met in any subsequent configuration of the trust corpus.

It is a fundamental tenant of trust law, that regardless of powers granted by the document itself, above all else, a trustee(s) owes a duty of loyalty to the trust beneficiaries and any actions taken by the trustee(s) must be done with the interests of the beneficiaries in mind. *Restatement (Third) of Trusts, §170(1)* (1992). Therefore, the analysis of the transactions taken in conveying the corpus of one trust to another, must also include whether in doing so, the trustees acted in some way to violate this duty of loyalty.

The language of the Chalupowski Trust is unremarkable. In Paragraphs 5(a-g), the Chalupowski Trust contains the standard statutory authorities and powers of a trustee(s) to manage the property in an appropriate fashion, including the ability to improve, repair or replace the property at public or private sale, to administer the trust and to reinvest the trust property in other real and personal property, to borrow money if needed and to employ others to assist in the care and management of the property. Paragraph 4 also states: "No Trustee hereunder shall be held liable or accountable out of his personal assets by reason of any action taken, suffered, or omitted in good faith, or by reason of honest errors of judgment or mistakes of fact or law, or by reason of anything except his own personal and wilful default."

Thus, the first question is whether Mary Jane and Judith had the power to convey the trust corpus to another trust. Clear doubt is raised as to whether Judith at the time of the conveyance understood the consequences of her actions. Judith was not represented by counsel during the transaction. Judith was in Tewksbury Hospital at the time of the

7

transaction. Her brother's attorney was the notary on the deed. See copy of Deed attached hereto as Exhibit 2. Judith, by filing her actions in 2000 and subsequent thereto, clearly did not understand the consequences and continued to operate as if the 26-30 Andrew Street Trust did not exist, only that her brother was now acting in her mother's stead and at the direction and in conformity with Judge Highgas's order. At some point in 2000, upon learning of the effect of the deed she signed, Judith filed a motion to revoke the execution of the deed by her mother and herself.

Chester, Jr. argues that Mary Jane's competency at the time was subject to the prior litigation and this court has found that "notwithstanding the fact that Mary Jane Chalupowski was under temporary conservatorship from time to time between 1994 and 1996, the execution of the quit claim deed conveying the Andrew Street property was effectuated during a period of time under which Mary Jane Chalupowski was not under a temporary conservatorship." Judith has raised the issue of her own competence, and this Guardian Ad Litem suggests that there is a reasonable doubt that she acted in a knowing fashion when asked to sign the deed. But even assuming that Judith is equitably estopped from challenging the transfer of property and it can be shown that she was in a sound frame of mind, not under duress and knew the consequences of her act, the next question is whether Mary Jane and Judith had the power to convey the property into another trust vehicle.

It is "settled that where the testator has fixed the time for the termination of the trust, and where it is active and its purposes and objects have not been fully accomplished and its termination would not best accomplish the testator's intent, the trust cannot be terminated even with the approval of all parties in interest." *Allen v. First National Bank*

*and Trust Company*, 319 Mass. 696, 696 (1946). So, here, so long as the Settlor's intent is maintained, the conveyance of the property could be appropriate. The Chalupowski Realty Trust, at Paragraph 3(b) states:

> Upon the death of said Chester J. Chalupowski and Mary Jane O. Chalupowski this trust shall terminate and the trust property shall be distributed and transferred in fee, in equal shares to the trustee's children, Judith Venuto, Donna Chalupowski and Chester Chalupowski, Jr., in fee simple.

There is a condition precedent to any distribution, as it is clear that Mary Jane has a life estate in the property, be it real property or personal property. Assuming that the conveyance to the 26-30 Andrew Street Realty Trust met the requirements of preserving and conserving the asset for the life time of Mary Jane, then it may be that the conveyance was valid.

Judith and Mary Jane's first duty as trustees, is the protection of the trust estate. The burden of proving good faith and fairness is on the trustee, as is the burden to show that any questioned transaction was advantageous to the beneficiaries. *Johnson v. Witowski*, 30 Mass. App. Ct. 697, 707 (1991). Therefore, in conveying the property to a second trust, the question must be answered as to whether the transaction was advantageous to the beneficiaries.

It is undeniable that the Chalupowski Realty Trust conveyed the only asset of the trust corpus for no consideration. If that was the end result of the Chalupowski children's relationship, the conveyance would be clearly void. *Johnston v. Holiday Inn, Inc.,* 595 F. 2d 890 (1st Cir. 1979). See, *New England Mutual Life Insurance Company v. Harvey,* 82 F. Supp. 702 (Mass. 1949). In addition, "a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in

9

strict conformity to its terms." See, *Phelps v. State Street Trust Co.,* 330 Mass. 511, 512 (1953). The Chalupowski Realty Trust did contain a reserve power to alter, amend or revoke the Trust, but in doing so the Trust terminated and the principal and income distributed as requested by Chester, Sr. Paragraph 9. If there is a dispute among the Trustees or beneficiary as to the meaning interpretation or performance of any provision of the Trust, or as to what their duties under the trust were, or to the advisability of any action taken or proposed to be taken, Chester Sr. required that each submit such dispute to arbitration. Chester, Sr. clearly indicted the mechanism by which disputes were to be determined, which did not include resort to the Probate & Family Court. Paragraph 6 of the Chalupowski Realty Trust.

In order to effectuate the Settlor's intent, the property or its residue must be available for Mary Jane's lifetime use, which the 26-30 Andrew Street Realty Trust provides. In addition, the residual beneficiaries remain the same, that is the three children Judith, Donna and Chester, Jr. Thus, on the surface, the conveyance of the property from one trust to the another does not appear to violate the essence of the Settlor's intent. *Trager v. Schwartz*, 345 Mass. 653, 658 (1963). However, a review of the elements of the Trust reveals a strikingly different document, granting the Trustee powers far beyond the scope of the original Trust.

The differences are listed below:

1.     The original Trust provided that the remainder be distributed in equal shares to Judith, Donna and Chester, Jr. "in fee simple". The subsequent Trust states that the remaining beneficiaries will have no further rights of survival or representation.

10

2.    The original Trust provided a line of succession of trustees, Mary Jane and
      Judith as co-Trustees, then Donna, then Chester, Jr. In the subsequent
      Trust, only Chester, Jr. is a trustee. He may resign upon proper notice,
      and "those to whom such notice of resignation is given shall designate a
      successor trustee" or, failing a designation within the given period of time,
      he may appoint a successor trustee.

3.    The original Trust provides that the net income of the Trust shall be
      distribute to Mary Jane in quarterly installments.[3] No specific provision is
      made for distributions to Mary Jane, except as to allow paying or
      reserving sufficient funds to pay any expenses of management of the trust
      estate and administering this trust, and any residue distributed in
      accordance with the schedule of Mary Jane for life, then one third to each
      beneficiary.

4.    The original Trust allows the trustees to administer, invest and reinvest the
      trust in any real or personal property whether or not they investments are
      of a kind or in a proportion ordinarily considered suitable for trust
      investments. The subsequent Trust is much broader and allows the trustee
      to operate at the risk of the trust estate... "regardless of any lack of
      diversification, any risk, or any nonproductivity, and even though such
      property or business, except for this express authority might otherwise be
      considered improper for a trust investment."

---

[3] It is unclear to the Guardian Ad Litem whether there has been any historic distribution of net income,
although it has been represented that the property is currently operating at a loss.

5.    The original Trust provides protection of the trustees, so long as they act in good faith, commit only honest errors of judgment or mistake of fact or law or by any reason except by personal and wilful default. The subsequent Trust allows the trustee to make purchases or other investments, "regardless of whether any investment shall be of a wasting asset nature and without regard to any law concerning the investment of trust funds."

6.    The original Trust contains no provision for the trustees to loan or advance money to the Trust. The subsequent Trust allows the trustee to "loan or advance his own funds to the trust for trust purposes."

7.    The original Trust requires termination of the trust upon the death of Mary Jane at which time the trust property will be distributed and transferred in fee, in equal shares to Judith, Donna and Chester, Jr. The subsequent Trust allows the trustee "in his sole and absolute discretion, assign, transfer or deliver to the person then entitled thereto any part of the trust estate or an undivided interest in the trust estate, or any portion thereof, and any valuation as trustee may establish as the then fair market value."

8.    The original Trust does not contemplate any difference of distribution whether the beneficiary is a minor or incompetent person. The subsequent Trust specifically allows the Trustee to make "such distribution or expenditure may, at the sole discretion of trustee, be made without the intervention of any guardian or any court."

12

9.      The original Trust provides a resolution scheme in the event of

disagreement between the trustees and beneficiaries, by way of a panel of

three arbitrators. The subsequent Trust has no resolution clause.

Thus, the subsequent trust violated the settlor's intent, and is not a proper vehicle

to maintain the trust res for the benefit of the life recipient, Mary Jane, or the remainder

beneficiaries, Judith, Donna or Chester, Jr. The language in the subsequent trust clearly

puts Chester, Jr. in a position of managing, wasting, or otherwise disbursing the assets

without fear of recourse from either the life beneficiary or the remaining beneficiaries.

The rule is clear, a fiduciary may not derive personal advantage at the expense of the

trust, nor put himself in a position antagonistic to the beneficiaries of the trust is to be

strictly enforced. *Johnson v. Witowski*, 30 Mass. App. Ct. 697, 707 (1991); *Anderson v.

Bean*, 272 Mass. 432, 448 (1930). Chester, Jr. has created a vehicle for himself with

virtually no means for his sisters or his mother to question his actions. The 26-30 Andrew

Street Realty Trust violates the intent of the Settlor and should be held invalid.

## CONCLUSION

Judith's claim to remove Chester, Jr. as Trustee of the Chalupowski Realty Trust

is based on her valid reading of Judge Highgas's decision of July 3, 1995 and her

assumption that Mary Jane relinquished her position and fiduciary duties as co-Trustee to

Chester, Jr. The conveyance of the trust res from the Chalupowski Realty Trust to the

26-30 Andrew Street Trust should be considered void, as the original purpose of the

settlor was not met in the subsequent trust document. [4] Chester, Jr. as manager of 26-30

---

[4] The mental state of Judith, at the time of the conveyance her subsequent actions raises serious doubt as to whether the mere presence of her signature on the deed should now act to estop her from challenging the conveyance. There is significant evidence that the transaction was not free of fraud, coercion and Judith's

13

Andrew Street may be removed only by agreement of the Trustees, Mary Jane and Judith,

or by action properly submitted to a panel of arbitrators. Whether the sisters/beneficiaries

Judith and Donna should be removed from the trust property, is a subject properly

reserved to the arbitrators, taking into account the nature, intent and purpose of the

Settlor's Trust, which was not to provide housing for anyone, but to provide for the life

estate of Mary Jane Chalupowski.

Respectfully submitted,

JUDITH (CHALUPOWSKI) VENUTO

By her Guardian Ad Litem,

Sharon D. Meyers, Esquire
BBO # 344680
30 Federal Street, Suite 200
Salem, MA 01970
978/745-0575

Date: December 5, 2001

I hereby certify that a true copy of the
above document was served upon each
party appearing pro se and/or the
attorney of record for each other party
by first class mail or by hand.

Dated: 12/5/01

---

free act and deed. See *Riley v. Presnell*, 409 Mass. 239, 246 (1991)(where Plaintiff's mental state is a
barrier to determining harm)

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE & FAMILY COURT DEPARTMENT

ESSEX DIVISION                                    Docket No. 94P 0314-C1

IN RE:
The Matter of the
Chalupowski Family Realty Trust

MEMORANDUM OF DECISION AND ORDER
ON PETITIONER'S
PETITION TO REMOVE CHESTER J. CHALUPOWSKI, JR.
AS TRUSTEE OF THE CHALUPOWSKI REALTY TRUST

ORDER AND MEMORANDUM OF LAW

This matter came for hearing before the this Court (Stevens, J.) on Judith Chalupowski-Venuto's Petition to Remove Chester J. Chalupowski, Jr. as Trustee of the Chalupowski Realty Trust. After review of the Petition and the evidence presented at hearing, the Court issues the following memorandum and order.

I. PARTIES / FAMILIAL RELATIONSHIPS

**Chester J. Chalupowski, Sr.**
- Settlor of Chalupowski Realty Trust
- Original Trustee of Chalupowski Realty Trust
- died August 12, 1989

- MARRIED TO -

**Mary Jane Chalupowski**
- Successor Trustee of Chalupowski Realty Trust
- Life Estate interest in Chalupowski Realty Trust

CHILDREN

**Chester J. Chalupowski, Jr.**
- Sole Trustee of 26-30 Andrew Street Realty Trust
- Sole Trustee of Family Trust
- Beneficiary of 1/3 interest in Chalupowski Realty Trust

**Donna Chalupowski**
- Petitioner for Conservatorship over Mary Jane Chalupowski
- Beneficiary of 1/3 interest in Chalupowski Realty Trust

**Judith (Chalupowski) Venuto**
- Successor Trustee of Chalupowski Realty Trust
- Beneficiary of 1/3 interest in Chalupowski Realty Trust

1

## II. Relevant Factual and Procedural History

1.  On December 19, 1984, the Chalupowski Realty Trust was formed by Chester J. Chalupowski, Sr. under a Declaration of Trust. On the same date, the instrument was recorded at the Essex County South Registry of Deeds at Book 7612, Page 409. The terms of the trust are addressed *infra*, under Section III, entitled The Chalupowski Realty Trust.

2.  On December 19, 1984, Chester J. Chalupowski, Sr. and Mary Jane Chalupowski, as tenants by the entirety, conveyed the properties known as Twenty-six (26) and Thirty (30) Andrew Street, Salem, Massachusetts to Chester J. Chalupowski, Sr. as Trustee of the Chalupowski Realty Trust. The quitclaim deed recording this transaction was filed on December 20, 1984, with the Essex County South Registry of Deeds at Book 7612, Page 416.

3.  On August 12, 1989, Chester J. Chalupowski, Sr. died. Pursuant to the terms of the Chalupowski Realty Trust, upon Mr. Chalupowski's death, the Petitioner and Mary Jane Chalupowski assumed the duties of co-trustees of the Chalupowski Realty Trust.

4.  On July 9, 1993, Chester J. Chalupowski, Jr. transferred $176,022.21 from the individual accounts of Mary Jane Chalupowski to one account held jointly in the names of Chester J. Chalupowski, Jr. or Mary Jane Chalupowski. At this time a document was executed entitled "Agreement Regarding Absolute and Final Transfer of Funds and Payment of Annuity." As terms of the agreement, the monies were to be transferred to Chester J. Chalupowski, Jr. and he would then pay four (4%) percent interest per annum, on a monthly basis. Upon Mary Jane Chalupowski's death, the principal would become the property of Chester J. Chalupowski, Jr. The signing of the Agreement was recorded on video tape.

5.  On August 17, 1993, Donna Chalupowski, daughter of Mary Jane Chalupowski, challenged the July 9, 1993 transfer, and sent correspondence to Chester J. Chalupowski, Jr. for return of the monies.

6.  At some time shortly after August 17, 1993, Chester J. Chalupowski removed the funds from the joint account held in his and Mary Jane Chalupowski's name and placed it into a separate account bearing his name only.

7.  On September 13, 1993, Mary Jane Chalupowski signed an affidavit, alleging that she was coerced into signing the agreement, and seeking its recission.

8.  On October 12, 1993, Mary Jane Chalupowski created a handwritten document which claims that her affidavit of September 13, 1993, was the product of duress by her daughter, Donna Chalupowski, and reaffirmed the agreement of July 9, 1993. The

2

document explains that the purpose of the transfer of funds was to "increase, protect and shelter [her] income."

9.    On October 21, 1993, Donna Chalupowski, as Next Friend of Mary Jane Chalupowski, filed a Complaint in Essex Superior Court, Docket #93-2465, seeking the return of the $176,220.21.  On October 27, 1993, Donna Chalupowski, obtained an Attachment on the $176,220.21. The lawsuit is currently pending.

10.   On February 10, 1994, Donna Chalupowski petitioned the Court for a Permanent Conservatorship over her mother, Mary Jane Chalupowski (docket #1) on the basis of mental weakness.

11.   On March 9, 1994, Judith M. Venuto, daughter of the proposed ward, Mary Jane Chalupowski, filed a handwritten objection (docket #4) to the Conservatorship petition.

12.   On March 16, 1994, a Medical Certificate (docket #5) was filed.  The Certificate stated that the proposed ward had "below average ability to handle abstraction, conceptualization and arithmetic problems."  The Certificate was signed by Robert D. Fallon, Jr., M.D..

13.   On March 16, 1994, Chester J. Chalupowski, Jr. filed an Opposition to the Temporary Conservatorship (docket #8) opposing the temporary conservatorship and the appointment of Donna Chalupowski as conservator.

14.   On March 23, 1994, Donna Chalupowski "and other interested parties who have been given notice in accordance with applicable rules" entered into a stipulation (docket #9) agreeing to the appointment of Attorney Carmen Frattaroli as Temporary Conservator for Mary Jane Chalupowski for a period of ninety (90) days.  Footnoted within the stipulation is a note which states that Judith Venuto did not assent to the stipulation.

15.   On March 23, 1994, Chester J. Chalupowski, Jr. filed a Conditional Agreement of Chester Chalupowski to Appointment of Temporary Conservator (docket #10).  As part this pleading, Chester J. Chalupowski, Jr. reserved the right to challenge the necessity of the Temporary Conservator or any of his actions.

16.   On April 4, 1994, Chester J. Chalupowski, Jr. filed Chester J. Chalupowski's Statement of Opposition to Conservatorship (docket #11) opposing to a permanent conservatorship for Mary Jane Chalupowski.

17.   On April 6, 1994, Carmen A. Frattaroli filed a Bond of Temporary Conservator (docket #12) listing the estimated personal estate at $1,000.00.

3

18.  On April 6, 1994, this Court (Manzi, J.) entered a Temporary Decree of Conservatorship (docket #13) naming Carmen A. Frattaroli as Temporary Conservator. The appointment of Attorney Frattaroli was extended, by motions, until December 25, 1994 (See docket #17).

19.  On July 1, 1994, Carmen A. Frattaroli, as Temporary Conservator filed an Inventory (docket #15) listing as the amount of the personal estate $187,500.00 and as the amount of real estate $289,000.00.

20.  On October 6, 1994, a Medical Certificate (docket #20) was filed for the proposed ward. The Certificate stated that the proposed ward "has significant difficulties with abstraction and arithmetic concepts and cannot responsibly manage her financial affairs." The Certificate was signed by Robert D. Fallon, Jr., M.D..

21.  On October 24, 1994, the Court (Manzi, J.) entered a Temporary Order (docket #22) appointing Dr. Laurence Posner to perform a mental examination of the proposed ward; Mary Jane Chalupowski.

22.  On October 4, 1995, the 26 Through 30 Andrew Street Realty Trust was formed by Chester J. Chalupowski, Jr. under a Declaration of Trust. On the same date, the trust instrument was recorded at the Essex County South Registry of Deeds at Book 13236, Page 196. The terms of the trust are addressed *infra*, under Section III, entitled 26 Through 30 Andrew Street Realty Trust.

23.  On October 4 and 13, 1995, Petitioner and Mary Jane Chalupowski, as Co-Trustees of the Chalupowski Realty Trust, conveyed the entire corpus of the Chalupowski Realty Trust, namely the real property known as Twenty-six (26) and Thirty (30) Andrew Street, Salem, Massachusetts, to the 26 Through 30 Andrew Street Realty Trust. The quitclaim deed recording this transaction was filed on October 16, 1995, with the Essex County South Registry of Deeds at Book 13236, Page 201.

24.  On November 17, 1995, Health and Education Services, Inc., filed a Petition for Order for Protective Services (docket 94P-0314-EA1, docket #1). The petition sought protective services for the proposed ward, Mary Jane Chalupowski, due to financial exploitation. On December 5, 1995, after a preliminary hearing, the Court (Manzi, J.) appointed Elaine Clarke as a Guardian *Ad Litem* for Mary Jane Chalupowski.

25.  On January 25, 1996, Health and Education Services, Inc., filed a Conservatorship Petition (docket 94P-0314-CV2, docket #1). The petition sought a conservatorship over the proposed ward, Mary Jane Chalupowski, on the grounds of mental weakness. On January 30, 1996, the Court (Manzi, J.) entered a Temporary Decree of Conservatorship (docket 94P-03140CV2, docket #6) and re-appointed Carmen A. Frattaroli, as temporary conservator. The temporary conservatorship was extended until June 27, 1996 (See

4

docket 94P-0314-CV2, docket #10) (See also docket 94P- 0314-C1, docket #32 and #36).

26.     On March 26, 1996, the Mary Jane O. Chalupowski, Judith Chalupowski Venuto, Donna
        Chalupowski and Chester J. Chalupowski, Jr. Family Trust ( hereinafter referred to as the
        "Family Trust") was formed by Chester J. Chalupowski, Jr. under a Declaration of Trust.
        Unlike the previous two trust instruments, the Family Trust instrument was never
        recorded at the Essex County South Registry of Deeds. The terms of the trust are
        addressed *infra*, under Section III, entitled The Mary Jane O. Chalupowski, Judith
        Chalupowski Venuto, Donna Chalupowski and Chester J. Chalupowski, Jr. Family Trust.

27.     On April 24, 1996, the Court (Highgas, J.) entered a Court Directive (docket #31)
        directing the Family Service Office to designate a psychologist or psychiatrist to conduct
        an examination upon Mary Jane Chalupowski in order to determine "is she is a person
        who by reason of mental weakness is unable to properly care for her property such that a
        conservator [need] be appointed to manage her property."

28.     On July 3, 1996, the Court (Highgas, J.), after hearing on June 27, 1996, issued an Order
        Vacating Temporary Conservatorship of Mary Jane Chalupowski and Further Orders
        (docket #32) which provided in pertinent part that: (1) the appointment of Carmen
        Frattaroli as Temporary Conservator of Mary Jane Chalupowski was revoked as of June
        27, 1996; (2) Chester J. Chalupowski, Jr. was ordered to assist Mary Jane Chalupowski in
        the management of the properties at 26 and 30 Andrew Street and render an accounting to
        the trustees of all income received and all funds disbursed for the preceding month; and
        (3) the Declaration of Trust of the Mary Jane O. Chalupowski, Judith Chalupowski
        Venuto, Donna M. Chalupowski and Chester J. Chalupowski, Jr. Family Trust was
        affirmed.

29.     On October 30, 1996, the Court (Highgas, J.) entered an Amended Order (docket #36)
        vacating the Temporary Conservatorship and an Order on Petition for Protective Services.
        The Order provides: (1) the Petitioners are unable to demonstrate that Mary Jane
        Chalupowski is unable to properly care for her property due to mental weakness; (2) the
        Petition for Conservatorship filed by Donna Chalupowski on February 10, 1994, docket
        no. 94P-0314-C1 is DENIED and DISMISSED as of June 27, 1996;   (3) the Petition for
        Conservatorship filed by Health and Education Services, Inc., on January 25, 1996,
        docket no. 94P-0314-CV2 is DENIED and DISMISSED as of June 27, 1996; (4) the
        appointment of Carmen Frattaroli as temporary conservator of Mary Jane Chalupowski is
        revoked as of June 27, 1996; and (5) the appointment of Elaine Clark as Guardian *Ad
        Litem* is revoked as of June 27, 1996.

30.     On April 12, 2000, Judith Chalupowski Venuto filed a Petition to Remove Chester J.
        Chalupowski as Trustee of the Chalupowski Realty Trust (docket #62) seeking that she be
        permitted to resume her duties as trustee under the terms of the Chalupowski Realty
        Trust.

31.    On May 26, 2000, Judith Chalupowski Venuto filed a second Petition to Remove Chester J. Chalupowski, Jr. as Trustee of the Chalupowski Realty Trust (docket #63) wherein she requested that she be appointed his successor.

32.    On or about August 8, 2000, Judith Chalupowski Venuto filed a Motion to "Waive Bond with Sureties as Trustee Resumes Duties Extend Time to File Documents" (docket #72). On this same day, the court (Kagan, J.) deferred these matters to August 23, 2000, to be heard with Judith Chalupowski Venuto's Complaint for Contempt scheduled to be heard that same date. On August 25, 2000, the Court (Kagan, J.) entered a Memorandum and Order (docket #73) continuing the hearing for one week. The Court also issued capiai for the defendants, Chester J. Chalupowski, Jr. and Harbor Realty.

33.    On August 30, 2000, the Court (Stevens, J.) issued an Order (docket #76) which provided that inasmuch as it appeared that proper service may not have been made with regard to the Petition filed April 12, 2000: (1) the Petitioner, Judith Chalupowski Venuto, was ordered to obtain a new citation and to comply with the terms of the citation as instructed; (2) all motions and contempts then pending were stayed pending completion of service of process in accordance with the citation and upon proper filing of the citation with proof of service; (3) upon filing of the citation with proof of proper service, the trial department would schedule the matter for a pre-trial conference; (4) all motions and contempts then pending or filed thereafter were to be consolidated for hearing at the pre-trial conference; (5) all motions and complaints by the petitioner were to first be reviewed by the lawyer for the day before filing; and (6) except as otherwise provided, all prior orders of the Court then in effect, where ratified and confirmed.

34.    On or about October 10, 2000, Judith Chalupowski Venuto filed an Affidavit (undocketed) in support of her request to resume duties as trustee of the Chalupowski Realty Trust with accompanying letters of recommendation.

35.    On November 17, 2000, the Court issue a Pre-Trial Notice and Order (undocketed) scheduling a pre-trial conference on December 29, 2000.

36.    On December 29, 2000 Chester J. Chalupowski, Jr. filed a Pre-Trial Conference Memorandum and a First Account of the Chalupowski Family Trust (undocketed). Mary Jane Chalupowski also filed an Affidavit to affirm her wish that her son, Chester J. Chalupowski, Jr. continue to serve as trustee of the 26 Through 30 Andrew Street Trust. Also on this date, the court (Stevens, J.) issued an Order Following Pre-Trial Conference wherein trial was scheduled for one day on the issue of Removal of Trustee.

10/16/95 01:53  Inst 491
BK 13236 PG 20

# QUITCLAIM DEED

KNOW ALL MEN BY THESE PRESENTS that we, **MARY JANE O. CHALUPOWSKI** and **JUDITH CHALUPOWSKI VENUTO**, trustees of the CHALUPOWSKI REALTY TRUST, both of Salem, Essex County, Massachusetts, for nominal consideration paid and in full consideration of $1.00 hereby grant to **CHESTER J. CHALUPOWSKI, JR.**, trustee of the 26 THROUGH 30 ANDREW STREET REALTY TRUST, under a Declaration of Trust, dated _October 4, 1995_ to be recorded herewith, of 11 Becket Street, Salem, Essex County, Massachusetts, and the beneficiaries, heirs and assigns, and the survivors, and the heirs and assigns of the survivor of said trust, forever, with quitclaim covenants:

PARCEL I:
The land, with the buildings thereon, situated at 30 Andrew Street, Salem, bounded and described as follows:

| | |
|---|---|
| NORTHEASTERLY | on Andrew Street, ninety-five (95) feet to land of Ann Brown; thence |
| SOUTHERLY | by said Brown's land, about ninety-six (96) feet to land now or late of Baldwin; thence |
| SOUTHWESTERLY | partly by land now or late of Said Baldwin, and partly by land now or late of Perkins, about ninety-six (96) feet to land now or late of Putnam; and thence |
| NORTHERLY | on land now or late of Putnam, to bound first mentioned. |

For title reference, see Estate of Genowefa Chalupowski, Essex Probate No. 334548; and Deeds Recorded with Essex South District Registry of Deeds, Book 2623, Page 429, and, Book 647, Pages 746 and 747.

PARCEL II:
The land in said Salem, situated at 26 Andrew Street, with the buildings thereon, bounded and described as follows:

| | |
|---|---|
| SOUTHEASTERLY | by land now or late of Carey, ninety-five (95) feet, six (6) inches, to land now or late of Putnam; thence turning at about a right angle and running |
| SOUTHWESTERLY | by said Putnam land and by land formerly of Howard, seventy (70) feet to land now or late of Clark; thence turning at about a right angle and running |
| NORTHWESTERLY | by said Clark land to Andrew Street; thence turning at about a right angle and running |
| NORTHEASTERLY | by Andrew Street, sixty-nine (69) feet, four (4) inches, to the point of beginning. |

Being the same premises conveyed to Chester J. Chalupowski by deed of Joseph Chalupowski and Chessie LeTarte, dated November 23, 1977, recorded with said Registry of Deeds, Book 6447, Page 746 and by Deed of John Chalupowski, dated December 1, 1977, recorded with said Registry of Deeds, Book 6447, Page 747, however otherwise the same may be bounded and described. Also being the same premises conveyed to Floryann Chalupowski, et ux, dated December 31, 1924,

BK 13236 PG 202

recorded with said Registry of Deeds, Book 2623, Page 429. Parcel
I and Parcel II, also being the same premises conveyed to the
Chester J. Chalupowski, as trustee of the Chalupowski Realty Trust,
by deed dated December 19, 1984, and recorded at said Registry of
Deeds at Book 7612, Page 416.

WITNESS our hands and seals, this ~~4th~~ day of _October_,
1995.

_Mary Jane O. Chalupowski_
Mary Jane O. Chalupowski, Trustee

_Judith Chalupowski Venuto_
Judith Chalupowski Venuto, Trustee

THE COMMONWEALTH OF MASSACHUSETTS

County of ~~Essex~~ _Middlesex_,                    Date: _October 4, 1995_

Then personally appeared the above-named Mary Jane O. Chalupowski
and acknowledged the foregoing instrument to be her free act and
deed before me.

_[signature]_
Notary Public;
My Commission Expires: _April 26, 200_

THE COMMONWEALTH OF MASSACHUSETTS

County of ~~Middlesex~~ _Essex_,                    Date: _Oct. 13, 1995_

Then personally appeared the above-named Judith Chalupowski Venuto
and acknowledged the foregoing instrument to be her free act and
deed before me.

_[signature]_
Notary Public; JAYNE S. DAVIDSON
My Commission Expires: _Jan. 11, 2002_

SUPERIOR COURT

93- 2465

FINISHED

| DONNA M. CHALUPOWSKI, NEXT OF FRIEND FOR MARY JANE CHALUPOWSKI ( AN ELDERLY PERSON.) | VS. | CHESTER J. CHALUPOWSKI, JR., |

**COUNSEL FOR PLAINTIFF**

(508)744-8851
JOSEPH P. CORONA, Esq., 265 ESSEX ST., SALEM, MA
01970, bbo # 100360
Carmen A. Frattaroli BBO#177960, Carmen A. Frattaroli &
Assoc. 76 Lafayette St., Salem, Ma. 01970 740-9501 Mary Jane
conservator.
Elaine M. Clark, BBO#085046, 284 Cabot St., Beverly, Ma.
508/744-5556 Guardian ad litem bklkling 765 Essex st
Salem, Ma 01970

**COUNSEL FOR DEFENDANT**

(508)774-7123
Robert L. Holloway, Jr. BBO#238560 Ardiff & Morse, P.C.
One Corporate Place 55 Ferncroft Road Danvers, Ma. 01923
Jayne S. Davidson, 155 Nahant St., Nahant, Ma. 01908 (617)
581-7100 for C.J.C.,
617/581-7100 BBO #550673 Jayne S. Davidson 155 Nahant Road
Nahant, Ma 01908

| DATE | NO. | DOCKET ENTRIES | ADDITIONAL PLAINTIFFS | ADDITIONAL DEFENDANTS |
|---|---|---|---|---|
| OCT 21 | 1 | COMPLAINT | | |
| | 2 | CIVIL ACTION COVER SHEET | | |
| OCT 29 | 3 | Return of Service on the deft(CnO) | | |
| * 27 | 4 | Ex Parte Motion for Approval or Attachment-allowed-Whitehead,J(CA) | | |
| 27 | 5 | Findings and Ex Parte ORDER for Approval of Attachment in the amount of $190,000.00-Whitehead,J(CA) | | |
| Nov 18 | 6 | Stipulation to enlarge time to answer or otherwise plead to the complaint(CA) | | |
| | - | Motion #6-Allowed-Grabau,J(CA) | | |
| 19 | 7 | Answer of Defendant Chester J.Chalupowski, Jr. (EH) | | |
| * 18 | 8 | Notice of Appearance of Robert L Holloway,Jr for the deft(CA) | | |
| Sept 20 | 9 | Conciliation Order, will be held on Thursday 10/27/94 at 12:00p m dated 9/14/94 (EH) | | |
| 10/11 | - | Trial Order Entry & Scheduled for Conference 11/3/94 | | |
| Oct 27 | 10 | joint conciliation memorandum filed before conciliator Daniel Donovan. 1c | | |
| 27 | 11 | conciliators report placed in order on trial list Daniel Donovan, conciliator- 1c | | |

CODE: B99

CONTINUATION SHEET

CASE NAME: Chalupowski

| CASE | DOCKET | DOCUMENT |
|---|---|---|
| | 94P0314 – C1 | 2 |

| P A P E R # | DATE FILED | DATE OF ORDER | DOCUMENT | DISPOSITION | JUSTICE |
|---|---|---|---|---|---|
| 22 | Oct 25, 94 | Oct 25 94 (11-28-94) | Qualified professional within 30 days; see orders. Temporary Order. | | Mary. |
| (23) | | | Report and recommendations of Temporary Conservator. | | Mange |
| 24 | May 24, 95 | | Precident Pt 1 by Conservator/Conservator/Referral | | |
| 25 | Jun 24 95 | | for Jos & Costi. | | |
| 25 | Jun 24 95 | Oct 7-94 | Petition to Appoint Jervis | | |
| 26 | Jul 12 95 | Jun 24 95 (1-25-95) | Pet (W) Interlocution Surely Obtained. | | H.L.M. |
| 27 | B pt 2 95 | | Per. for Counsel. Fees | | |
| 28 | | | Appearance of Atty. Payne & Davidson | | |
| 29 | Sept 5 95 | | of Instant for Christie Chapulowski, J.R. | | |
| 30 | Nov 4, 95 | | Certificate filed of courier | | |
| 31 | | | Military Affidavit | | |
| 32 | | | Withdrawal of appearance of Robert L. Holmes, Jr. | | |
| 33 | | Apr 29 96 (5-2-96) | for Christie Chapulowski. J.R. Construct. Directive. | | Highgas |
| | | July 3 96 (7-18-96) | Order vacating Temp. Conservatorship | | |

## COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT
## PROBATE AND FAMILY DEPARTMENT

**ESSEX, ss.**

IN RE:               )
The Matter of the       )
Chalupowski Family Realty  )
Trust              )
_____)

**DOCKET NOS.**
**94P0314C1**
**01E0005GC1**
**00E0126GC1**
**00E0127GC1**

### MEMORANDUM OF DECISION AND ORDERS

These matters came before the Court (Stevens, J.) on various motions. After hearing and due consideration, the Court enters the following Memorandum of Decision and Order on each motion.

### I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

1. On December 19, 1984, the Chalupowski Realty Trust was formed by Chester J. Chalupowski, Sr. under a Declaration of Trust. On the same date, the instrument was recorded at the Essex County South Registry of Deeds at Book 7612, Page 409.

2. On December 19, 1984, Chester J. Chalupowski, Sr. and Mary Jane Chalupowski (hereinafter "Mary Jane"), as tenants by the entirety, conveyed the properties known as Twenty-six (26) and Thirty (30) Andrew Street, Salem, Massachusetts to Chester J. Chalupowski, Sr. as Trustee of the Chalupowski Realty Trust. The quitclaim deed recording this transaction was filed on December 20, 1984, with the Essex County South Registry Deeds in Book 7612, Page 416.

3. On August 12, 1989, Chester J. Chalupowski, Sr. died. Pursuant to the terms of the Chalupowski Realty Trust, upon Mr. Chalupowski's death, Judith Chalupowksi (hereinafter "Judith") and Mary Jane assumed the duties of co-trustees of the Chalupowski Realty Trust.

4. On October 4, 1995, the 26 Through 30 Andrew Street Realty Trust was formed by Chester J. Chalupowski, Jr. (hereinafter "Chester") under a Declaration of Trust. On the same date the trust instrument was recorded with the Essex County South Registry of Deeds in Book 13236, Page 196.

5. On October 4 and 13, 1995, Judith and Mary-Jane as co-trustees of the Chalupowski Realty Trust, conveyed the entire corpus of the Chalupowski Realty Trust, namely the real property known as Twenty-six (26) and Thirty (30) Andrew Street, Salem, Massachusetts, to the 26 Through 30 Andrew Street Realty Trust. The quitclaim deed recording this transaction was filed on October 16, 1995, with the Essex County South Registry of Deeds,

in Book 13236, Page 201.

6.   On March 26, 1996, the Mary Jane O. Chalupowski, Judith Chalupowski Venuto, Donna
     Chalupowski and Chester J. Chalupowski, Jr. Family Trust (hereinafter "Family Trust")
     was formed by Chester under a Declaration of Trust. The Family Trust instrument was
     never recorded at the Essex County South Registry of Deeds.

7.   On July 3, 1996, the Court (Highgas, J.), after hearing on June 27, 1996 issued an Order
     Vacating Temporary Conservatorship of Mary Jane Chalupowski and further Orders which
     provide in pertinent part that: (1) Chester J. Chalupowski, Jr. was ordered to assist Mary
     Jane Chalupowski in the management of the properties at 26 and 30 Andrew Street, which
     were held by the Chalupowski Realty Trust, and render an accounting to the trustees of all
     income received and all funds disbursed for the preceding month; and (2) the Family Trust
     was affirmed.

8.   On April 12 and May 26, 2000, Judith filed Petitions to Remove Chester J. Chalupowski
     Jr. as Trustee of the Chalupowski Realty Trust.

9.   On December 8, 2000, Donna Chalupowski (hereinafter "Donna") filed a Petition to
     Remove Chester J. Chalupowski, Jr. as Trustee of the Family Trust (00E0127-GC1) and a
     Petition for Declaratory Judgment (00E0126-GC1) alleging that the transfer of property
     from the Chalupowski Realty Trust to the 26 Through 30 Andrew Street Trust should be
     declared null and void and that Chester was not performing his duties as trustee. Chester
     filed Motions to Dismiss on January 11, 2001.

10.  On January 5, 2001, Donna filed a Petition to Remove Mary Jane Chalupowski and Judith
     Chalupowski Venuto as Trustees and Chester J. Chalupowski, Jr. as Manager of the
     Chalupowski Realty Trust (01E0005-GC1).

11.  On February 13, 2001, the Court (Stevens, J.) entered Memorandum of Decision and Order
     dismissing Judith's Petition to Remove Chester as Trustee of the Chalupowski Realty
     Trust. The Order provided in pertinent part: (1) Mary Jane and Judith, in their capacity as
     trustees of the Chalupowski Realty Trust, validly effectuated the quitclaim deed conveying
     the real estate to the 26 Through 30 Andrew Street Realty Trust; (2) the corpus of the
     Chalupowski Realty Trust was effectively depleted by the conveyance to the 26 Through
     30 Andrew Street Realty Trust; and (3) because the beneficiaries are the same under the
     Chalupowski Realty Trust and the 26 Through 30 Andrew Street Realty Trust the
     remainder interests were not altered by the transfer of the property from one trust to the
     other.

12.  On February 23, 2001, Donna filed a Motion for New Trial and Amendment of Judgment.
     As grounds thereof, Donna alleged: (1) that the Court was not made aware of certain facts
     which, if known, would have yielded a different result; (2) that the decision of the Court
     was contrary to case law; and (3) that the decision of the Court did not enforce the settlor's
     intent.

2

13. Chester filed a Motion in Opposition to Donna's Motion for New Trial and Amendment of Judgment. On April 17, 2001 Chester filed a Supplemental Opposition to Petitioner's Motion.

14. On April 17, 2001, Chester filed a Motion to Consolidate Docket Nos. 94P0314C1, 00E0126, 00E0126, and 00E0127.

## SUPERIOR COURT ACTIONS

15. On October 16, 1995, Donna, filed a Petition to Remove Trustees (95-2200B) in Essex County Superior Court. On March 11, 1996, Donna filed a Second Motion for Leave to Amend Complaint in Essex Superior Court. (93-2465-B ). These motions challenged the transfer of the Chalupowski Realty Trust corpus to the 26 Through 30 Andrew Street Realty Trust based on the mental capacities of Judith and Mary Jane and misrepresentations of Chester.

16. On August 7, 1997, an Order of Dismissal (Bohn, J.) was issued on the Petition to Remove Trustees (95-2200B).

17. On November 1, 2000, a Judgment of Dismissal was issued *nunc pro tunc* to September 11, 1996 (Rouse, J.) on the Motion for Leave to Amend Complaint (93-2465-B).

## II. DISCUSSION

Currently before the Court are various motions to dismiss, as well as a motion for a new trial. The parties and interested persons involved in this litigation are Mary Jane Chalupowski, and her children, Judith Chalupowski-Venuto, Donna Chalupowski, and Chester J. Chalupowski, Jr.. The underlying dispute, which has been ongoing for several years, involves a number of trusts for which each of the parties has been either a beneficiary or trustee. In October 1995, certain trust property was transferred from the Chalupowski Realty Trust into a new trust (26 Through 30 Andrew Street Realty Trust) for which Chester was the trustee. This transfer as well as the competency of Mary Jane and Judith and Chester's role as trustee are the focus of this litigation. This Court, as well as the Essex County Superior Court, have at different time issued decisions in this case, yet these issues continue to come before this Court.

## A.    Motion To Consolidate

On April 17, 2001, Chester filed a Motion to Consolidate Docket Nos. 94P0314C1,

3

00E0005, 00E0126 and 00E0127. In his motion, he contends that these cases should be consolidated (1) because they all involve issues previously litigated, (2) because they involve the same parties, (3) because each action is moot or subject to dismissal under res judicata, (4) because each is brought in an effort to unduly interfere with the proper administration of the estate, and (5) for judicial economy.

Mass. R. Civ. P., Rule 42(a) governs the consolidation of cases and states,

> When actions involving a common question of law or fact are pending before the court, in the same county or different counties, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation is entirely a matter of judicial discretion. *See* Beninati v. Beninati, 18 Mass.App.Ct. 529, 536 (1984).

In this case, the issues involved in the four cases are, in fact, similar. They involve the same parties, similar issues, and the same burdens of proof. Specifically, each of the cases involve the removal of Mary Jane, Judith or Chester as trustee of certain trusts (94P0314C1, 00E0127 and 00E0005), as well as an action for declaratory relief alleging a deed from Judith and Mary Jane to Chester as trustee, is null and void (00E0126).

Accordingly, because all of the issues, parties and proof are similar, the Court exercises its discretion to consolidate these cases and Chester's Motion for Consolidation is hereby ALLOWED (subject to further disposition as provided hereafter).

## B. 94P0314C1: Donna Chalupowski's Motion for New Trial or to Alter and Amend Judgment

The Petitioner, Donna, alleges that the Court (Stevens, J.) was not aware of certain facts when issuing its February 13, 2001 decision and had the Court been aware of those facts the conclusion would have been different. Donna also alleges that the Court's decision was contrary to case law, and that the court failed to enforce the settlor's intent of the Chalupowski Realty Trust.

Rules 59(a) and (e) govern motions for a new trial and amendments of judgments. Although, Rule 59 does not lay out specific grounds for granting a new trial it "incorporates by reference the grounds which the Massachusetts courts have previously recognized..." Smith &

4

Zobel, Rules of Practice §59.2 (1977). One ground for a new trial is newly discovered evidence. *See,* Vanalstyne v. Whalen, 15 Mass.App.Ct. 340, 347 (1983)(recognizing that relief under either Rule 59(a) or Rule 60(b)(2) for newly discovered evidence require the same showing). The test for newly discovered evidence is "whether the evidence: (1) was unknown and, despite the moving party's diligence, unavailable at the original trial; and (2) probably would be a real factor in the jury's decision on retrial." Starczewski v. Town of Dudley, 50 Mass.App.Ct. 1108, 1108 (2000), *quoting* Smith & Zobel, Rules Practice §59.5 (Supp. 2000).

Preliminarily, Donna had notice of Judith's complaint. Donna, as a vested remainderman of the Chalupowski Realty Trust, is an interested party in any litigation concerning this trust. On April 12 and May 26, 2000, Judith filed Petitions to Remove Chester as Trustee of the Chalupowski Realty Trust.[1]  On August 25, 2000, after a hearing was held, at which Donna was present, the Court (Kagan, J.), issued a Memorandum of Decision and Order concerning motions[2] Judith had filed and whether or not all parties had received proper notice. After being unable to resolve the notice dispute, the Court continued the proceedings until August 30, 2000. On that date, Donna filed her appearance in the matters concerning the Chalupowski Realty Trust. Additionally, on October 10, 2000, Donna filed with this court a document in which she agreed with Judith that Chester should be removed as trustee. Donna's filing an appearance and filing additional documents clearly shows her involvement in Judith's case and indicates she had sufficient notice of the proceedings resulting in the decision from which she now seeks relief. Accordingly, she had an opportunity to bring before the Court any evidence she deemed relevant prior to the decision on Judith's motion.

Further, the facts that Donna alleges were not available to the Court, which presumably form the basis for her complaint, were, in fact, available. Donna states in her Memorandum of Law, "...this Court, [Stevens, J.] was not given facts during his hearing that Judge Highgas received during his hearing." Presumably, the facts to which Donna refers, which were allegedly not given to this Court, surround the efficacy of the transfer of property and the competency of those who transferred it.  In 1996, approximately four years before this action was filed, Donna

---

[1] This is the complaint which is the subject of Donna's Motion for a New Trial.

[2] Petition to Remove Fiduciary, Motion to Waive Sureties, and Contempt

5

indicated her concerns regarding these issues in her Second Motion for Leave to Amend Complaint in her Superior Court Action.[3] Additionally, on February 10, 1994, Donna filed a Petition for Conservatorship of Mary Jane. In 1996, the Court (Highgas, J.) issued an decision which concluded Donna had failed to demonstrate Mary Jane could not properly care for her property due to mental weakness.

Given that Donna had notice of the complaint, and raised the issue of competency and the efficacy of the transfer of property prior to the time for hearing in this case, the Court finds that her new evidence is not "newly discovered" for purposes of her motion. Donna had sufficient knowledge of the facts and sufficient notice of the hearing to which she could have presented any evidence she may have had, but she chose not to do so at that time. Therefore, whatever evidence she may have is not newly discovered and does not serve as a basis for this court the grant her the relief she requests.

Donna's contention that the court erred in interpreting Massachusetts law is more akin to a motion for reconsideration which has not been filed. Moreover, that issue is one properly raised by appeal.

Accordingly, Donna's Motion for a New Trial or to Alter or Amend the Judgment is DENIED.

## C.    00E0126GC1: Chester J. Chalupowski, Jr.'s Motion to Dismiss Donna Chalupowski's Complaint for Declaratory Judgment

On December 8, 2000, Donna filed a Complaint for Declaratory Judgment seeking to have the deed that transferred the property from the Chalupowski Realty Trust to the 26 Through 30 Andrew Street Realty Trust declared null and void, to have the Chalupowski Realty Trust declared legal owner of said property, to appoint a trustee for the Chalupowski Realty Trust, and to order Chester to file an accounting of income and expenses of said property. Her complaint again focuses on the competency of Judith and Mary Jane in effectuating the transfer.

The Court may "on appropriate proceedings make binding declarations of right, duty,

---

[3]Docket No. 93-2465-B. In this complaint, Donna as next friend to Mary Jane, sought to have in Count 3 the same deed declared null and void. As support for this complaint Donna alleged mental incompetency of both Judith and Mary Jane as well as false representations by Chester. These are the same issues currently before the Court.

6

status, and other legal relations sought thereby. . . in which an actual controversy has arisen and is specifically set forth in the pleadings." G.L. c. 231A, §1. However, Donna's complaint is barred by the doctrine of res judicata because the issues she seeks to litigate in this Court have already been resolved in a prior proceeding and therefore there is no actual controversy as required by the statute.

"The doctrine[] of res judicata [is] most important in assuring that judgments are conclusive, thus avoiding relitigation of issues that could have been raised in the original action..." Dowd v. Morin, 18 Mass.App.Ct. 786, 793 (1984) *citing*, Anderson v. Phoenix, 387 Mass. 444, 449 (1982). "A party cannot avoid the rule by attempting to relitigate a claim from a different posture or procedural form." Dowd v. Morin, 18 Mass.App.Ct. 786, 793 (1984).

"The term 'res judicata' includes both claim preclusion and issue preclusion." TLT Construction Corp. v. A. Anthony Tappe and Associates, Inc., 48 Mass.App.Ct. 1, 4 (1999).[4] The elements of issue preclusion and claim preclusion are very similar as that they (1) both require the same parties (or privies) and (2) there must be a final judgment on the merits. *See*, Id. Third, the subject matter must be the substantially the same. *See*, Id. More specifically, claim preclusion requires there be an identity of the cause of action, whereas in issue preclusion, "the issue in the prior adjudication is identical to the issue in the current adjudication" and that issue was essential to the earlier judgment. *See*, Id.

In this case, the dismissal of Donna's claims in the Superior Court have a res judicata effect in this Court because all of the elements have been met. First, Donna filed the complaint in the Superior Court seeking to declare the deed that transferred the Andrew Street property null and void. Further the basis for the Complaint currently before this Court involved substantially the same issues she brought up in the Superior Court Action. Second, there was a final judgment in the Superior Court action as indicated by that court's November 1, 2000 Judgment of Dismissal

---

[4]"The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." TLT Construction Corp. v. A. Anthony Tappe and Associates, Inc., 48 Mass.App.Ct. 1, 4 (1999) *citing* Heacock v. Heacock, 402 Mass. 21, 23 (1988). "[I]ssue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim between the same parties or their privies." TLT Construction Corp. v. A. Anthony Tappe and Associates, Inc., 48 Mass.App.Ct. 1, 4-5 (1999) *citations omitted.*

7

(Rouse, J.) entered *nunc pro tunc* to September 11, 1996.[5] Last, the subject matter of this cause of action is the similar if not identical to the actions filed in the Superior Court because both complaints focus on the efficacy of the transfer of the Andrew Street property.

Because all the elements of res judicata have been met, Donna was a party to a sufficiently similar cause of action which resulted in a final judgement, she is estopped from attempting to re-litigate these issues as no actual controversy exists. Therefore, Chester's Motion to Dismiss is hereby ALLOWED.

## D.    01E0005GC1: Chester J. Chalupowski's, Jr.'s Motion to Dismiss Donna Chalupowski's Petition to Remove Mary Jane Chalupowski and Judith Chalupowski Venuto as Trustees and Chester J. Chalupowski, Jr. as manager of the Chalupowski Realty Trust

On January 5, 2001, Donna, filed a petition to remove Mary Jane and Judith as trustees and Chester as manager of the Chalupowski Realty Trust. Donna alleges that if the said persons remain in management of this Trust, the Trust will suffer great and irreparable loss. On January 11, 2001, Chester filed a Motion to Dismiss stating as grounds thereof that the issue is moot.

The Chalupowski Realty Trust's corpus consisted of the realty located at 26-30 Andrew Street in Salem, Massachusetts. On October 4 and 13, 1995, Mary Jane and Judith in their capacity as trustees conveyed the realty by quitclaim deed to the 26 Through 30 Andrew Street Realty Trust. The beneficiaries and the remainder interests were not altered by that conveyance.

The trust, as explained more fully in the Court's February 13, 2001, decision has been effectively terminated due to the transfer of property, thereby terminating any duties Mary Jane, Judith, and Chester had in the management of said trust. As stated in the Court's February 13, 2001 decision,

> In Article Nine, the trust instrument vests in the trustee(s) the power to "alter or amend" and the power to revoke "in whole or in part." The only restrain on this express power is contained within the same paragraph which states that "[a]ny such alteration, amendment or revocation of [the] trust agreement shall be by an instrument in writing signed by the trustee then in office and recorded in the Essex South District Registry of Deeds" and "if

---

[5] *See,* Mass. R. Civ. P. 41(b)(2)&(3). (When a court renders a dismissal on the motion of the defendant, unless otherwise stated, it operates as a judgment on the merits.)

8

the trust is terminated, [the trustee(s) are to distribute] the principal and income as provided in Article 3." While the trust instrument directs for the disbursement to the beneficiaries upon the termination of the trust, trustee(s) have the express power to alter or amend the Trust to abrogate this condition

Therefore, the conveyance of the Andrew Street property left the Chalupowski Realty Trust effectively depleted of a corpus. As the trust has no corpus, there are no functions to be performed by a trustee or manager and, therefore, no reason for removal.

Donna additionally questions the Court's authority to validate the transfer of the corpus from the Chalupowski Realty Trust to the 26 Through 30 Andrew Street Realty Trust in the February 13, 2001 decision. Donna alleges that Judge Highgas effectively declared that the Andrew Street realty was held in the Chalupowski Realty Trust in his October 30, 1996 Order. However, it appears that Judge Highgas was not made aware that the trust corpus was transferred in 1995. Clearly the deed conveying the property to the 26 Through 30 Andrew Street Realty Trust was already on record. Had that fact been brought to the attention of the judge, it is extremely unlikely that he would not have addressed the prior conveyance. If, as Donna and Judith appear to argue, Judge Highgas intended to rule that the prior conveyance was invalid, it is inconceivable that he would not have addressed that issue in explaining why he concluded that the property was still held by the Chalupowski Realty Trust and that the purported conveyance into the 26 Through 30 Andrew Street Realty Trust was a nullity. The only rationale explanation for the judge not doing so is that he was unaware of the deed and, therefore, unable to address the iissue of the validity of the 1995 conveyance.

It should also be noted that the underlying complaint before Judge Highgas invovled the conservatorship of Mary Jane Chalupowski rather that the validity of any prior transfers of real estate. Judge Highgas' decision and orders of October 30, 1996 as of July 3, 1996, did not hinge upon a determination of title to the real estate. In all likelihood, the error was due to oversight or inadequate evidence rather that a deliberate and informed determination of record ownership. Chester's Motion to Dismiss is therefore ALLOWED.

9

## E. 00E0127GC1: Chester J. Chalupowski's, Jr.'s Motion to Dismiss Donna Chalupowski's Petition to Remove Chester as Trustee of the Family Trust

On December 8, 2000, Donna filed a Petition to Remove Chester as Trustee of the Family Trust. In her petition, Donna alleges, *inter alia,* that Chester has failed to file adequate and sufficient accountings, malfeasance by converting trust property into his own use, and malfeasance by not distributing principal and income to the beneficiaries. On January 11, 2001, Chester filed a Motion to Dismiss contending that he has fulfilled his duties as trustee.

The Family Trust is an intervivos trust created by Chester, the corpus of which was funded with approximately $170,000 from the accounts of Mary Jane. Under the terms of the trust, Chester was designated Trustee and his powers are limited to general inherent trustee powers. Mary Jane has a life estate in the trust, and Chester, Donna, and Judith all have an equal one-third (1/3) remainder interest in the trust, distribution to be made upon the death of Mary Jane.

By Order of the Court (Highgas, J.), Chester was ordered to continue as Trustee of [the Family] Trust and "in his role as trustee shall on a quarterly basis commencing in 1997,[6] render a full and detailed accounting to the beneficiaries of the trust..." Additionally, Chester was ordered to render a full and detailed accounting, by July 15, 1997, of all income received and disbursements made during the calendar year 1996. As a beneficiary of the trust corpus, Donna is an interested party entitled to receive an accounting of the management of the Family Trust. *See*, G.L c.206, §1. Additionally, the trustee "must exercise good faith and act solely in the interests of the beneficiaries." Dunphy, Probate Law & Practice, §39.1 (1997). The trustee must protect and conserve the trust assets and may not take any personal advantage at the expense of the trust. *See,* Id.

Because this Petition brings up issues which have not previously been litigated, specifically the trustee's accounting regarding the Family Trust, as well as allegations of malfeasance and impropriety on the part of the trustee, Chester's Motion to Dismiss is hereby DENIED.

---

[6]The Court Order (Highgas, J), stated Donna as a beneficiary is entitled to an accounting on January 15, April 15, July 15, and October 15 of each year.

10

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
DOCKET NO. 94P 0314 C-1
00E 0126
00E 0127
01E 0005-GC1

IN RE:                              )       PETITION OF JUDITH VENUTO
                                    )       TO REMOVE CHESTER J.
26 Through 30 ANDREW    )       CHALUPOWSKI, JR. AS TRUSTEE
STREET TRUST                  )       OF 26-30 ANDREW STREET
                                    )       REALTY TRUST

Now comes the Petitioner, Judith (Chalupowski) Venuto in the above-entitled

matter and moves this court to remove Chester Chalupowski as Trustee of the 26-30

Andrew Street Realty Trust.

As grounds therefore, the Petitioner states that the Trustee has:

1.    Failed to file accountings to the beneficiaries, on the 15th day of each

      month, commencing July 15, 1996, rending an accounting to the Trustees

      of all income received and funds disbursed for the preceding month,

      pursuant to the order of Highgas, J. dated July 3, 1996;

2.    Failed to act appropriately as manager of the property, delegating the

      management authority to another entity who failed to manage the property

      in an appropriate manner;

3.    Misappropriated funds to be used for the benefit of the Trust;

4.    Wasted the Trust assets;

5.    Performed other acts inconsistent with his fiduciary responsibilities to the

      trust.

*Wherefore,* Petitioner respectfully requests this court to remove Chester J.

Chalupowski, Jr. as Trustee of the 26-30 Andrew Street Realty Trust, and to

appoint a her, or another as successor Trustee of the 26-30 Andrew Street Realty

Trust.

> Respectfully submitted,
>
> JUDITH (CHALUPOWSKI) VENUTO
>
> By her Guardian Ad Litem,
>
>
> Sharon D. Meyers
> BBO #344680
> 30 Federal Street, Suite 200
> Salem, MA  01970
> (978) 745-0575

Dated: 1/14/02

## Certificate of Service

I, Sharon D. Meyers, Guardian Ad Litem for Judith (Chalupowski) Venuto hereby certify that I served by first-class mail, postage pre-paid, upon counsel of record, Joseph P. Corona, Esq. attorney for Donna Chalupowksi, and Karl F. Stammen, Esq., attorney for Chester Chalupowski.

1. *PETITION TO REMOVE CHESTER J. CHALUPOWSKI, JR. AS TRUSTEE FOR THE 26-30 ANDREW STREET REALTY TRUST.*

1/14/02
Date

Sharon D. Meyers, Esq.

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
DOCKET NO. 94P 0314 C-1
00E 0126
00E 0127
01E 0005-GC1

IN RE:

CHALUPOWSKI REALTY TRUST
CHALUPOWSKI FAMILY TRUST
And 26 Through 30 ANDREW
STREET TRUST

## MOTION OF GUARDIAN AD LITEM FOR FURTHER CLARIFICATION OF ROLE

Now comes Sharon D. Meyers, attorney appointed as Guardian Ad Litem for

Judith (Chalupowski) Venuto and requests this court for further instructions as to the

extent of her appointment as Guardian Ad Litem and to determine whether a mental

and/or physical examination should be required of Judith (Chalupowski) Venuto.

As grounds therefore, the Guardian Ad Litem states that this Court appointed her

for the purpose of assisting Ms. Venuto in marshalling her thoughts in a coherent manner

in order to present pleadings and other documents to the court, and to otherwise represent

her during hearings. It is apparent that during the course of the Guardian Ad Litem's

representation and communication with Ms. Venuto that to effectively represent Ms.

Venuto, the scope of the Guardian Ad Litem's charge should be broadened.

M.G. L. c, 201, §34 states that a guardian ad litem may be appointed for "…a

person under a disability…" if under the terms of a written instrument, that person may,

or may become interested in any property real or personal, or in the enforcement or

defense of any legal rights. Although the court has not determined that Ms. Venuto is "a

person under disability" the Guardian Ad Litem request a further determination of this

finding by ordering Ms. (Chalupowski) Venuto to participate in an examination to

determine if she is a person under a disability.

As grounds therefore, the Guardian Ad Litem refers this court to the

accompanying affidavit.

*WHEREFORE,* Sharon D. Meyers, Guardian Ad Litem and requests a further

clarification of her appointment and to order a mental and physical examination of Ms.

Judith (Chalupowski) Venuto.

Respectfully submitted,

JUDITH (CHALUPOWSKI) VENUTO

By her Guardian Ad Litem,

Sharon D. Meyers
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

Dated: 1·29.02

I hereby certify that a true copy of the
above document was served upon each
party appearing pro se and/or the
attorney of record for each other party
by first class mail or by hand.

Dated: 1. 29.02

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
DOCKET NO. 94P 0314 C-1
00E 0126
00E 0127
01E 0005-GC1

IN RE:

)
)
)
)
CHALUPOWSKI REALTY TRUST            )
CHALUPOWSKI FAMILY TRUST            )
And 26 Through 30 ANDREW            )
STREET TRUST                        )

### AFFIDAVIT OF SHARON D. MEYERS, GUARDIAN AD LITEM

I, Sharon D. Meyers, under oath do hereby depose and state:

1.   My name is Sharon D. Meyers and I am an attorney, admitted to the bar of the
     Commonwealth of Massachusetts, have practiced for twenty-two years and
     maintain an office at 30 Federal Street, Salem, Massachusetts.

2.   I was appointed by Stevens, J. to assist Ms. Judith Chalupowski Venuto in these
     consolidated proceedings, in marshalling Ms. Venuto's thoughts, drafting papers
     and otherwise representing her in court, with the specific finding of the court that
     she was not a person with a disability.

3.   During the time of my representation of Ms. Venuto, it is clear that she may be a
     person with a disability.

4.   Ms. Venuto has represented on more than one occasion that her brother is not a
     Trustee of the Chalupowski Family Trust and is only a manager of the 26 through
     30 Andrew Street Realty Trust, yet this is the subject of Petitions brought by Ms.

Venuto in the year 2000, and is the subject of much litigation initiated by her

sister, Donna Chalupowski.

5.    When she is informed that he has not resigned and is still active in the

management and Trusteeship of the Trusts, Ms. Venuto dismisses the idea.

6.    Ms. Venuto has extreme difficulties with limit setting, in that she will call my

office multiple times in a day and multiple times at night.

7.    Recently Ms. Venuto appeared after normal work hours banging on the door to

my office. Ms. Venuto was informed that I was not there and acted in a manner

threatening to the individual in the office. Despite the fact that she was informed

that I was not present, Ms. Venuto banged on the door for approximately ten

minute, placing the individual in fear.

8.    When confronted with her actions the following day, Ms. Venuto denied behaving

in any inappropriate fashion.

9.    I am aware that she telephones the other attorneys involved in this matter, as well

as the Probate Court and other court personnel and has lengthy one-sided and

uninvited conversations concerning her life, her health, her employment, her

marriage, her divorce, her children, her mother and her relationship with her

siblings.

10.    I am aware that there is a restraining order taken against Ms.Venuto by her sister,

another litigant in these proceedings.

11.    I am aware that during the time of my representation, Ms. Venuto was arrested for

a breach of that restraining order.

12.  I do not believe that Ms. Venuto appreciates that there is an eviction proceeding in Salem District Court and the consequences of that proceeding.

13.  Ms. Venuto has informed me that some of her irrational behavior is a result of back injuries she received in a car accident, although I believe that there may be another organic reason for her behavior and inability to comprehend the serious nature of the proceedings she in which she is involved.

14.  Many times after I have had a meeting with her, or have had a lengthy telephone conversation with her, Ms. Venuto will telephone shortly thereafter, again several hours later and usually the following day to repeat the conversation, as she cannot remember what was discussed or what materials were given to her for review.

15.  I am requesting the court to order a physical and mental examination of Ms. Venuto in order to determine whether she is a "person under a disability" which may require an change in the scope of my appointment.

Signed under the pains and penalties of perjury, this 21ᵗʰ day of January 2002.

Sharon D. Meyers

Commonwealth of Massachusett、
The Trial Court

ESSEX _____ Division          Probate and Family Court Department          Docket No. 94P 0314-C1
                                                                                    00E 0126-GC1
                                                                                    00E 0127-GC1
                                                                                    01E 0005-GC1

~~Order~~ — Judgment on Complaint for Civil/~~Criminal~~ Contempt

filed on  October 11, 2002

_____ Chester J. Chalupowski _____ ,Plaintiff

v.

_____ Judith Chalupowski-Venuto _____ ,Defendant

I.    After hearing, it is adjudged that the defendant is:

~~NOT GUILTY of Contempt of this Court.~~

XXX  GUILTY of Contempt of this Court for having willfully:

A.   neglected and refused to pay child support/alimony, the arrearage of which is fixed at _____ .

B.   neglected and refused to pay health insurance premiums for the plaintiff and/or minor child(ren)

C,   neglected and refused to pay medical bills in the amount of $ _____ .

D.   neglected and refused to allow the plaintiff visitation with the minor child(ren) on

_____
_____

E.   neglected and refused to report to the Probation Department regarding his/her job seeking efforts.

F.   neglected and refused to pay the attorney fees owed to plaintiff's attorney in the amount of $ _____ .

XX  G.   refused and/or neglected to submit to a mental and physical examination at her expense to determine if she may qualify as a person under a disability pursuant to the order of February 20, 2002.

_____
_____
_____

(OVER)

CJ-D 404 (10/96)

| | | TIME STANDARDS | | DOCKET NUMBER |
|---|---|---|---|---|
| | | 10/29/01 | 11/8/ | #0136CV1361 |

Trial Court of Massachusetts
District Court Department

| PLAINTIFF | DEFENDANT |
|---|---|
| Chester Chalupowski | Judith Chalupowski |

Salem District Court
65 Washington Street
Salem, MA. 01970

| PLAINTIFF ATTORNEY | DEFENDANT ATTORNEY |
|---|---|
| Pro Se | |

MONEY DAMAGE ACTION (TIME STANDARDS)
☐ Remand ☐ District Court Filing

☒ SUMMARY PROCESS  ☐ VICTIM VIOLENT CRIME  ☐ OTHER CIVIL

| NO. | DATE | DOCKET ENTRIES |
|---|---|---|
| 1. | 10/29/01 | Complaint filed ☐ Statement of damages filed (if applicable) |
| 2. | 11-8-01 | Defendant Defaulted - Notice Mailed |
| 2. | 11/8/01 | Military Affidavit filed. |

DATE OF ENTRY OF JUDGMENT
11/9/01

☐ CIVIL          ☒ SUMMARY PROCESS

☑ Judgment for Pltff .

JUDGMENT TOTAL

☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to date of execution

☑ Possession
e + 11 20 01

☐ Judgment on defendant's counterclaim for _____ .
☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to date of execution.

**Trial Court of Massachusetts**
**District Court Department**

| PLAINTIFF | DEFENDANT |
|---|---|
| Chester Chalupowski | Donna Chalupowski |

Salem District Court
65 Washington Street
Salem, MA. 01970

| PLAINTIFF ATTORNEY | DEFENDANT ATTORNEY |
|---|---|
| Pro Se | ProSe |

MONEY DAMAGE ACTION (TIME STANDARDS)
☐ Remand    ☐ District Court Filing

☒☒ SUMMARY PROCESS    ☐ VICTIM VIOLENT CRIME    ☐ OTHER CIVIL

| NO. | DATE | DOCKET ENTRIES |
|---|---|---|
| 1. | 10/29/01 | Complaint filed    ☐ Statement of damages filed (if applicable) |
| 2. | 11/4/01 | Defn. Ans. |
|  | 11-8-01 | Judgment for plff for possession ( no damages) plus costs (Sullivan aj) |

DATE OF ENTRY OF JUDGMENT
11/9/01

☐ CIVIL    ☑ SUMMARY PROCESS

☑ Judgment for ___ Pltff ___.

☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to
date of execution

☑ Possession

EI 11/20/01

☐ Judgment on defendant's counterclaim for _____.
☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to
date of execution.

JUDGMENT TOTAL

EXECUTION TOTAL

COUNTERCLAIM JUDGMENT TOTAL

COUNTERCLAIM EXECUTION TOTAL

COMMONWEALTH OF MASSACHUSETTS

ESSEX DIVISION                          PROBATE AND FAMILY COURT
                                        DOCKET NO.  94P 0314-C1
                                                    01E 0005-GC1
                                                    00E 0126-GC1
                                                    00E 0127-GC1


IN RE:  Chalupowski Realty Trust


## MEMORANDUM AND ORDER ON MOTION TO STAY JUDGMENTS AND FOR INJUNCTIVE RELIEF


A hearing was held on January 22, 2002 on the motion of Donna M. Chalupowski (hereafter "Donna") to stay the judgment of this Court dated February 13, 2001 and further orders of this Court dated December 14, 2001.  Donna was present with her attorney, Joseph P. Corona, Esquire.  In addition, Judith Chalupowski Venuto (hereafter "Judith") was present with her attorney, Sharon D. Meyers, Esquire and Karl F. Stammen, Esquire appeared on behalf of Chester J. Chalupowski (hereafter "Chester").

Upon consideration of the representations of counsel for the parties, the motion to stay judgments and for injunctive relief, the affidavit of Joseph P. Corona, Esquire and the opposition of Chester, the motion for stay of the judgments dated February 13, 2001 and December 14, 2001 is denied for the reasons set forth in the memoranda supporting those decisions.

Further, the parties have represented that Chester has been in control of the premises at 26-30 Andrew Street, Salem, MA since at least 1996.   Even if Donna prevails on her appeal and successfully establishes that the deed dated October 4, 1995 is invalid, the order of this Court (Highgas, J.) dated October 3, 1996 for July 3, 1996 authorizes Chester to "continue to manage the property located at 26 Andrew Street and 30 Andrew Street, Salem, MA" subject to periodic accountings.  That order was not appealed.   Therefore, Donna has shown no reasonable basis for the Court to restrain Chester from taking (or continuing to exercise) possession and control of the real estate at 26-30 Andrew Street, Salem, MA.

Page 2.

Donna also seeks to restrain and enjoin Chester from evicting her and her sister, Judith, from the premises.    The eviction of Donna is an issue now pending in the District Court department, Salem Division, (C.A. No. 0136CV1360).    Orders were entered by that Court (A.P.Sullivan, J.) on December 11, 2001.    Inasmuch as this Court has no subject matter jurisdiction to hear summary process proceedings under G.L.c. 239, §2, and even if it did, as a matter of comity, further proceedings in Chester's action to evict Donna should be determined by the District Court or through proper appeal of any order of the District Court.    Accordingly, Donna's motion to restrain and enjoin Chester from evicting Donna and Judith from the premises is denied provided, however, that nothing herein is intended to preclude the District Court department or any court having appellate jurisdiction with regard to orders of the District Court department from entering such orders as may be appropriate in the pending summary process proceeding.

January 22, 2002

John C. Stevens, III., Justice
Essex Probate and Family Court

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

02-J-57

DONNA M. CHALUPOWSKI

<u>vs</u>.

JUDITH CHALUPOWSKI VENUTO & another.

ORDER

This matter came before the single justice on a Motion to Stay Judgments and for Injunctive Relief. The procedural posture of a series of equity complaints filed in the Probate Court, Superior Court and District Court is, to say the least, tortuous with a myriad of orders and judgments entered since 1995. The probate court judge entered comprehensive and detailed memoranda and orders, consolidating a numbers of the cases. His orders provide a reasoned framework for analysis.

In a Memorandum and Order on Motion to Stay Judgments and for Injunctive Relief which appears to be the predicate for the instant interlocutory appeal to the single justice, the probate judge denied a stay. He noted however, "Accordingly Donna's [Chalupowski's] motion to restrain and enjoin Chester [Chalupowski} from evicting Donna and Judith [Chalupowski} from the premises is denied provided, however, that nothing herein is intended to preclude District Court department or any court

1

having appellate jurisdiction with regard to orders of the District Court department from entering such orders as may be appropriate in the pending summary process proceeding." In order to allow for informed review of these matters, the single justice hereby enters the following procedural order:

1.  Chester J. Chalupowski is enjoined from enforcing any execution, including an execution from the District Court Department, Salem Division in the matter of Chester J Chalupowski, Trustee v. Donna Chalupowski, Civil No 0136 CV 1360 to evict said Donna Chalupowski.

2.  Chester J. Chalupowski is enjoined from undertaking any action, pending further order of this Court, the purpose or effect of which, is to further or cause the eviction of said Donna Chalupowski or Judith Chalupowski from the properties that are the res of the 30 Andrew Street Trust a/k/a Chalupowski Family Trust, which properties include, but are not limited to, the properties at 26 and 30 Andrew Street Salem, MA.

3.    Chester J Chalupowski shall by 5:00P.M. on February 7,
      2002 file a response to the Motion to Stay Judgments
      and for Injunctive Relief filed with the single
      justice.

                                By the Court (Berry, J.)

                                Ashley Anean
                                Clerk

Entered: February 4, 2002

-3-

*Joseph P. Corona*

ATTORNEY AT LAW

PRINCE PROFESSIONAL CENTER
SUITE 103
265 ESSEX STREET
SALEM, MASSACHUSETTS 01970-3400

TEL. (978) 744-8851
FAX. (978) 744-8858

January 25, 2002

Appeals Court
1500 New Court House
15th floor
Boston, Massachusetts 02108
Attention: Clerk of Court

Re: In the Matter of Chalupowski Realty Trust

Motion to Stay Judgments
And for Injunctive Relief

Dear Sir/Madam:

Enclosed herewith for filing and for review by a single justice of the Appeals Court please find the following documents:

1. Motion to Stay Judgments And for Injunctive Relief and Certificate of Service

2. Affidavit of Joseph P. Corona in support said motion and attached thereto docket sheets for Superior Court action No. 93-2465 B

3. Probate Court Memorandum and Order denying said Motion to Stay Judgments and for Injunctive Relief dated January 22, 2002

4. Opposition of Chester J. Chalupowski Jr. to said Motion to Stay Judgments and for Injunctive Relief

5. Judith Chalupowski Venuto's Memorandum of Law in Opposition to Probate Court Judgment dated February 13, 2001 by her guardian ad litem, Sharon D. Myers

6. Memorandum of Decision and Orders of Probate Court (Stevens J.) dated December 14, 2001

7. Motion for New Trial And Amendment of Judgment by Donna Chalupowski dated December 8, 2000

8. Memorandum of Decision And Order On Petitioner's Petition to Remove Chester J. Chalupowski Jr. As Trustee of the Chalupowski Realty Trust (Stevens J.) dated February 13, 2001

9. Amended Order and Order of the Probate Court (Highgas J.) dated October 30, 1996 for July 3, 1996

10. Memorandum and Order On Defendants Motion To Waive Appeal Bond and to Stay Execution [of Eviction Order] by the Salem District Court dated December 11, 2001.

Please note that the captioned matter was not tried on the merits and therefore there is no trial transcript. For the purposes of the enclosed Motion to Stay Judgments and for Injunctive Relief, I believe the enclosed copies of pleadings, judgments, and docket sheet entries are sufficient. However if the court should require other court documents, please advise and I shall promptly submit the same.

Also enclosed herewith please find check in the amount of $160 as a filing fee.

Very truly yours,

Joseph P. Corona
Attorney for Donna Chalupowski

cc: Sharon D. Myers, Esq.
    Karl F. Stammen, Esq.

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

02-J-57

DONNA M. CHALUPOWSKI

vs.

JUDITH CHALUPOWSKI VENUTO & another.

SUPPLEMENTAL ORDER.

In connection with the Petition filed in this matter, an initial procedural Order was entered by the Single Justice on February 4, 2002 requesting a responsive pleading from Chester, J. Chalupowski. That response was filed.

That initial Order also enjoined Chester J. Chalupowski from enforcing any execution, including an execution from the District Court Department, Salem Division in the matter of Chester J Chalupowski, Trustee v. Donna Chalupowski, Civil No 0136 CV 1360 to evict said Donna Chalupowski. In addition, the initial Order enjoined Chester J. Chalupowski from undertaking any action, pending further order of this Court, the purpose or effect of which, was to further or cause the eviction of said Donna Chalupowski or Judith Chalupowski from the properties that are the res of the 30 Andrew Street Trust a/k/a Chalupowski Family Trust, which properties include, but are not limited to, the properties at 26 and 30 Andrew Street Salem, MA.

At the time of the initial Order, certain related proceedings were pending in the Probate Court and a pretrial

conference was to be held.  The parties are hereby directed to file with this Court an update concerning the Probate Court proceedings, including whether a trial has been held or is scheduled to be held.  Also the parties shall file an update concerning the status of the properties at 26 and 30 Andrew Street, Salem, MA which are a part of the Trust Res.  The existing injunctive orders set forth in the initial Order shall remain in effect.

By the Court (Berry, J.)

Assistant Clerk

Entered: May 29, 2002

2

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss                                 APPEALS COURT
                                          DOCKET NO. 02-J-57

DONNA M. CHALUPOWSKI          )
                              )
V.                            )
                              )
JUDITH CHALUPOWSKI VENUTO, ET AL.   )
                              )

## STATUS REPORT

Now comes Judith Chalupowski Venuto, also known as Judith ChalVen

uto, by and through her Guardian Ad Litem, Sharon D. Meyers and submits this Status

Report pursuant to the Order of the Court, (Barry, J) dated May 30, 2002.

At the time of the filing of the request for injunctive relief, the Guardian Ad

Litem's role was limited to "assisting Ms. Venuto in marshalling her thoughts in a

coherent manner in order to present pleadings and other documents to the court, and to

otherwise represent her during hearings." Even thought the Probate Court did not rule in

her favor, Ms. Venuto believed that her brother had voluntarily resigned as Trustee of the

26-30 Andrew Street Realty Trust and did not believe that there was any reason to further

protect her rights. She did not appreciate the eviction proceedings in Salem District

Court and did not attend, or attended late.

Ultimately, Ms. Venuto instructed the Guardian Ad Litem to file a request to

remove her brother as Trustee. The Guardian Ad Litem filed this Petition on or about

January 14, 2002. A copy of the Petition is attached hereto as Exhibit 1. It became

apparent that Ms. Venuto did not appreciate the ramifications of various legal decisions,

1

and with this Guardian Ad Litem's limited ability to represent her, this Guardian Ad
Litem was restricted to assisting Ms. Venuto in a manner Ms. Venuto dictated. This
Guardian Ad Litem sought a clarification of her role and requested that the role be
expanded. See Exhibit 2. The court, (Stevens, J.) granted the request and "expanded
[the Guardian Ad Litem's role] to be consistent with M.G.L. c. §34 to allow the guardian
ad litem to enforce or defend any of the legal rights Judith Chalupowski Venuto may
have." See order attached hereto as Exhibit 3.

After filing the Petition, it appeared that the parties were not too far apart from a
resolution, similar to one that Ms. Venuto thought had already occurred, or that everyone
had already agreed to as a plan for resolution. To that end, Ms. Venuto agreed to allow
an appraiser enter the premises for purpose of valuing the property. Despite repeated
requests, the Guardian Ad Litem did not and has not received a copy of the appraisal.

Ms. Venuto initiated settlement discussions with her brother, Chester J.
Chalupowski ("Chester") and her sister Donna Chalupowski ("Donna"), and the
Guardian Ad Litem with the various counsel. There was an attempt to conference with
the parties, at a neutral place, in order to discuss resolution of all related matters. None of
the planned meetings occurred. The animosity between Chester and counsel for Donna
prohibited any rationale approach to settlement.[1] Ultimately, counsel for Donna agreed
not to participate if it would allow discussions to occur. However, by that time, Chester
refused to participate, if, as part of the process, the property would be financed or sold
and his sister Donna acquire any of the proceeds, and if she were to use the proceeds to

---

[1] In addition to being unable to tolerate even the appearance of Donna's counsel, after the last court
appearance, Chester made threats toward the Guardian Ad Litem prompting the concern of various court
officers for the safety of the Guardian Ad Litem. Cooler heads prevailed, but the inability for Chester to
participate in resolution short of complete victory for his position is apparent.

pay any legal fees to her counsel. Thus, no progress was made toward what appeared to be Ms. Venuto's reasonable attempts to settle the differences between the siblings and protect the life estate of her mother.

While this was going on, on or about March 21, 2002, the Guardian Ad Litem spoke with Attorney Stewart Snyder, closing counsel allegedly for the refinance of the property. Neither Donna nor Ms. Venuto realized that an attempt to refinance the property was occurring. After several conversations with Attorney Snyder, upon information and belief, the refinance did not occur.

To the Guardian Ad Litem's knowledge, the assembly of the record, which brings this matter to the Appeals Court's attention, has not occurred. Ms. Venuto has not requested this Guardian Ad Litem to take any additional steps on her behalf and all settlement discussions are in abeyance.

Respectfully submitted,

JUDITH (CHALUPOWSKI) VENUTO

By her Guardian Ad Litem,

Dated: June 9, 2002

Sharon D. Meyers, Esq.
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

3

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
DOCKET NO. 94P 0314 C-1
00E 0126
00E 0127
01E 0005-GC1

IN RE:                    )
                          )
    26 Through 30 ANDREW  )
    STREET TRUST          )
                          )

PETITION OF JUDITH VENUTO
TO REMOVE CHESTER J.
CHALUPOWSKI, JR. AS TRUSTEE
OF 26-30 ANDREW STREET
REALTY TRUST

Now comes the Petitioner, Judith (Chalupowski) Venuto in the above-entitled

matter and moves this court to remove Chester Chalupowski as Trustee of the 26-30

Andrew Street Realty Trust.

As grounds therefore, the Petitioner states that the Trustee has:

1.   Failed to file accountings to the beneficiaries, on the 15th day of each

     month, commencing July 15, 1996, rending an accounting to the Trustees

     of all income received and funds disbursed for the preceding month,

     pursuant to the order of Highgas, J. dated July 3, 1996;

2.   Failed to act appropriately as manager of the property, delegating the

     management authority to another entity who failed to manage the property

     in an appropriate manner;

3.   Misappropriated funds to be used for the benefit of the Trust;

4.   Wasted the Trust assets;

5.   Performed other acts inconsistent with his fiduciary responsibilities to the

     trust.

*Wherefore,* Petitioner respectfully requests this court to remove Chester J.

Chalupowski, Jr. as Trustee of the 26-30 Andrew Street Realty Trust, and to

appoint a her, or another as successor Trustee of the 26-30 Andrew Street Realty

Trust.

Respectfully submitted,

JUDITH (CHALUPOWSKI) VENUTO

By her Guardian Ad Litem,


Sharon D. Meyers
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

Dated: 1/14/02

## Certificate of Service

I, Sharon D. Meyers, Guardian Ad Litem for Judith (Chalupowski) Venuto hereby certify that I served by first-class mail, postage pre-paid, upon counsel of record, Joseph P. Corona, Esq. attorney for Donna Chalupowksi, and Karl F. Stammen, Esq., attorney for Chester Chalupowski.

1.    *PETITION TO REMOVE CHESTER J. CHALUPOWSKI, JR. AS TRUSTEE FOR THE 26-30 ANDREW STREET REALTY TRUST.*

1/14/02
Date

Sharon D. Meyers, Esq.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
DOCKET NO. 94P 0314 C-1
00E 0126
00E 0127
01E 0005-GC1

IN RE:

CHALUPOWSKI REALTY TRUST
CHALUPOWSKI FAMILY TRUST
And 26 Through 30 ANDREW
STREET TRUST

)
)
)
)
)
)
)

## MOTION OF GUARDIAN AD LITEM FOR FURTHER CLARIFICATION OF ROLE

Now comes Sharon D. Meyers, attorney appointed as Guardian Ad Litem for

Judith (Chalupowski) Venuto and requests this court for further instructions as to the

extent of her appointment as Guardian Ad Litem and to determine whether a mental

and/or physical examination should be required of Judith (Chalupowski) Venuto.

As grounds therefore, the Guardian Ad Litem states that this Court appointed her

for the purpose of assisting Ms. Venuto in marshalling her thoughts in a coherent manner

in order to present pleadings and other documents to the court, and to otherwise represent

her during hearings. It is apparent that during the course of the Guardian Ad Litem's

representation and communication with Ms. Venuto that to effectively represent Ms.

Venuto, the scope of the Guardian Ad Litem's charge should be broadened.

M.G. L. c, 201, §34 states that a guardian ad litem may be appointed for "…a

person under a disability…" if under the terms of a written instrument, that person may,

or may become interested in any property real or personal, or in the enforcement or

defense of any legal rights. Although the court has not determined that Ms. Venuto is "a

person under disability" the Guardian Ad Litem request a further determination of this finding by ordering Ms. (Chalupowski) Venuto to participate in an examination to determine if she is a person under a disability.

As grounds therefore, the Guardian Ad Litem refers this court to the accompanying affidavit.

*WHEREFORE,* Sharon D. Meyers, Guardian Ad Litem and requests a further clarification of her appointment and to order a mental and physical examination of Ms. Judith (Chalupowski) Venuto.

Respectfully submitted,

JUDITH (CHALUPOWSKI) VENUTO

By her Guardian Ad Litem,

Sharon D. Meyers
BBO #344680
30 Federal Street, Suite 200
Salem, MA  01970
(978) 745-0575

Dated: 1·29·02

I hereby certify that a true copy of the above document was served upon each party appearing pro se and/or the attorney of record for each other party by first class mail or by hand.

Dated: 1·29·02

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss
          PROBATE & FAMILY COURT
          DOCKET NO. 94P 0314 C-1
              00E 0126
              00E 0127
              01E 0005-GC1

|  |  |
|---|---|
| | ) |
| | ) |
| IN RE: | ) |
| | ) |
| CHALUPOWSKI REALTY TRUST | ) |
| CHALUPOWSKI FAMILY TRUST | ) |
| And 26 Through 30 ANDREW | ) |
| STREET TRUST | ) |

AFFIDAVIT OF SHARON D. MEYERS, GUARDIAN AD LITEM

I, Sharon D. Meyers, under oath do hereby depose and state:

1.  My name is Sharon D. Meyers and I am an attorney, admitted to the bar of the

    Commonwealth of Massachusetts, have practiced for twenty-two years and

    maintain an office at 30 Federal Street, Salem, Massachusetts.

2.  I was appointed by Stevens, J. to assist Ms. Judith Chalupowski Venuto in these

    consolidated proceedings, in marshalling Ms. Venuto's thoughts, drafting papers

    and otherwise representing her in court, with the specific finding of the court that

    she was not a person with a disability.

3.  During the time of my representation of Ms. Venuto, it is clear that she may be a

    person with a disability.

4.  Ms. Venuto has represented on more than one occasion that her brother is not a

    Trustee of the Chalupowski Family Trust and is only a manager of the 26 through

    30 Andrew Street Realty Trust, yet this is the subject of Petitions brought by Ms.

Venuto in the year 2000, and is the subject of much litigation initiated by her
sister, Donna Chalupowski.

5.  When she is informed that he has not resigned and is still active in the
    management and Trusteeship of the Trusts, Ms. Venuto dismisses the idea.

6.  Ms. Venuto has extreme difficulties with limit setting, in that she will call my
    office multiple times in a day and multiple times at night.

7.  Recently Ms. Venuto appeared after normal work hours banging on the door to
    my office. Ms. Venuto was informed that I was not there and acted in a manner
    threatening to the individual in the office. Despite the fact that she was informed
    that I was not present, Ms. Venuto banged on the door for approximately ten
    minute, placing the individual in fear.

8.  When confronted with her actions the following day, Ms. Venuto denied behaving
    in any inappropriate fashion.

9.  I am aware that she telephones the other attorneys involved in this matter, as well
    as the Probate Court and other court personnel and has lengthy one-sided and
    uninvited conversations concerning her life, her health, her employment, her
    marriage, her divorce, her children, her mother and her relationship with her
    siblings.

10. I am aware that there is a restraining order taken against Ms.Venuto by her sister,
    another litigant in these proceedings.

11. I am aware that during the time of my representation, Ms. Venuto was arrested for
    a breach of that restraining order.

12. I do not believe that Ms. Venuto appreciates that there is an eviction proceeding in Salem District Court and the consequences of that proceeding.

13. Ms. Venuto has informed me that some of her irrational behavior is a result of back injuries she received in a car accident, although I believe that there may be another organic reason for her behavior and inability to comprehend the serious nature of the proceedings she in which she is involved.

14. Many times after I have had a meeting with her, or have had a lengthy telephone conversation with her, Ms. Venuto will telephone shortly thereafter, again several hours later and usually the following day to repeat the conversation, as she cannot remember what was discussed or what materials were given to her for review.

15. I am requesting the court to order a physical and mental examination of Ms. Venuto in order to determine whether she is a "person under a disability" which may require an change in the scope of my appointment.

Signed under the pains and penalties of perjury, this 21th day of January 2002.

Sharon D. Meyers

COMMONWEALTH OF MASSACHUSETTS

ESSEX DIVISION
                                        PROBATE AND FAMILY COURT
                                        DOCKET NO.  94P 0314-C1
                                                    00E 0126
                                                    00E 0127
                                                    01E 0005-GC1


IN RE:  Chalupowski Realty Trust
        Chalupowski Family Trust
        and 26 through 30 Andrew Street Trust


## ORDER

After hearing, with all parties having been given notice, and none appearing except the Guardian-ad-litem, the Court orders:

1)  That the guardian-ad-litem's role is expanded to be consistent with the M.G.L. 201, §34 to allow the guardian-ad-litem to enforce or defend any of the legal rights Judith Chalupowski Venuto may have.

2)  To order Judith Chalupowski Venuto to submit to a mental and physical examination, at her expense, to determine if she may qualify as a person under a disability.

3)  If it is determined after the mental and physical examination as provided above that Judith Chalupowski Venuto is not a person under disability, the Court may make such further orders as are appropriate at that time.

4)  Except as otherwise provided herein, all prior orders of this Court now in effect are ratified and confirmed.

February 20, 2002

                                        _____
                                        John C. Stevens, III., Justice
                                        Essex Probate and Family Court

COMMONWEALTH OF MASSACHUSETTS
THE APPEALS COURT

| | |
|---|---|
| DONNA M. CHALUPOWSKI, | ) |
| | ) |
| v. | ) Docket No.: 02-J-57 |
| | ) |
| JUDITH CHALUPOWSKI VENTUTO | ) |
| & ANOTHER | ) |
| ------------ | ) |
| Essex Probate & Family Court | ) |
| Docket No. 94P-0314-C1 | ) |
| | ) |

**(AMENDED) MOTION TO VACATE STAY UNDER M.R.A.P. 6(A),**
**AS THIS COURT LACKS SUBJECT MATTER JURISDICTION; or,**
**IN THE ALTERNATIVE, THAT J. BERRY RECUSE HERSELF**

Now comes Chester Chalupowski, Jr., Appellee in the

above captioned matter, and amends his motion to vacate

the order of this court enjoining him from proceeding

with evictions against Donna and Judith Chalupowski,

pursuant to judgments for possession obtained in Salem

District Court, Civil Action Nos. 0136CV1360 and

0136CV1361, as this Court has no subject matter

jurisdiction.

In support of this motion, the Appellee states:

**Procedural Background**

1. On November 9, 2001, Mr. Chalupowski, Jr. obtained

    writs of execution for possession against Donna

    Chalupowski (the Appellant) and Judith Chalupowski,

in Salem District Court, Civil Action Nos. 0136 CV
1360 and 0136-CV 1361;

2. Summary process actions commenced in an Essex County
   District Court are appealable only to the Appellate
   Division of the District Court. St. 1996, Ch. 358,
   as amended by St. 2000, Ch. 142.

3. After judgments for eviction were issued against the
   Appellant in that District Court, she filed a notice
   of appeal in Superior Court, pursuant to the pre-
   2000 procedure under M.G.L. Ch. 239 §5.

4. The Appellant then moved in the Salem District Court
   for a stay of judgment.

5. At hearing on the stay in District Court, Judge
   Anthony Sullivan informed the Appellant that she had
   appealed to the wrong court, and granted a stay
   until January 31, 2002, to allow her to appeal to
   the Appellate Division of the District Court.

6. The Appellant did not appeal the judgments to the
   Appellate Division of the District Court, as

Page -2-

required, or even this Court of Appeals.

7.   Instead, the Appellant moved in Probate Court for a
     stay of the District Court judgment.  Her motion was
     denied.

8.   The appellant then sought and obtained from this
     Court an order enjoining Mr. Chalupowski, Jr. from
     executing the summary process judgments entered in
     the two eviction actions in District Court,
     purportedly pursuant to M.R.App.P. 6(A);

9.   The only appeals pending derive from Probate Court
     matters: The Appellant is appealing from judgments
     issued from the Essex County Probate and Family
     Court, Docket No. 94P0314C1, entered on February 13,
     2001 and December 14, 2001.

10.  Obtaining a Stay on the February 13, 2001 and
     December 14, 2001 Probate Court judgements leaves
     the management of the property to operate under the
     terms of the order issued by Judge Highgas on July
     3, 1996 and Amended on October 30, 1996.

Page -3-

11.  Under Judge Highgas' Order, Mr. Chalupowski, Jr. is
     the individual empowered to make decisions relative
     to the management of the real estate and, therefore,
     empowered to maintain eviction proceedings.

## No Subject Matter Jurisdiction Over District Court

## Evictions

12.  There is no valid appeal in this Court regarding the
     evictions from the Salem District Court.   This
     Court has no subject matter jurisdiction over those
     judgments.

13.  Any stay of the Probate Court judgments still leaves
     Mr. Chalupowski as the manager of the property with
     the authority to maintain eviction proceedings.
     This Court is similarly without subject matter
     jurisdiction on that issue to Stay or Enjoin Mr.
     Chalupowski's exercise of his managerial duties
     pursuant to M.R.App.P. 6(A).

## Recusal of Judge

14.  At hearing on the Appellant's Motion for Stay,
     Single Justice Berry stated that she and Judith

Chalupowski's counsel, Sharon D. Meyers, are
friends.

15.   Mr. Chalupowski believes and therefore avers that
the prior relationship between the Single Justice
and one of the party's attorneys has unfairly
affected her judgment in this matter.

16.   Recusal of Judge Berry is necessary for an
appearance of fairness and impartiality in this
matter.

WHEREFORE, Mr. Chalupowski prays for the following
relief:

A.   That the February 4, 2002 order enjoining him from
enforcing the executions to evict Judith and Donna
Chalupowski issued by the Salem District Court be
vacated *nunc pro tunc* to February 4, 2002; or, in
the alternative,

B.   Justice Berry recuse herself from further hearing of
this matter.

Dated: July 13, 2002          Respectfully Submitted,
                              CHESTER CHALUPOWSKI,
                              By counsel,

                              Gregory A. Hession,
                                  B.B.O. No. 564457
                              Rebecca L. Gietman,
                                  B.B.O. No. 645176
                              P.O. Box 1099
                              Belchertown, MA 01007
                              Telephone:  (413) 323-7508


## CERTIFICATE OF SERVICE

        I, Rebecca L. Gietman, hereby certify that on July 13,
2002, I served the foregoing, via first class mail, postage
prepaid, upon all counsel of record.

Rebecca L. Gietman, J.D.

Page -6-

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss                                    APPEALS COURT
                                             DOCKET NO. 02-J-57

DONNA M. CHALUPOWSKI                    )
                                        )
V.                                      )
                                        )
JUDITH CHALUPOWSKI VENUTO, ET AL.       )

### OPPOSITION TO CHESTER CHALUPOWSKI, JR. MOTION TO VACATE STAY

Chester Chalupowski, Jr., Appellee brought a motion to vacate the stay issued by

the Essex Probate and Family Court, Stevens, J., enjoining the execution of the eviction

of Judith Chalupowski Venuto and Donna Chalupowski, on the basis that the Appeals

Court lacked jurisdiction over the subject matter. Judith Chalupowski Venuto ("Judith")

objects to the request to vacate and requests this court to deny the motion.

Pursuant to M.G.L. c. 215, §2:

> Probate courts shall be courts of superior and general jurisdiction with
> reference to all cases and matters in which they have jurisdiction, and no
> order, judgment, sentence, warrant, writ or process made, issued or
> pronounced by them need set out any adjudication or circumstances with
> greater particularity then would be required in other courts of superior and
> general jurisdiction, and the like presumption shall be made in favor of
> proceedings of the probate courts as would be made in favor of
> proceedings of other courts of superior and general jurisdiction.

It has long been held that Probate courts are courts of equity and it must be

presumed in the absence of facts in the record that all essential jurisdictional facts were

proved in the hearing below. *Farnsworth v. Goebel*, 240 Mass. 18 (1921). Although

Judith did not file an objection to the eviction[1], Judith joined in the request for the

Probate Court, under its equity powers to enjoin Chester from executing the eviction.

---

[1] Judith is under the belief that her brother did not mean to include her and that he has no authority to evict
her from her home.

1

Thus, she did not challenge the validity of the eviction, only requested a stay of the execution, pending resolution of all other matters. The Probate Court clearly had inherent power to "to investigate and to punish those committing acts tending to obstruct or to degrade the administration of justice" *Blankenburg v. Commonweatlh,* 260 Mass. 369 (1927).

In this instance, no record has been presented that the Probate Court lacked jurisdiction over Chester, Jr. to prevent him from executing the right of eviction granted him in the Salem District Court. The Probate Court did not rule on whether the eviction proceedings were lawful, that is clearly a matter for the Appellate Division. The Probate Court only ruled on the mechanical stay of the execution of the eviction, an item for which the Court clearly had jurisdiction. Thus, any action taken concerning the Probate Court decision in clearly within the jurisdiction of the Appeals Court.

## CONCLUSION

For grounds stated above, this court should deny Chester's Motion to Vacate the Stay, as this court had jurisdiction over the underlying proceedings, and thus jurisdiction under M.R. App. P. 6(A) to issue its stay.

Respectfully submitted,

JUDITH (CHALUPOWSKI) VENUTO by her Guardian Ad Litem,

Dated: August 1, 2002

Sharon D. Meyers, Esq.
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

I hereby certify that a true copy of the above document was served upon each party appearing pro se and/or the attorney of record for each other party by first class mail or by hand, by facsimile

Dated: 4·1·02

2

## COMMONWEALTH OF MASSACHUSETTS

### APPEALS COURT

#### 02-J-57

IN RE: THE MATTER OF THE CHALUPOWSKI REALTY TRUST.

#### ORDER ON STAY PENDING APPEAL

### I. Introduction

#### A. Prior Proceedings

This matter came before the single justice on a Motion to Stay Judgments and for Injunctive Relief pending appeal. The motion was filed by Donna Chalupowski.[1] Since the filing of the motion to stay pending appeal, the guardian ad litem for the other sister, Judith, has filed an appearance and represented Judith in the proceedings before the single justice. See Part III.A.1-2.

As I have noted in prior orders entered as single justice, the procedural posture of the series of complaints involving the three trusts of the Chalupowski family -- which complaints were filed in the Probate Court, the Superior Court and the District Court -- is labyrinthian. There are also a myriad of orders and judgments. Suffice to state for the time being that the issues involving the Chalupowski trusts have been in litigation for close to a decade.

As pertinent to determination of the motion for stay filed with the single justice, there are four orders of the Probate Court (described in further detail in the ensuing Parts of this Order for

---

[1] The involved parties are: MaryJane Chalupowski, Chester Chalupowski, Jr., Donna M. Chalupowski and Judith Chalupowski Venuto. For ease of reference, and because the same surname "Chalupowski," appears in the pleadings, the mother (Mary Jane), brother (Chester, Jr.), and two sisters (Donna and Judith), will be referred to by their first names. Further, for ease of reference, the two real estate trusts will be referred to as the Chalupowski Realty Trust and The Andrews St. Realty Trust.

Stay Pending Appeal), which may be briefly summarized as follows.

(1). The Justice Stevens Order of February 13, 2001, which order and decision denied Judith's petition to remove Chester as trustee of the Chalupowski Realty Trust and held: (a) that the Chalupowski Realty Trust had no legal existence because its entire res consisting of the real property at 26 through 30 Andrews Street in Salem had been transferred to the Andrews Street Realty Trust established by Chester and over which he is the sole trustee, and (b) that Judith was estopped from challenging the transfer to the Andrews Street Realty Trust because she had signed a quitclaim deed as co-trustee to effect the transfer of the real estate properties from the Chalupowski Realty Trust to the Andrews Street Realty Trust. (As further detailed in Part III. A. 1-2., there are issues of Judith's competency to have effected this transfer.)[2];

(2). The Justice Stevens Consolidation, Accounting and Dismissal Order of December 14, 2001, which, order and decision among other things, consolidated a number of the Probate Court cases; ordered Chester to file accounts; and (as pertinent to the motion for stay pending appeal) dismissed Donna declaratory judgment action which had sought a determination that the transfer of the property to The Andrews St. Realty Trust was null and void and that Chester was not empowered to, and was not legally performing duties as trustee of the Chalupowski Realty Trust; and denied Donna's motion for a new trial or to amend the prior February 13, 2001 order referenced in No. (1) above.

(3) The Justice Stevens Order denying a stay pending appeal, which order stated that the Probate Court Judge was aware of Chester's eviction proceeding against his sisters, Donna and Judith, but found that the Probate Court lacked jurisdiction to stay the eviction, further noting that "nothing herein is intended to preclude . . . any court having

---

[2] There are various references in the record to issues concerning Judith's competency. One such reference is as follows: "The Guardian Ad Litem [Attorney Sharon D. Meyers] learned that Judith was in an involuntary evaluation placement at Tewksbury State Hospital by order of the Peabody District Court, during the time preceding her signing of the deed [of transfer to The Andrews. St. Realty Trust] Judith has stated that her brother and his girlfriend, whom Judith believes to have been a lawyer, visited her while she was hospitalized and asked her to sign the deed. A copy of the deed reveals that the notarization was performed by Chester, Jr.'s attorney, Jayne S. Davidson, Esq. Whether or not Ms. Davidson was Mr. Chalupowski's girlfriend is not clear, however, she did represent him and was representing him in the interfamily litigation during 1994-1996. More than a mere inference of undue influence can be raised." See Judith (Chalupowski) Venuto's Memorandum of Law in Opposition to the Memorandum of Decision and Order of the Court Dated February 13, 2001 at p. 2 note 1. This information filed by Judith's guardian ad litem is corroborated in an affidavit filed by the separate and independent counsel for Donna, who was involved in hearings which occurred at or about the time of execution of the deeds of transfer. See quotations from the affidavit of Attorney Joseph P. Carona at Part III.A.1.

2

appellate jurisdiction with regard to orders of the District Court department from entering such orders as may be appropriate in the pending summary process proceeding."

(4) The Justice Highgas Order, which was entered on July 3, 1996 and amended on October 30, 1996, which provides background.

(5) Finally, there is a fifth order: the execution of the District Court Department, Salem Division in the matter of Chester J Chalupowski, Trustee v. Donna Chalupowski et al, Civil No 0136 CV 1360, which is an order to evict Donna and Judith and which execution entered after the defendants failed to file the correct appellate pleadings to challenge the eviction order. (As addressed in Part III.A.1-2., there is an issue presented of whether Judith had sufficient mental competence to have defended against the eviction. Presently, Judith's guardian ad litem reports that Judith may still not be sufficiently competent to understand that she is at risk of eviction).

### B. The Motion to Stay Pending Appeal

The two Probate Court orders that underlie the motion to stay pending appeal (Nos. (1) and (2) above) involve the two realty trusts and the res of these two realty trusts, which res consists of the property and buildings at 26 and 30 Andrew Street in Salem over which Chester purports to be the Trustee. His two adult sisters, Donna and Judith, reside in the premises from which Chester, their brother, seeks to evict them. To be noted at the outset is that (subject to a life estate of their mother, Mary Jane) the three children, Donna, Judith and Chester have equal one third remainder interests in the trust corpus and thereby in the subject real property at 26-30 Andrews Street, the distribution of which remainder interests is to be made upon the death of the mother, Mary Jane.[3]  Upon inquiry at a hearing before the single justice, it was disclosed by Chester's counsel that the properties are appraised at approximately $1.2 million. (Chester had

---

[3] The proceedings among the family members have been acrimonious. As noted in one recent pleading: "In addition to being unable to tolerate even the appearance of Donna's counsel, after the last court appearance, Chester made threats toward the Guardian Ad Litem prompting the concern of various court officers for the safety of the Guardian Ad Litem. Cooler heads prevailed, but the inability for Chester to participate in resolution short of complete victory for his position is apparent." See Status Report of GAL (6/9/02) at p. 2, note 1.

withheld the appraisal from other counsel, and I directed that the document be produced).

The Motion to Stay Judgments and for Injunctive Relief pending appeal filed with the single justice is predicated upon the orders and decisions in judgment entered in (Nos. (1) - (2)), with the denial of a stay pending appeal (No. 3) being a prerequisite to filing the motion to stay with the single justice. Reference to the underlying Justice Highgas Order entered in July, 1996, (No. 4), which is often cited in the orders that are pending on appeal, provides a foundational piece for understanding of, and assessment of, the question whether a stay should be entered by the single justice. In addition, the District Court eviction order (No. 5) is also implicated. Finally, I note that there are pending further proceedings in the Probate Court involving the Chalupowski Family Trust (which has approximately $176,000 in cash), which proceedings involve challenges to Chester's administration of this Chalupowski Family Trust and the money held in that Trust. There is also a recently filed, and still pending, petition by Judith to remove Chester as trustee of The Andrews St. Realty Trust. This latter trust was established in 1995, and is the trust by virtue of which Chester purports to exercise sole trusteeship over the subject properties, and pursuant to which Chester purports to act with sole legal title as trustee and with exclusive standing to commence the eviction of his sisters from the subject properties where they reside. As shall be further addressed herein, there is a substantial issue whether The Andrews St. Realty Trust under which Chester purports to act has, in fact and in law, overcome the continuing, independent existence of the Chalupowski Realty Trust. In addition, there are grounds to question whether Chester, in fact or in law, has good legal title and standing sufficient to bring a summary process action within the subject matter jurisdiction of the District Court, --a jurisdictional question that undermines the execution order he obtained. All of these issues are

4

either directly or indirectly implicated in the appeal.

## II. Standards for Stay Pending Appeal

The standard for a stay pending appeal is whether the appeal presents a "meritorious or substantial defense or cause" that is, "one which is worthy of judicial inquiry because raising a question of law deserving some investigation and discussion. . . ." Lovell v. Lovell, 276 Mass. 10, 11-12 (1931); Russell v. Foley, 278 Mass. 145, 148 (1932). In many respects, the civil standard is close in analysis to the criminal standard of whether the appeal raises "'an issue which is worthy of presentation to an appellate court, one which offers some reasonable possibility of a successful decision in the appeal.'" Commonwealth v. Hodge (No. 1), 380 Mass. 851, 855 (1980), citing Commonwealth v. Allen, 378 Mass. 489, 498 (1979), quoting from Commonwealth v. Levin, 7 Mass. App. Ct. 501, 504 (1979). In the context of single justice review of a stay pending appeal, the civil and criminal standards, in effect, merge. "[T]he concept that our [single] judges have in mind when they apply the standard of 'reasonable likelihood of success on appeal' is not one of substantial certainty of success, but rather is one equivalent to the civil concept of 'meritorious appeal'; that is, an appeal which presents an issue which is worthy of presentation to an appellate court, one which offers some reasonable possibility of a successful decision in the appeal." Levin, supra at 504. Finally, whether the case presents an issue worthy of appellate presentation, with some reasonable possibility of success on appeal, presents a "pure question of law or legal judgment" for single justice review. Hodge, supra at 855, quoting from Commonwealth v. Allen, supra at 498, quoting Commonwealth v. Levin, supra at 504.

### III. The Background of the Orders and the Issues Presented for Appeal

5

I turn then to certain issues presented by the subject orders and decisions and judgments, from which notices of appeal have been filed to determine whether the issues presented are worthy of review and whether there is a reasonable possibility of a successful decision on appeal by the appellants, Donna and Judith. Set forth below is a further description of the orders and judgments that are the subject of the appeal, the other interconnected orders, and the issues presented. For the reasons stated, I have determined that entry of a stay pending appeal is warranted.[4]

A. The Justice Stevens Order of February 13, 2001. In this order, the Probate Court Judge denied Judith's petition to remove Chester as trustee of the Chalupowski Realty Trust. Reduced to essentials, the basis of the denial in Justice Stevens's analysis was that the Chalupowski Realty Trust no longer had legal existence, the sole trust res consisting of the real estate at 26 through 30 Andrews Street having been transferred to The Andrews St. Realty Trust. Judge Stevens also denied the petition on the basis that Judith was estopped because she had signed the transferring quitclaim deeds as co-trustee of the Chalupowski Realty Trust. There are two important elements in the decision which held valid the transfer to The Andrews St. Realty Trust and upon which the decision rested: first, the Probate Court Judge's findings that the mother, Mary Jane, was competent as one co-trustee involved in the transfer; and second, that

---

[4] The Probate Court Judge who presided over these proceedings had before him a thicket of multiple law suits, claims, cross claims, and parties who oft times advanced untenable positions in voluminous pleadings. Notwithstanding the complexity of the proceedings, the Probate Court Judge addressed each issue with due deliberation, issuing global administrative orders in a demonstration of thoughtful, judicial analysis. The determinations set forth in this Order for a Stay Pending Appeal concluding that there are meritorious appellate issues and a reasonable prospect of the appellants prevailing on appeal are to be viewed against the backdrop of this multifarious litigation, and with recognition of the Probate Court Justice's extraordinary efforts to manage the litigation.

6

Judith as co-trustee was estopped to challenge the transfer because she had signed the quitclaim deeds of transfer.

However, in assessing the merits of the appeal from this decision of the Probate Court, I have considered that the sole competency issue determined by the Probate Court Judge was whether the mother, Mary Jane, had sufficient mental competency at the time of the deeds of transfer. In contrast, Judith's mental competency as co-trustee to effectuate the transfer was not addressed in the decision. I conclude that this issue of Judith's competency is material in determining the ultimate validity of the transfer from the Chalupowski Realty Trust to the Andrews Street Realty Trust. Also material are the issues whether Judith's incompetency may prohibit application of the doctrine of estoppel and whether, as a matter of law, the standards for estoppel were met, as set forth in the Probate Court decision and order.

For the reasons stated below, I conclude that these material questions present issues worthy of review and present issues as to which the appellants have a reasonable likelihood of success on appeal in respect to whether the Andrews Street Realty Trust was actually, or legally, funded by the subject real properties or whether those properties remain as the res of the Chalupowski Realty Trust.[5] The latter trust would then have a continuing existence and the underlying premise of the order would not be sustainable. Hence, the appellant would have a reasonable possibility of having the subject decision set aside on appeal.

There is no doubt that Justice Stevens based his decision that the Chalupowski Realty Trust no longer had legal existence on the grounds that "the Andrew Street real estate represented

---

[5] This issue, as previously noted, affects the validity of the order by which Chester purported to act as sole trustee with legal title to effect the eviction of the his two sisters, who are equal beneficiaries of the Chalupowski Realty Trust and one of whom is a co-trustee of that trust.

7

the entire corpus of the Chalupowski Realty Trust at the time of the conveyance [to The Andrews St. Realty Trust]. Once the corpus of a trust is depleted, the trust has no cognizable purpose and therefore terminates by operation of law." See Justice Stevens Memorandum and Decision Order at 11. The issue, then, of whether Judith was competent at the time of executing the deed that transferred the real estate to the Andrews Street Realty Trust must perforce have been addressed. It was not. Furthermore, the issue of Judith's competency in connection with the invocation of the doctrine of estoppel must be addressed. It was not. Put another way, if the doctrine of estoppel was improperly applied, then the issue of whether the transfer of the property from the Chalupowski Realty Trust to The Andrews St. Realty Trust was valid was incorrectly determined in the decision of the Probate Court. And, if that transfer of the real estate to The Andrews St. Realty Trust were null and void, then, the underlying basis of the decision and order would not be sustainable. In these respects, the appellants would have a reasonable prospect of prevailing on appeal against the respondent, Chester.

A. 1. The issue of Judith's competency at the October 4, and 13, 1995 dates of execution of the deeds of transfer to the Andrews Street Realty Trust. As noted, in his decision, the Probate Court Judge did not address the issue concerning the co-trustee sister Judith's competence to effect such a transfer by deed. For the following reasons, I have concluded that this is an issue worthy of presentation to an appellate court and one which offers a reasonable possibility of a successful decision in the appeal. The question of Judith's competency has been in contest at material points in these proceedings. In particular, with respect to the validity of the transfer of the subject property to The Andrews St. Realty Trust, there are references in the record to the effect that Judith was confined to a mental institution at the time she signed the deeds. See, e.g.,

8

An Affidavit in Support of Motion to Stay Judgment And for Injunctive Relief dated January 7,

2002 by Attorney Joseph P. Corona, the counsel for the other sister, Donna which affidavit

represents as follows:

> I was the attorney of record for Donna M. Chalupowski and attended the hearing on June 27, 1996 and
> October 30, 1996 at the Probate Court in Salem, Massachusetts before Judge Highgas. [the affidavit goes
> on to describe the hearing and states that to the best of Attorney Carona's memory, the issue of the transfer
> of the property from the Chalupowski Realty Trust to the Andrews Street Realty Trust was referenced at the
> hearing and that]. . . . I have personal knowledge that:
>
> On October 13, 1995, the day that Judith Chalupowski Venuto signed said deed she was at the Tewksbury
> State Hospital, as a patient in the mental ward for thirty-day observation order by the Peabody District
> Court;
>
> Judith Chalupowski Venuto's signature on said deed was acknowledged by Jayne S. Davidson, who was at
> that time the attorney of record for Chester J. Chalupowski Jr., the sole trustee of the 26 Through 30
> Andrew Street Realty Trust;
>
> That although the subject real estate had great fair market value no consideration was in fact paid.
>
> I have personal knowledge that on October 13, 1995, the date Judith Chalupowski Venuto executed said
> deed, Chester and his attorney Jayne S. Davidson visited Judith at the Tewksbury State Hospital and
> presented said deed to her for her signature. I have reviewed Judith's pleadings and therein she states she
> did not sign said deed of her free act and deed. (numbering omitted).

The information in this affidavit and additional information is also referenced in a filing by

Judith's guardian ad litem. See note 2.

    A. 2. The issue of Judith's competency in connection with invocations of the doctrine of

estoppel. There is another independent, meritorious issue worthy of review. This involves

whether the finding of estoppel is sustainable. First, it may be the case that Judith's rights

concerning the issue in the litigation that led to entry of the subject decision were cut off by

erroneous application of the doctrine of estoppel. It was not until very recently that the role of

Attorney Sharon Meyers as the legal counsel to, and guardian ad litem for, Judith was clarified.

See, e.g., Motion of Guardian Ad Litem for Further Clarification of Role filed by Attorney

Meyers on January 29, 2002, which motion was acted upon by the Probate Court. See also

9

<u>Affidavit of Sharon D. Meyers, Guardian Ad Litem</u>, (1/29/02), which states as follows:

> "My name is Sharon D. Meyers and I am an attorney, admitted to the bar of the Commonwealth of Massachusetts, have practiced for twenty-two years and maintain an office at 30 Federal Street, Salem, Massachusetts.
>
> I was appointed by Stevens, J. to assist Ms. Judith Chalupowski Venuto in these consolidated proceedings, in marshaling Ms. Venuto's thoughts, drafting papers and otherwise representing her in court, with the specific finding of the court that she was not a person with a disability.
>
> During the time of my representation of Ms. Venuto, it is clear that she may be a person with a disability.
>
> Ms. Venuto has represented on more than one occasion that her brother is not a Trustee of the Chalupowski Family Trust and is only a manager of the 26 through 30 Andrew Street Realty Trust, yet this is the subject of Petitions brought by Ms. Venuto in the year 2000, and is the subject of much litigation initiated by her sister, Donna Chalupowski.
>
> When she is informed that he has not resigned and is still active in the management and Trusteeship of the Trust, Ms. Venuto dismisses the idea.
>
> Ms. Venuto has extreme difficulties with limit setting, in that she will call my office multiple times in a day and multiple times at night.
>
> Recently Ms. Venuto appeared after normal work hours banging on the door to my office. Ms. Venuto was informed that I was not there and acted in a manner threatening to the individual in the office. Despite the fact that she was informed that I was not present, Ms. Venuto banged on the door for approximately ten minute [sic], placing the individual in fear. When confronted with her actions the following day, Ms. Venuto denied behaving in any inappropriate fashion.
>
> -----
>
> I do not believe that Ms. [Judith] Venuto appreciates that there is an eviction proceeding in Salem District Court and the consequence of that proceeding." (numbering of paragraphs omitted).

Given the foregoing, the Probate Court Judge entered the following ruling on February 20, 2002:

"the guardian-ad-litem's role is expanded to be consistent with the M. G. L. c. 201, §34 to allow

the guardian-at-litem to enforce or defend any of the legal rights Judith Chalupowski Venuto may

have." To the extent Judith was incompetent and unable to litigate prior to this date, the doctrine

of estoppel may be subject to being set aside <u>nunc pro tunc</u> and may affect the validity of the

order that is the subject of this pending appeal.

    A. 3. <u>The standards for application of the doctrine of estoppel</u>. There is also an issue

presented worthy of appellate review and presenting a reasonable likelihood of success

concerning whether, as a matter of law (and independent of Judith's mental condition), the doctrine of estoppel was properly invoked to bar Judith from contesting the transfer of the real estate and hence arguing in support of the continuing legal existence of the Chalupowski Realty Trust. The doctrine of estoppel requires an action inconsistent with a claim subsequently advanced <u>and</u> also requires proof of an injury or detriment resulting from the prior inconsistent act. "The essential factors giving rise to an estoppel are . . . (1.) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2.) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such person as a consequence of the act or omission." <u>Turnpike Motors, Inc.</u>, v. <u>Newbury Group, Inc.</u>, 413 Mass. 119, 123, (1992) (internal quotation marks and citation omitted). There is a worthy issue presented on appeal as to whether these essential factors were established as a matter of law in this case.[6]

B.  <u>The Justice Stevens Consolidation, Accounting and Dismissal Order.</u>[7]  Justice

_____

[6] While the order does not distinguish between equitable estoppel versus judicial estoppel, it appears the order was based on the former. In any event, even if judicial estoppel were considered, the elements would similarly not appear to have been met and would similarly present an issue worthy of appeal. The doctrine of judicial estoppel applies the principle that "[a] party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial." <u>Case of Canavan</u>, 432 Mass. 304, 308 (2000) (omitting internal quotations and citations). That principle would not apply to Judith's conveyance of a deed as inconsistent with her petition in the litigation giving rise to the order and decision of the Probate Court.

[7] The Justice Stevens Consolidation, Accounting and Dismissal Order provided as follows:

(1).    Chester's Motion to Consolidate is ALLOWED;

Stevens order of December 14, 2001, effected the following: (1) consolidated a number of the

pending Probate Court cases; (2) directed Chester to file an accounting; (3) allowed Chester's

motion to dismiss cases Docketed as Nos. 00-EO-126 GC1 and 01-EO-05 GC1; and (4) denied

Donna's motion for a new trial concerning the entry of the prior order and decision entered on the

petition to remove Chester as Trustee (See Part III. A).[8]

By this order and decision, among other actions, the Probate Court Judge dismissed

Donna's Petition for Declaratory Judgment (docket no. 00-EO-126-GC1). In the declaratory

judgment complaint, Donna had sought a declaration that the transfer of the property from the

Chalupowski Realty Trust to The Andrews St. Realty Trust should be declared null and void, and

that Chester was not properly performing the duties of a trustee. That dismissal order is one of

---

(2).     Donna's Motion for New Trial and Amendment of Judgment (94PO3114C1) is DENIED;

(3).     Chester's Motion is Dismiss (00E00126GCI) is ALLOWED;

(4).     Chester's Motion to Dismiss (01E0005GCI) is ALLOWED;

(5).     Chester's Motion to Dismiss (00E0127GCI) is DENIED. On or before January 15, 2002, Chester
         shall file with this Court and shall forward to the beneficiaries of the Chalupowski Family Trust
         full and detailed accounts as specified in paragraph 4 of the orders of this Court (Highgas, J.) dated
         October 30, 1996 for July 3,1996. Such accounts shall commence with receipt of any assets of the
         Trust by Chester.

(6).     If a petition by Donna and/or Judith is filed by January 15, 2002, for removal of Chester as trustee
         of the 26 Through 30 Andrew Street Realty Trust, that petition shall be consolidated with the
         pending proceeding (Docket No. 00E0127-GC1).

         [Such a petition was filed by Judith's counsel on January 14, 2002 and is docketed as Docket No. 01-E005-
         GC1.. The record does not reflect whether a similar petition was filed by counsel for Donna, but since the
         matter is consolidated, it would appear all interested parties would be before the court.]

(7).     The trial department shall schedule all pending matters for a pre-trial conference in late February
         2002, at 9am. No other pre-trial conferences shall be schedule by the trial department for 9am on
         that date.

(8).     Except as otherwise provided herein, all prior orders of this Court now in effect are ratified and
         confirmed. (entered December 14, 2001).

[8] To be noted is that technically there was no trial. Rather, there were only hearings,
precedent to the entry of this order and decision.

12

the issues presented in the appeal.

The Probate Court memorandum of decision cites as basis for the dismissal of the declaratory judgment action res judicata by virtue of a prior Superior Court action. The Probate Court Judge was of the view that Donna had brought a similar suit and that "the dismissal of Donna's claims in the Superior Court have a res judicata effect in this [Probate] Court because . . . there was a final judgment in the Superior Court action." (emphasis added). However, the Superior Court docket reflects that the Superior Court action was not adjudicated on the merits. Rather, from the Superior Court docket, it appears that the dismissal arose out of a procedural conflict concerning whether Donna, having commenced the action in the name of her mother, Mary Jane, would be authorized to act as her mother's guardian ad litem in prosecuting the litigation in the Superior Court. The mother moved to intervene, contesting Donna's claim of guardianship and seeking to dismiss the suit without further proceedings. (There were, at the time, other proceedings pending in the Probate Court). Ultimately, the dismissal was not on the merits, but rather was ministerial, as the court denied the guardianship request of Donna, and granted the motion of her mother, Mary Jane, as plaintiff to dismiss the suit . Thus, the Superior Court case was not an adjudication on the merits and did not constitute res judicata over the issues Donna sought to litigate in her declaratory judgment action filed in the Probate Court.

Given the foregoing, there is a meritorious issue on appeal concerning whether res judicata was invoked in error to dismiss Donna's declaratory judgment action in the Probate Court. "[P]reclusive effect should not be given to issues or claims that were not actually litigated in a prior action." Treglia v. MacDonald, 430 Mass. 237, 241 (1999). (omitting citations). If the doctrine of res judicata was not correctly applied - - and the record indicates it was not - - then

13

there is a real prospect that the dismissal of this action will be held to be error on appeal.

C. The Justice Stevens Stay Pending Appeal Denial Order. In this order, Justice Stevens denied Donna's motion to stay pending appeal. However, the judge noted, "[a]ccordingly Donna's [Chalupowski's] motion to restrain and enjoin Chester [Chalupowski] from evicting Donna and Judith [Chalupowski] from the premises is denied provided, however, that nothing herein is intended to preclude District Court department or any court having appellate jurisdiction with regard to orders of the District Court department from entering such orders as may be appropriate in the pending summary process proceeding." (emphasis added).

D. The Justice Highgas Order. Justice Highgas's order of July 3, 1996, addressed, inter alia, one petition filed on February 10, 1994, under which the mother, Mary Jane, had been placed under temporary conservatorship based on allegations by one of her daughters, and a separate petition filed on November 17, 1995, by the Health and Education Services for protective services to insulate Mary Jane from financial exploitation.

The initial Justice Highgas Order of July 3, 1996, vacated the temporary conservatorships over the mother, Mary Jane, but "makes no finding at this time whether Mary Jane Chalupowski is a person in need of protective services. This Order also provided that: (a) Chester was to assist his mother in the management of the properties at 26 and 30 Andrew St. which were the res of the Chalupowski Realty Trust, established by the father, Chester, Sr., and the mother, Mary Jane;[9] (b) Chester was to render an accounting to the trustees of all income received and all funds

---

[9] The Justice Highgas Order (July 3, 1996, as amended on October 30, 1996) provided in pertinent part as follows:

    1.      The Court makes no finding at this time whether Mary Jane Chalupowski is a person in need of protective services.

disbursed during the preceding month; and finally (c) the Highgas order allowed the Declaration

of Trust for the Chalupowski Family Trust.

The Justice Highgas Order includes no reference to the fact that on October, 4, 1995,

nine months before the entry of the Justice Highgas Order, Chester, Jr., had created the new

Andrews St. Realty Trust.  Nor does the Order refer to the fact that on October, 4 and 13, 1995,

the real estate property - - which had been the sole res of the Chalupowski Realty Trust - - was

transferred to The Andrews St. Realty Trust of which Chester is the sole Trustee.  See discussion

<u>supra</u>.

In considering the matter of the stay, I have weighed that Respondent Chester relies on

the Justice Highgas Order as laying the foundation for his continuing authority to manage the

properties at 26 through 30 Andrews Street, under which Chester claims some authority for the

right to evict his sisters pursuant to this 1996 order.  However,  I have further considered that

---

                          [On this point, in the amended order entered on October 30, 1996, Justice Highgas ruled
that the Petitioners were unable to demonstrate that Mary Jane Chalupowski was unable
to properly care for her property due to mental weakness and dismissed the Petition for
Conservatorship filed by the daughter Donna docket no. 94-P-0314-C1 and  the Petition
for Conservatorship filed by the Health and Education Services Docket No. 94P-0314-
CV2.  The judge also vacated the temporary conservatorship and the appointment of the
guardian ad litem.]

2.       Mary Jane Chalupowski has indicated her desire to have her son, Chester J. Chalupowski, Jr.,
assist her in the management of the properties at 26 Andrew Street and 30 Andrew Street, Salem,
Massachusetts.  The Court finds that said properties are held by CHALUPOWSKI REALTY
TRUST, under a Declaration of Trust dated December 19, 1984 and recorded with Essex Southern
District Registry of Deeds in Book 7612, Page 409, Mary Jane Chalupowski and Judith M.
Chalupowski, Trustees

3.       The said Chester J. Chalupowski, Jr., with Mary Jane Chalupowski's continuing assent, shall
continue to manage the properties located at 26 Andrew Street and 30 Andrew Street, Salem,
Massachusetts.  <u>Chester H. Chalupowski, Jr. shall, on the 15th day of each month, commencing
July 15, 1996, render an accounting to the trustees of all income received and all funds disbursed
for the preceding month.</u>  (emphasis added).

15

Justice Highgas Order does not address the legality of the transfer of the property from the Chalupowski Realty Trust to The Andrews St. Realty Trust. Indeed, it is disputed whether the fact of the property transfer was brought to the attention of Judge Highgas. As noted, I have also considered the allegation that Judith may not have had sufficient mental capacity to deed the subject property to The Andrews St. Realty Trust, and that there may have been acts of fraud and undue influence. Finally, as set forth herein, assuming that the Chalupowski Realty Trust has continuing legal existence, it is questionable whether Chester properly acted with exclusive authority to seek such an eviction,( including an eviction of Judith, one of the co-trustees of the Chalupowski Realty Trust), pursuant to a filing not authorized by a co-trustee of (and thereby legal title holder of) said Chalupowski Realty Trust.

### IV. Conclusion and Orders on Stay Pending Appeal

For the reasons set forth herein -- and in applying the civil standard of whether the issues presented are worthy of appellate review and present a reasonable likelihood of the appellants succeeding on the merits on appeal, see Part II, - - I conclude that there are sufficient meritorious issues presented such that the appellants may prevail on appeal and that, accordingly, a stay pending appeal is warranted.

1.    The Motion for Stay Pending Appeal concerning Justice Stevens Order of February 13, 2001 is granted;

2.    The Motion for Stay Pending Appeal of that part of the Justice Stevens Order of December 14, 2001, which: (a) dismissed Donna Chalupowski's Petition for Declaratory Judgment (Docket No. 00-E0126 GC1); and (b) denied Donna Chalupowski's Motion for New Trial or to Alter and Amend the Judgment is granted;

16

3.   Following the filing of the motion for stay with the single justice in order to preserve the

status quo, I issued an order on February 4, 2002, which, <u>inter alia</u>, provided as follows:

> (a). Chester J. Chalupowski, Jr. is enjoined from enforcing any execution,
> including an execution from the District Court Department, Salem Division in the
> matter of <u>Chester J Chalupowski, Trustee</u> v. <u>Donna Chalupowski</u>, Civil No 0136
> CV 1360 to evict said Donna Chalupowski; and

> (b). Chester J. Chalupowski, Jr., is enjoined from undertaking any action, pending
> further order of this Court, the purpose or effect of which, is to further or cause
> the eviction of said Donna Chalupowski or Judith Chalupowski from the
> properties that are the res of the Andrews St. Realty Trust which properties
> include, but are not limited to, the properties at 26-30 Andrews Street Salem, MA.

Given the issues presented on appeal which affect the question of whether Chester J.
Chalupowski, Jr., had legal title or authority to commence the eviction and the related
subject matter jurisdictional questions concerning the District Court eviction, the
execution of the eviction shall also be stayed. Hence, the above two orders Nos. 3(a) and
(b), shall remain in effect until further Order of this court.

4.   Should any matter requiring emergency action arise under those provisions of this Order
of Stay Pending Appeal, as set forth in paragraph Nos. 3 (a) and (b), I will retain
jurisdiction as single justice.

5.   Chester J. Chalupowski, Jr. is enjoined from transferring, mortgaging or otherwise
encumbering the real estate properties currently held in the Andrews St. Realty Trust,
consisting of the subject real estate and buildings at 26-30 Andrews St. Salem,
Massachusetts, EXCEPTING THAT Chester J. Chalupowski, Jr., may undertake
financial transactions in the ordinary course of business administration of said properties;
PROVIDED HOWEVER that any single financial transaction by Chester J. Chalupowski,
Jr. shall not be in excess of twenty-five thousand dollars, absent a motion to, and further
order of, a single justice of this court; and PROVIDED FURTHER that the aggregate of
such financial transactions by Chester J. Chalupowski, Jr., as totaled, shall not exceed
seventy-five thousand dollars, absent a motion to, and further and order of, a single
justice of this court.

17

6.     This Order on Stay Pending Appeal from the aforesaid decisions and judgments of the Probate Court, described in Nos. 1 to 2 above, shall not affect the continuing jurisdiction of the Probate Court in respect to the remaining pending matters, including, but not limited to, the ongoing matters in litigation involving the Chalupowski Family Trust; and shall also not affect the other particularized parts of the order entered by Justice Stevens on December 14, 2001.  For a brief summary of this order, see note 7 of this decision.

By the Court (Berry, J.)

Assistant Clerk

Entered:  August 6, 2002



# COMMONWEALTH OF MASSACHUSETTS

**ESSEX DIVISION**

**PROBATE AND FAMILY COURT**
**DOCKET NO. 94P 0314 C1**
**00E 0126 GC1**
**00E 0127 GC1**
**01E 0005 GC1**

IN RE: **Chalupowski Realty Trust**
      **Chalupowski Family Trust**
      **26-30 Andrew Street Realty Trust**

**F I L E D** OCT 1 5 2002

## MOTION TO VACATE APPOINTMENT OF GUARDIAN AD LITEM

Now comes Chester J. Chalupowski, Jr., a Respondent in the above captioned matters, (whose 82-year old mother, Mary Jane Chalupowski, is a defendant in two of the above captioned actions – 94P 0314 C1 and 01E 0005 GC1, and whose sister, Judith Chalupowski-Venuto, is a defendant in one of the above captioned matters – 01E 0005 GC1), and moves this honorable Court to vacate the appointment of Attorney Sharon D. Meyers as Guardian ad Litem for Judith Chalupowski-Venuto.

As reasons for his Motion the Respondent states as follows:

1. On October 15, 2001, Attorney Sharon D. Meyers was appointed by this Court as guardian-ad-litem "to represent the interests of Judith Chalupowski-Venuto in those proceedings now pending in this Court in which she has an interest." Immediately after being appointed, Attorney Sharon D. Meyers formed a working alliance with Attorney Joseph P. Corona, despite the fact that Attorney Corona was representing Donna Chalupowski, the Plaintiff in all the above captioned actions brought by Donna Chalupowski against every member of her immediate family, including her sister, Judith Chalupowski-Venuto, Attorney Meyers' Ward. What is more, Attorney Meyers formed the working alliance with Attorney Corona despite the fact that Attorney Corona's client, Donna Chalupowski, had an active restraining order against her sister, Judith Chalupowski-Venuto.

2. Also immediately after being appointed, Attorney Meyers assumed hostile and adversarial position towards the Respondent, Chester J. Chalupowski, Jr., thus aggravating the situation, and ruining any chance of reconciliation between Judith and her brother Chester - two of the three defendants in actions brought by Joseph Corona on behalf of Donna Chalupowski.

OCT 2 1 2002

The within action is hereby denied

3. In November and December 2001, without conducting a due and diligent research, Attorney Meyers filed with this Court numerous documents based on hearsay, distorted and misinterpreted information, and false and fraudulent statements made notoriously over the last nine years by Attorney Joseph Corona.

4. On January 29, 2002, Attorney Meyers filed with this Court the Motion of Guardian ad Litem for Further Clarification of Role stating that "the scope of the Guardian ad Litem's charge should be broadened," and also asking the court to order Judith "to participate in an examination to determine if she is a person under disability." On February 20, 2002 an order was issued granting both Attorney Meyers' requests. The GAL's role was expanded to be consistent with the M.G.L. 201, par. 34, and Judith was ordered "to submit to a mental and physical examination, at her expense, to determine if she may qualify as a person under disability." The order makes it clear, however, that "If it is determined after the mental and physical examination as provided above that Judith Chalupowski-Venuto is not a person under disability, the Court may make such further orders as are appropriate at that time." To the best of the Respondents' knowledge, Judith Chalupowski-Venuto did not submit to a mental and physical examination as required by the Court Order. The GAL did not see to it that her Ward complied with this Court's Order, and since February 20, 2002, Attorney Meyers has been functioning in the expanded GAL's capacity despite the fact that Judith Chalupowski-Venuto has not been determined to be a person under disability.

5. While abusing her position as a GAL in expanded capacity, Attorney Meyers filed her appearance and her pleadings with the Appeals Court in Boston, in an effort to support Attorney Corona's Motion to Stay Judgments and for Injunctive Relief filed by him with the Appeals Court on January 28, 2002, with a sole intention to interfere with the advantageous business relations of the Chalupowski estate.

6. During both the Probate and Appeals Court hearings, Attorney Meyers always positions herself at Attorney Corona's side, misleading the judges and creating an impression that both sisters, Donna and Judith, are of one mind, which could not be further from the truth (consider e.g. Donna's 209A against Judith).

7. Moreover, Attorney Sharon D. Meyers violated the code of professional ethical conduct by not disclosing a conflict of interest related to her professional ties with the Appeals Court Justice, Hon. Janice Berry.

8. Furthermore, Attorney Sharon D. Meyers violated the code of professional ethical conduct by not disclosing a conflict of interest related to her professional ties with Whipple & King, P.C., the law firm which has been representing Frank Venuto, Judith's ex-husband, over the ten years of their acrimonious divorce proceedings.

9. Last, but not least, Attorney Sharon D. Meyers violated the code of professional ethical conduct by not disclosing a conflict of interest related to her professional ties with Attorney David W. Moran, who was appointed by the Appeals Court Judge, Janice Berry, to conduct a mediation session which took place on July 2, 2002, at 30 Federal Street, in Salem, MA.

Considering all the above, it has become apparent that Attorney Sharon D. Meyers, for a number of reasons, is unsuitable to act as a GAL for Judith Chalupowski-Venuto.

Therefore, Chester J. Chalupowski, Jr. prays that this Honorable Court vacates the appointment of Sharon D. Meyers as a GAL for Judith Chalupowski-Venuto, and orders sanctions as deemed appropriate by this Court, considering the enormity and severity of this grave multifarious professional misconduct.

Also, Chester J. Chalupowski, Jr. moves this Honorable Court to compel Judith Chalupowski-Venuto to comply with the February 20, 2002, Order of this Court to undergo mental and physical examination to determine whether she may qualify as a person under disability. And, in case she is determined to be a person under disability, to allow her family members without a history of mental illness or substance abuse, to participate in the decision-making process regarding Judith's legal representation and protection of her interests.

Respectfully submitted, Pro Se, by:

Chester J. Chalupowski, Jr., Individually
Power of Attorney for Mary Jane Chalupowski
Trustee of the Chalupowski Family Trust
Trustee of the 26-30 Andrew Street Trust

## CERTIFICATE OF SERVICE

I, Chester J. Chalupowski, Jr., certify that on this day I served the counsel of record with a copy of the within motion, with a notice that a hearing on same will be conducted at the Essex County Probate and Family Court on 19.?/-?

Chester J. Chalupowski, Jr.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss                                     PROBATE & FAMILY COURT
                                              DOCKET NO. 00E 0127 GC1

JUDITH CHALUPOWSKI-VENUTO,          )
        Plaintiff,                  )
                                    )          DEPOSITION SUBPOENA
v.                                  )          MR.C.P. RULE 30(A)
                                    )          AND M.R.C.P. 45
CHESTER CHALUPOWSKI, JR.,           )
TRUSTEE OF CHALUPOWSKI              )
FAMILY TRUST                        )
        Defendant.                  )

        TO:    CHESTER CHALUPOWSKI
               119 Water Street, #65
               Beverly, MA  01915

GREETINGS:

        YOU ARE HEREBY COMMANDED in the name of the Commonwealth of Massachusetts
in accordance with the provisions of Rule 45 of the Massachusetts Rules of Civil Procedure to
appear and testify on behalf of the Plaintiff, Judith Chalupowski-Venuto, before a Notary Public of
the Commonwealth on TUESDAY, JANUARY 28, 2003, at 10:00 a.m. at the offices of Sharon D.
Meyers, 30 Federal Street, Suite 200, Salem, MA  01970 to testify as to your knowledge, at the
taking of your deposition, in the above-entitled action.

        **And you are further required to bring with you any and all documents listed in the
attached Schedule A.**

        Hereof fail not as you will answer your default under the pains and penalties in the law in
that behalf made and provided.

Sharon D. Meyers                       Notary Public: Sandra A. Valaitis
BBO #334680                            My Commission Expires: 5/15/2009
30 Federal Street, Suite 200           Date:  1·10·03
Salem, MA  01970
(978) 745-0575

                          **SCHEDULE A**

From 1997 through the present:

1.   All records of payments made on behalf of Mary Jane Chalupowski;

2.   All records of payments made for improvements at 26-30 Andrew Street, Salem, MA;

3.   All records of rents received at 26-30 Andrew Street;

4.   Schedule of expenses of 26-30 Andrew Street;

5.   Copies of all leases, letter agreements, or other written evidence of tenancy of 26-30 Andrew Street;

6.   All records of evictions from 26-30 Andrew Street;

7.   All records of payment of management fees to Harbor Rental & Realty or any other management company;

8.   All evidence of payment of taxes.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss
          PROBATE & FAMILY COURT
          DOCKET NO. 00E 0127 GC1

JUDITH CHALUPOWSKI-VENUTO,  )
   Plaintiff,         )
               )
               )  DEPOSITION SUBPOENA
               )  DUCES TECUM
v.              )  PURSUANT TO M.R.DOM.P. RULE 30(A)
               )  AND M.R.DOM.P. 45
CHESTER CHALUPOWSKI, JR.,   )
TRUSTEE OF CHALUPOWSKI    )
FAMILY TRUST        )
   Defendant.        )

TO:  KEEPER OF THE RECORDS
    EASTERN BANK
    195 Market Street
    Lynn, MA  01901

GREETINGS:
   YOU ARE HEREBY COMMANDED in the name of the Commonwealth of Massachusetts in accordance with the provisions of Rule 45 of the Massachusetts Rules of Civil Procedure to appear and testify on behalf of the Plaintiff, Judith Chalupowski-Venuto, before a Notary Public of the Commonwealth on **Tuesday, February 18th, 2003**, at 10:00am at the offices of Sharon D. Meyers, 30 Federal Street, Suite 200, Salem, MA  01970 to testify as to your knowledge, at the taking of your deposition in the above-entitled action.

   **And you are further required to bring with you any and all documents listed in the attached Schedule A.**

   **IF THE RECORDS ARE FORWARDED TO THIS OFFICE WITH THE SIGNED AFFIDAVIT OF AUTHENTICATION PRIOR TO THE ABOVE DATE, THERE IS NO NEED FOR ANYONE TO APPEAR FOR THE DEPOSITION. PLEASE CONTACT THIS OFFICE IF THERE ARE ANY QUESTIONS AT (978) 745-0575.**
   Hereof fail not as you will answer your default under the pains and penalties in the law in that behalf made and provided.

Sharon D. Meyers
BBO #334680
30 Federal Street, Suite 200
Salem, MA  01970
(978) 745-0575

Notary Public: Sandra Valaitis
My Commission Expires: 5/15/2009
Date: 2.4.03

1

## SCHEDULE A

All statements and any other supporting documentation regarding the account known as the Mary Chalupowski Family Trust, account number 00401 382320, dating from the inception of the account to the present, including, but not limited to monthly statements, cancelled checks and yearly summaries.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

APPEALS COURT
DOCKET NO. 02-J-57

IN RE:                          )
                                )     JUDITH CHALUPOWSKI VENUTO'S
THE MATTER OF THE               )     MOTION FOR CONTEMPT
CHALUPOWSKI REALTY TRUST)
                                )
                                )

Now comes Judith Chalupowski Venuto, by and through her Guardian Ad Litem

and moves this court to find Chester J. Chalupowski, Jr. in contempt of this court, and to

award attorneys fees and costs, as well as to issue sanctions against said Chester J.

Chalupowski, Jr.

As grounds therefore the Ms. Venuto states:

1. On or about August 6, 2002 this court issued an Order on Stay Pending

Appeal.

2. In Paragraph 5 of the Order this Court stated:

Chester J. Chalupowski, Jr. is enjoined from transferring mortgaging or
otherwise encumbering the real estate properties currently held in the Andrew
Street Realty Trust, consisting of the subject real estate and buildings at 26-30
Andrew St. Salem, Massachusetts, EXCEPTING THAT Chester J.
Chalupowski, Jr. may undertake financial transactions in the ordinary course
of business administration of said properties; PROVIDED HOWEVER that
may single financial transaction by Chester J. Chalupowski, Jr. shall not be in
excess of twenty-five thousand dollars, absent a motion to, and further order
of, a single justice of this court; and PROVIDED FURTHER that the
aggregate of such financial transactions by Chester J. Chalupowski, Jr., as
totaled, shall not exceed seventy-five thousand dollars, absent a motion to, and
further order of a single justice of this court.

3. There has been no modification of this order.

4. On or about October 17, 2002, Chester J. Chalupowski, Jr. entered into a Home Equity Line of Credit Agreement for $127,000.00 under a Power of Attorney allegedly given him by Mary Jane Chalupowski, the life tenant of the 26-30 Andrew Street Realty Trust. See copy of Home Equity Line of Credit Account Agreement, attached hereto as Exhibit A.

5. The Home Equity Loan is secured by a mortgage issued against 30 Andrew Street, Salem, Massachusetts. See copy of Open End Mortgage, attached hereto as Exhibit B.

6. In conjunction with this transaction, Chester J. Chalupowski, Jr. executed a Trustee certificate which certified: "(4) The undersigned further certify that they have been specifically authorized by all beneficiaries to execute a mortgage with Sovereign Bank and deliver any and all documents necessary to mortgage all rights, title and interest to the premises located at 30 Andrew Street, Salem, MA 01970." See copy of Trustee Certificate, attached hereto as Exhibit C.

7. Chester J. Chalupowski, Jr. did not have the authorization of all the beneficiaries as he did not have the authorization of his sister, Judith Chalupowski Venuto to enter into this transaction.

8. Chester J. Chalupowski, Jr. did not seek permission from this court or give notice to any other litigant that he intended to encumber or mortgage the subject property.

9. Chester J. Chalupowski, Jr. in contempt of this court's order of August 7, 2002.

*WHEREFORE,* Judith Chalupowski Venuto, by and through her Guardian Ad

Litem, requests this court to:

1. Find Chester J. Chalupowski, Jr. in contempt of this court's order of

   August 7, 2002;

2. Remove Chester J. Chalupowski, Jr. from his position as Trustee of the

   26-30 Andrew Street Realty Trust;

3. Appoint a neutral independent trustee as Trustee of the 26-30 Andrew

   Street Realty Trust;

4. Award counsel costs and fees for bringing this contempt action;

5. Such other relief this Court deems just and equitable.

Respectfully submitted,

**JUDITH CHALUPOWSKI VENUTO,**
**A/k/a JUDITH CHAL-VENUTO**

By her Guardian Ad Litem,

Sharon D. Meyers, Esq.
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

Dated: December 26 2003

## CERTIFICATE OF SERVICE

I, Sharon D. Meyers, Guardian Ad Litem for Judith (Chalupowski) Venuto hereby certify that I have delivered a copy of the following documents, first class postage prepaid,

1.    *JUDITH CHALUPOWSKI VENUTO'S MOTION FOR CONTEMPT*

to the following attorneys of record:

Joseph Corona, Esq.      for Donna M. Chalupowski
265 Essex Street
Salem, MA 01970

James R. Tewhey, Esq.      for Chester J. Chalupowski, Jr.
19 North Street
Salem, MA 01970

John D. Welch, Esq.      Guardian Ad Litem for Mary Jane Chalupowski
24 Center Street
Newburyport, MA 01950


Signed under the pains and penalties of perjury this 24th day of December 2003.

Sharon D. Meyers, Esq.
BBO# 344680
30 Federal Street, Suite 200
Salem, MA 01970
978-745-0575

**Sovereign Bank**

| | | |
|---|---|---|
| **HOME EQUITY LINE OF CREDIT ACCOUNT AGREEMENT** ("Agreement") | Date | OCTOBER 17, 2002 |
| Borrower: MARY JANE CHALUPOWSKI | Account No. | XX17542362 5119623409 |
| Borrower: | Credit Limit | $ 127,000.00 |

"Premises" Secured by Mortgage: 30 ANDREW STREET, SALEM, MA 01970

Lot: —————     Block: —————

We, Sovereign Bank, its successors and assigns, have approved your application for a Home Equity Line Of Credit Account ("Account"). You, the person(s) who signs as Borrower(s) below, may obtain loans on your Account at any time up to your Credit Limit shown above. Under certain circumstances, we can: (1) terminate your Account, require you to pay us the entire outstanding balance in one payment, and charge you certain fees; (2) refuse to make additional extensions of credit; and (3) reduce your Credit Limit. These circumstances are described in the paragraph labeled "Our Absolute Obligation to Make Loans" which begins on Page 2.

**DEFINITIONS:** As used in this Agreement: "Annual Percentage Rate" means the cost of your loans as a yearly rate; "Finance Charge" means the dollar amount your loans will cost you; "New Balance" means the sum of your loans and our charges at the end of the billing cycle; "Periodic Rate" means the cost of your loans as a daily rate; and "Statement" means the monthly statement of our charges for your use of the Account.

**TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges for your Account.

**LOANS:** The length of the period during which you can obtain loans on your Account is 10 years (the "Draw Period"). You can obtain loans during the Draw Period by drawing one of the special checks that we will supply to you to directly obtain loans on your Account. Or, you can use any instrument or device that we may later provide to you to access your Account. You may not obtain a loan on your Account to pay the Minimum Payments due on your Account.

**STATEMENTS:** We will send you a Statement at the end of any billing cycle in which a loan, payment or credit is posted to your Account, we impose any charge, or we owe you or you owe us more than $1.00.

**OUR SECURITY INTEREST:** As security for all sums you owe on your Account, including future loans and our finance and other charges, all of the owners of the Premises identified above (called the "Owners") have executed a Mortgage on the above date in our favor. Our rights in the Premises and the Owner's obligations are more fully described in the Mortgage.

**OUR CHARGES FOR YOUR LOANS:**

**1. Finance Charges:** Finance Charges consist of (i) an Early Termination Fee of $200.00 (if applicable), and (ii) interest which begins on the date each loan is posted to your Account and ends when the loan is paid in full.

a. The Early Termination Fee - If you request that we close your Account within 24 months of the Date of this Agreement shown above, we will impose an Early Termination Fee of $200.00. We will waive this fee if your Account is refinanced with us or the Premises are sold.

b. Interest - The daily periodic rate may vary. We compute the FINANCE CHARGE on your account by applying the daily periodic rate for the billing cycle to the "average daily balance" (including current transactions) as computed below, and multiplying that product by the number of days in the billing cycle.

To compute the "average daily balance" for the billing cycle, we take the beginning balance each day, add any new loans and debit adjustments (+), and subtract any payments, credit adjustments (-) and unpaid finance charges. This gives us the daily balance. Then, we add together all the daily balances and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

(1) Rate Changes - The Annual Percentage Rate includes only interest and not other costs. The Annual Percentage Rate may vary from one billing cycle to the next. In any billing cycle beginning on or after the first business day of a calendar month, the ANNUAL PERCENTAGE RATE will be - 0.25 % (the "Margin") above the highest Prime Rate published in the column labeled "Money Rates" in The Wall Street Journal® (the "Index") on the first business day of that calendar month. The maximum ANNUAL PERCENTAGE RATE that can apply is 24% (corresponding daily Periodic Rate .0657%). Any increase or decrease in the Annual Percentage Rate will be effective on the first day of the billing cycle. The new Annual Percentage Rate will be applied to your current balance and future loans.

(1a) Preferred Rate Reduction. If you have asked us to automatically deduct your monthly payment from your checking account, your Periodic Rate and Annual Percentage Rate are calculated by subtracting percentage points from the total of the Index plus the Margin. If you have asked us to deduct your payment from your Sovereign Ultimate Checking Account, we subtract .500 percentage points from the Index plus the Margin. We subtract .250 percentage points if it is another Sovereign checking account. If this service stops, your Annual Percentage Rate will increase by .250 or .500, as applicable, and your corresponding Periodic Rate will also increase. You may stop this service by telling us or by closing your checking account. We may stop this service if you do not maintain enough funds in your checking account to pay your Monthly Payment.

(2) The Rate - Based on the Index and Margin on the day you signed the Agreement, the initial ANNUAL PERCENTAGE RATE is 4.490 % , which corresponds to an initial daily Periodic Rate of 0.01230 %.

**2. Late Charges:** If your Minimum Payment is not received within 15 days of the Payment Due Date shown on your Statement, we will impose and you agree to pay a Late Charge of 10% of the Minimum Payment that is past due or $20, whichever is more.

**3. Other Charges:** We impose the following additional charges on your Account:

a. We impose a Return Item Charge of $20 whenever your payment is returned for insufficient funds or any other reason.

b. We impose a charge of $4 for each copy you request of a special check and $6 for each copy you request of a Statement, unless your request is made in connection with a proper written notice of a billing error.

c. We will charge and you agree to pay an overlimit fee of $25, when any special check or other request for a loan would cause you to exceed the Credit Limit, whether or not we honor your request.

d. We will charge and you agree to pay a fee of $15 for a domestic and $25 for an international wire transfer of funds you direct to be made from your Account.

e. We will charge and you agree to pay a fee of $20 per hour (1 hour minimum) for research that we perform at your request, unless done in connection with a proper written notice of a billing error.

request for a loan on your Account.

g. We will charge and you agree to pay an annual fee on your Account. This fee
will be charged in the 13th month after you open the Account and in about the same billing cycle of each following year during the
Draw Period.

h. We charge you for our actual costs of Credit Reports and Appraisals incurred in investigating whether any condition
permitting us to temporarily suspend credit availability or reduce the Credit Limit on your Account continues to exist.

**MINIMUM PAYMENT:** You promise to pay your loans and our Finance Charges and other charges as provided in this Agreement.
You may pay all or part of the outstanding balance at any time, without penalty. To the extent your payments reduce the outstanding
balance, they restore your credit availability. Whenever a balance is outstanding, each month you must pay us a Minimum Payment,
which we must receive by the Payment Due Date shown on your Statement. For any monthly billing cycle during the Draw Period, at
your option your Minimum Payment will be equal to the sum of (i) (a) X all accrued Finance Charge and other charges for the billing
cycle (minimum $20) ("Option 1"), or (b) 1/60th of the sum of the outstanding balance of principal and Finance Charge at the end of
the billing cycle, or $100, whichever is more (or the entire balance if less than $100) ("Option 2") plus (ii) optional credit life insurance
premiums, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any monthly
billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance
of principal at the end of the last billing cycle in the Draw Period, or $100, whichever is more, plus (ii) all Finance Charges for the billing
cycle, plus (iii) optional credit life insurance premiums, if any, plus (iv) any other fees and charges and any amounts past due. You
must also pay any Late Charges then outstanding. The number and amount of your Minimum Payments may increase if the Annual
Percentage Rate increases.

**PAYMENT OPTIONS:** You must select payment Option 1 or Option 2 at the time you open the Account and may change from one
option to the other from time to time during the Draw Period. However, you cannot change from one option to the other until at least 12
billing cycles have transpired from the last option change. You must ask us in writing at least 15 days before the start of the billing cycle
in which you want to change your payment option. We will not permit you to change your payment option if your payments are past due
or we have advised you that we have temporarily suspended your ability to obtain new loans as provided in Section 1.c of the
paragraph labeled "Our Absolute Obligation To Make Loans" below. Under payment Option 1 and Option 2, the Minimum Payment
may not be enough to repay all outstanding loans by the end of the Draw Period.

**RIGHT OF SET OFF:** Unless you can use your SBNE card to access your account, you authorize us to apply money from your
deposit account(s) with us, now or in the future, to pay all or any part of any amount past due under this agreement.

**AUTOMATIC PAYMENT AUTHORIZATION:** If an account number is inserted in the following space you authorize us to deduct the
amount of your Minimum Payment on the Payment Due Date shown on your Statement from your Checking or Transaction Account,
No. 6040942017 with us, or with N/A and to make the payment then due on your Account.

**PROPERTY INSURANCE:** You must obtain and maintain adequate insurance against fire, flood and such other reasonable risks to
the Premises as we require. This insurance protects your interests and our interests in the Premises when this Agreement is in effect.
YOU MAY OBTAIN SUCH INSURANCE FROM ANY AGENT, BROKER OR INSURANCE COMPANY OF YOUR CHOICE which is
licensed to do business in the state where the Premises is located, but we reserve the right to refuse to accept any insurance company
or policy for reasonable cause. The policy must name us as "mortgagee" and provide us with not less than 30 days notice of any
cancellation or reduction in coverage. You must provide us with evidence of such insurance coverage promptly after our request. In the
event of an insured loss, you agree to promptly advise us of the loss and to file a proof of loss with the insurance company. You
appoint us your attorney-in-fact, in your name or in ours, to file a proof of loss if you fail or refuse to do so, and to endorse your name to
any check, draft or other instrument in payment of an insured loss. We will allow you and the Owners to apply the insurance proceeds
to repair the Premises but only if we have not previously declared your Account to be in default, temporarily reduced your Credit Limit
or frozen your Account, and the repairs are done properly.

**OUR ABSOLUTE OBLIGATION TO MAKE LOANS:** Except as provided below, our agreement to make loans to you during the Draw
Period is an absolute obligation on our part. This means we MUST make each and every loan you properly request, up to your Credit
Limit, under this Agreement. However, our absolute obligation to make loans to you ends when any of the following happens:
**1. We declare your Account to be in default,** which we can do when:
   a. You fail to meet the repayment terms of this Agreement for any outstanding balance.
   b. There is fraud or a material misrepresentation by you in connection with your Account.
   c. Any action or inaction by you adversely affects our security for your Account, or any right we have in such security. Among
other things, such action or inaction would include: the sale or transfer of title to the Premises without our consent; your abandonment
of the Premises, which adversely affects our security in the Premises; your failure to maintain the required property insurance
coverages on the Premises; your failure to maintain the Premises in good condition and repair, which adversely affects our security in
the Premises; your permitting anything to be done to the Premises that would constitute waste or destruction of the Premises, or that
would render the Premises unsafe or unfit for human habitation (such as by bringing or storing hazardous or toxic substances on the
Premises), which adversely affects our security in the Premises; your doing of any unlawful act that subjects the Premises to seizure by
governmental authorities; your failure to pay taxes on the Premises; your permitting any liens to be filed on the Premises which are
superior to ours: foreclosure by any prior mortgagee or lienholder which adversely affects our interest in the Premises; a taking of all or
part of the Premises in a proceeding in eminent domain or condemnation; or the death of the sole Borrower obligated on your Account,
or if there are more than one of you, the death of any of you or any Owner of the Premises that results in a transfer of title to the
Premises to a person who is not a party to our Mortgage on the Premises or that otherwise adversely affects our security in the
Premises.

If one or more of the above events occurs, we can temporarily or permanently reduce your Credit Limit or suspend your ability to
obtain loans, or we can declare your Account to be in default. However, we can declare your Account in default only by personally
delivering or mailing to you a written Notice of Default. Our Notice of Default will become effective when we personally deliver it to you
or place it in the mails, even though you might not receive our mailed Notice of Default. If we declare your Account in default we will
immediately terminate credit availability on your Account. If we choose, we may also send you a Notice of Intention to Take Action,
advising you that if you do not cure the default within the time period then provided by law, we will demand repayment of the entire
outstanding balance in one immediate payment and exercise our security interest and right of set-off if any of your property, including
deposit accounts, then in our possession. If we don't receive payment in full, we may also foreclose upon the Premises and take any
other collection action allowed to us by law. You agree to pay our court costs and fees we incur in the collection and enforcement of
your Account, as well as our reasonable attorney's fees, to the extent permitted by law, if we refer your Account to an attorney for
collection. You agree to pay Finance Charges at the Annual Percentage Rate provided in this Agreement on the outstanding balance
of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you
cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never
been in default, but you will not restore your right to obtain additional loans on your Account.

If one or more of the above events occurs, we may elect to waive our right to declare your Account in default. If we waive that
right, we will remain absolutely obligated to make all loans you properly request on the Account. However, that waiver does not bind us
if a similar or different event occurs later. At that time, we have the right to decide whether to declare your Account in default.

**3. You or we temporarily reduce your Credit Limit or temporarily suspend your ability to obtain loans,** which can be done only if any one or more of the following events occur:

a. Any of you notify us, in person or in writing, of an intention to terminate your Account, or that you do not want to be obligated for any loans obtained or to be obtained by any others on the Account (except in connection with a good faith billing dispute), or any Owner advises us of an intention not to obligate the Premises for existing or future loans. We will treat a request for termination by less than all of you, or by an Owner who is not also a Borrower, as a request for temporary suspension. Such suspension will become effective as soon as we can reasonably act to stop new loans from being made on your Account. However, we will honor all requests for loans which were made or are dated prior to that time.

b. Any of the following things happen and we choose to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain loans:
(1) The value of the Premises declines significantly below its original appraised value.
(2) We reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances.
(3) We are precluded by government action from imposing the Annual Percentage Rate provided in this Agreement.
(4) The priority of our security interest in the Premises is adversely affected by government action to the extent that the value of our security interest is less than 120 percent of the Credit Limit.
(5) You are in default of any of the following "material obligations" under this Agreement:
   (a) Any of you fails to honor your obligations on any prior mortgage on the Premises.
   (b) Any of you does not pay any other obligation you owe to us or to others as and when that obligation comes due, or a proceeding is begun by or against any of you under the Federal Bankruptcy Code.
   (c) Any of you are incarcerated or declared legally incompetent.
   (d) Any of you fails to promptly provide us with satisfactory financial information which we may request from time to time or to cooperate with us in appraising the Premises which we may elect to do from time to time.
   (e)If there are more than one of you, the death of the person on whose income we primarily relied in agreeing to open the Account for you.
   (f)You move out of the Premises or convert the Premises from your residence or vacation home to an investment or rental property.
   (g) You permit an intervening lien to be filed that would take priority over future loans made by us.
(6) We are notified by our regulatory agency that continued advances on your Account constitute an unsafe and unsound practice.
(7) The maximum annual percentage rate is reached.
(8) An event occurs which gives us the right to declare your Account to be in default.
We will send you a Notice Of Credit Freeze not later than three business days after we take such action, advising you of the specific reasons for our action. Our Notice Of Credit Freeze will advise you that you may request reinstatement of your credit privileges when the condition which led to our action no longer exists.

**4. The Draw Period ends.**

**YOUR OBLIGATIONS CONTINUE ON TEMPORARY SUSPENSION:** Upon temporary suspension, whether by you or by us, you remain obligated to repay all amounts owed to us as provided in this Agreement, including our Finance Charges and other charges. This means you must continue to make at least the Minimum Payments each month under the terms of this Agreement.

**REINSTATEMENT:** You may request reinstatement of the credit privileges on your Account for the remainder of the Draw Period at any time after the condition that permitted us to temporarily reduce your Credit Limit or suspend your ability to obtain loans ceases to exist. If you request reinstatement you may be required to pay any reasonable appraisal and credit report fees we actually incur in investigating whether the condition permitting the freeze continues to exist. We will reinstate credit privileges on your Account when we find that those conditions have ceased to exist. If any one of you or any Owner of the Premises requested temporary suspension of the Account, we will reinstate your Account for the remainder of the Draw Period if all of you advise us in writing of a desire to reinstate the Account. However, we may refuse to reinstate your Account until we are assured that our rights in any security for your Account have not been adversely affected by the temporary freeze.

**TAXES; REPAIRS:** You agree to pay all taxes on the Premises and to maintain the Premises in good condition and repair.

**OTHER ADVANCES:** If you fail to purchase property insurance, or do not pay taxes when they come due, or do not properly maintain the Premises, we may, if we choose (but without any obligation on our part), advance sums on your behalf for these purposes in order to protect our interest in the Premises. Any advances we make on your behalf will not excuse you from your failure to honor your promises and obligations in this Agreement. The amounts we advance on your behalf will be charged to your Account as loans.

**OWNERSHIP OF SPECIAL CHECKS:** You agree that the special checks and any other credit instruments or devices which we may supply to you to use in connection with your Account are our property. Unused special checks and any other credit instruments or devices must be returned to us immediately upon demand. We will retain all special checks and other credit instruments you draw in connection with your Account.

**PROOF OF ADVANCES:** Your Statements will indicate the current status of your Account and identify the transactions posted during the billing cycle. If you need evidence of an advance or other transaction, we will provide you with a photographic or other reasonable reproduction of any special check or other document that you request. You agree that such evidence will be satisfactory to you for all purposes.

**REFUSAL TO HONOR REQUESTS FOR ADVANCES:** We will not be responsible if, for any reason, anyone fails or refuses to honor special Account checks or any other credit instrument or device we provide to you to obtain loans on your Account.

**AMENDMENTS:** We may amend this Agreement by entering into a separate written agreement with you, or by making a change that is either beneficial to you or insignificant. However, you will be responsible for increases in taxes and property insurance premiums on the Premises and we may pass on any increases in credit insurance premiums you may elect to obtain in connection with your Account. If we temporarily reduce the rate or fees charged on your Account below those contained in this Agreement, we can impose the agreed rate or fees by giving you not less than 15 days' notice of the change in terms.

**BINDING EFFECT:** If more than one of you signs . Borrower, each of you will be liable, separately and t    .er, for all loans obtained on the Account. All of you agree that any one or more of you may obtain loans on the Account. This Agreement obligates you and your estate, heirs and personal representatives and benefits us and our successors and assigns. We may add or release parties, or permit the addition or substitution of real property collateral subject to our Mortgage, or modify, extend or amend this Agreement without in any way affecting your obligations on this Agreement.

**CONTINUED EFFECTIVENESS:** If we honor special Account checks or other requests for advances after your death or declaration of legal incompetency, but before we receive actual written notice of either event, those advances will be valid, legal and binding obligations on you and your estate, heirs and personal representatives.

**IRREGULAR PAYMENTS; DELAY IN ENFORCEMENT:** We may accept partial or late payments of sums due on your Account without losing any of our rights under this Agreement. We may even accept checks or drafts marked "paid in full" or with similar language indicating that our accepting the payment would be in full-satisfaction of your outstanding balance, without being bound by that language or losing any of our rights under this Agreement. We can delay enforcing our rights under this Agreement without losing them.

**CREDIT REPORTS AND APPRAISALS:** From time to time, we may review your Account to determine whether, in our reasonable opinion, a material change has occurred in your financial circumstances that would leave you unable to fulfill the repayment obligations under this Agreement. As part of such reviews, we may obtain additional credit reports on you, inspect or reappraise the Premises, and request additional financial information from you. You agree to cooperate with us in performing such reviews and to promptly provide satisfactory financial information to us.

**TRANSFER AND ASSIGNMENT:** Your rights under this Agreement belong only to you. You cannot transfer or assign them to anyone else. We may transfer and assign our rights and obligations under this Agreement and the Mortgage at any time without your consent. The person to whom we transfer and assign this Agreement and the Mortgage shall be entitled to all of our rights and subject to all of our obligations under this Agreement and the Mortgage. None of your obligations shall be affected by our transfer and assignment.

**APPLICABLE LAW; ENTIRE AGREEMENT:** You agree that this Agreement is to be governed by Pennsylvania law, except to the extent that Federal law applies. This is the entire agreement between you and us. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

YOU ACKNOWLEGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT

_____ (SEAL)    _____ (SEAL)
Borrower                            Borrower

_____ (SEAL)    _____ (SEAL)
Borrower                            Borrower

CONSUMER CREDIT APPLICATION CONFIRMATION

Thank you for applying for a home equity loan with us!

At this time, we would like to confirm the information that you gave us when you applied for this
**Home Equity Line 80% LTV**   . You should review this application confirmation to ensure that the information is accurate
and complete. Once you have completed your review, sign and date the bottom of the confirmation.

Please confirm the following:

1.  **Personal Information**
    Applicant 1 Name & Address                         Applicant 2 Name & Address
    MARY JANE CHALUPOWSKI
    30 ANDREW  STREET
    SALEM, MA  01970
    Social Security Number: 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                 Social Security Number:

2.  **Type of Loan Applied for:**

3.  **Loan Amount/Credit Limit Applied for:  $  127,000.00**

4.  **Term Requested    N/A    Months (for equity loans only)**

5.  **Payment Option During Initial Draw Period:  INTEREST ONLY**
    **(for equity lines only)**

6.  **Address of Property To Be used As Collateral:** 30 ANDREW  STREET, SALEM, MA  01970

7.  **Purpose of Loan:** Home Equity Reserve

8.  **Special Income Disclosure.**
    *You acknowledge that we advised you orally at the time you applied for your equity loan or equity line that
    alimony, child support and separate maintenance income need not be revealed if you do not wish to have
    it considered as a basis for repaying this obligation.*

Signatures.

"You" or "your" means each applicant who signs below. "We", "our", or "us" means Sovereign Bank. You represent
that everything filled in here is true, complete, and accurate. You authorize us and others on our behalf to gather and
collect information about you from time to time which we believe is advisable and which relates to this application
and the loan you are applying for. This information includes, but is not limited to, consumer reports from consumer
reporting agencies. To the extent not expressly prohibited by applicable law you authorize us to release and
disclose to others for valid business reasons any information relating to you and any of your banking relationships
with us, including, but not limited to, copies or originals of any and all records, statements and any other documents
and information relating to you, this loan application, any other loan you may have with us, any deposits,
withdrawals, transfers, or payments you make, and any of your other banking relationships with us now or in the
future. You have given us additional information relating to your application orally. Such information is made part of
this application confirmation. This application confirmation remains our property whether or not we approve your
application.

Applicant 1 Signature _____ Date 10-17-02 _____

Applicant 2 Signature _____ Date _____

If property is located in RHODE ISLAND:
This is an open-end mortgage to secure present
and future loans under Chapter 25 of Title 34.

SOVEREIGN BANK

OPEN- END MORTGAGE
(For use in CT, MA, NH, and RI)

Maximum Principal Sum: U.S. $: __127,000.00__       Maturity Date: __09/17/2027__

Property Address: 30 ANDREW STREET, SALEM, MA  01970

Borrower(s): MARY JANE CHALUPOWSKI

Borrower's Mailing Address(es): 30 ANDREW STREET
                          ,   SALEM, MA  01970

THIS MORTGAGE is between each Mortgagor signing below ("Borrower") and the following Mortgagee ("Lender"):

Lender's Address for Notices:       Sovereign Bank
                                    Mail Stop 10-421-CP2
                                    525 Lancaster Avenue
                                    Reading, PA 19611

BORROWER has entered into a Home Equity Line of Credit Account Agreement ("Agreement") with Lender, dated the same date as this Mortgage, which is a consumer revolving loan agreement that provides for an open-end credit plan (as defined in the Truth in Lending Act). Under the Agreement, Borrower may obtain advances (including re-advances of any repaid principal) and is indebted to Lender for all amounts advanced and outstanding from time to time. All amounts advanced under the Agreement or this Mortgage, if not sooner paid, are due and payable at the Maturity Date. The maximum principal amount that is or may be secured by this Mortgage at any time and from time to time shall not exceed the Maximum Principal Sum shown above.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Agreement, together with interest thereon, and all renewals, extensions, and conversions of or modifications to the Agreement; the payment of all other sums provided in the Agreement or advanced to protect the security of this Mortgage; and the performance of all other covenants and agreements of Borrower contained herein and in the Agreement, for consideration paid, Borrower hereby mortgages, grants, and conveys to Lender, its successors and assigns forever, with **STATUTORY POWER OF SALE** (if applicable) and **WITH MORTGAGE COVENANTS**, the property referenced below to this Mortgage (the "Property"). This mortgage is given ON THE STATUTORY CONDITION.

### PROPERTY DESCRIPTION

That certain piece or parcel of land, and the buildings and improvements thereon, known as:

30 ANDREW STREET, SALEM, MA  01970

In the Town of: SALEM
County of:      ESSEX
and State of:   MASSACHUSETTS

and being more particularly described in a deed recorded in
Book            Page
of the ESSEX              County, City of SALEM

### PROPERTY UNDER MORTGAGE

The Property includes: all improvements erected on the Property; all of Borrower's rights and privileges to all land, water, streets, and roads next to and on all sides of the Property (called "easements, rights, and appurtenances"); all rents from the Property; all proceeds (to the extent necessary to repay the amount Borrower owes) from the Property, including insurance proceeds and proceeds from the taking of all or any part of the Property by a government agency or anyone else authorized by law; and all property and rights described above that Borrower acquires in the future.

### OWNERSHIP OF PROPERTY

Borrower promises that Borrower lawfully owns the property and has the right to mortgage, grant and convey the Property, and that there are no claims or charges (called "encumbrances") against the Property, except for encumbrances disclosed to Lender. Borrower is fully responsible for any losses Lender suffers because someone other than the Borrower has some of the rights in the Property than the Borrower claims, and Borrower will defend Borrower's ownership of the Property against any such claim of rights. Borrower and Lender covenant and agree as follows:

**1.      Payment of Principal, Interest, and Other Charges.** Borrower shall promptly pay, when due, the principal and interest indebtedness secured by this Mortgage and any other charges due under the Agreement.

**2.      Application of Payments.** Unless otherwise provided in the Agreement or required by applicable law, all payments received by Lender shall be applied first to billed finance charge, then to other charges that have not been added to principal, then to principal, and finally to unbilled finance charge.

3.      **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perfu.... all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage, including Borrower's covenants to make payments when due, and will not incur any additional indebtedness under any such mortgage, deed of trust or other security agreement. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property that may attain priority over this Mortgage, and any leasehold payments or ground rents. Borrower will notify all prior mortgagees of Lender's Mortgage.

4.      **Hazard and Flood Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require. Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this Mortgage, plus the Maximum Principal Sum, or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy, or (c) such amount as may be required by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgagee clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the property or to the sums secured by this Mortgage.

5.      **Preservation and Maintenance of Property; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall promptly pay, when due, all assessments imposed by the owners' association or other governing body of any condominium project of which the Property is a part, pursuant to the provisions of the declaration, by-laws, regulation or other constituent document of the condominium project. As long as the owner's association or other governing body maintains a "master" or "blanket" policy on the condominium project that provides insurance coverage against fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then Borrower's obligation under paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied and the provisions of paragraph 4 regarding application of hazard insurance proceeds shall be superseded by any provisions of the declaration, by-laws, regulations or other constituent document of the project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss of the Property, whether to the unit or to common elements, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.

If the Property is part of a condominium project, Borrower shall not, except after notice to Lender and with Lender's prior written consent, partition or subdivide the Property, or consent to (a) the abandonment or termination of the project, except for abandonment or termination provided by law in the case of a taking by condemnation or eminent domain; (b) any material amendment of the declaration, by laws or regulations of the owners' association or other governing body, or equivalent constituent document of the project, including, but not limited to, any amendment that would change the percentage interests of the unit owners in the project; or (c) the effectuation of any decision by the owners' association or other governing body to terminate professional management and assume self-management of the project.

6.      **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced that materially affects Lender's interest in the Property, the Lender, at Lender's option, on notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as Lender deems necessary to protect its interest. Any amounts disbursed by Lender pursuant to this paragraph 6 shall become additional principal indebtedness of Borrower and Borrower shall pay interest on such amounts at the rate charged on advances under the Agreement. Except to the extent that amounts disbursed by Lender pursuant to this paragraph 6 cause the Borrower's outstanding principal balance to exceed the Maximum Principal Sum, such amounts shall be secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, all amounts disbursed pursuant to this paragraph 6 shall be payable on notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder, and any action taken by Lender hereunder shall not be a waiver of or preclude the exercise of any of the rights or remedies accorded to Lender.

7.      **Inspection.** Lender may make or cause to be made reasonable entries on and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

- 2 -

**8.    Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.

**9.    Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of any of the other terms of payment of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify the terms of payment of the sums secured by the Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10.    Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Agreement, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally obligated to pay the sums secured by this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear or make any other accommodations with regard to the terms of this Mortgage and the Agreement without the Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**11.    Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice required or permitted to be given to Borrower under this Mortgage shall be sent to Borrower by regular mail addressed to Borrower at the address for notices specified in the Agreement; and (b) any notice required or permitted to be given to Lender under this Mortgage (including, without limitation, written notices pursuant to Sections 34-25-10(b) and 34-25-11 of the Rhode Island General Laws) shall be sent to Lender by regular mail addressed to Lender at Lender's Address for Notices identified at the beginning of this Mortgage. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph 11. Any notice provided for in this Mortgage shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

**12.    Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. Notwithstanding the foregoing, nothing herein shall limit the applicability of federal law to this Mortgage. In the event that any provision of this Mortgage or the Agreement conflicts with applicable law, the conflicting provision shall be deemed to be amended to afford the Lender the maximum rights allowed by law. No conflict with applicable law shall affect other provisions of this Mortgage or the Agreement that can be given effect without the conflicting provision and, to this end, the provisions of this Mortgage or the Agreement are declared to be severable.

**13.    Borrower's Copy.** Borrower shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

**14.    Events of Default.** Borrower shall be in default under this Mortgage on the occurrence of any of the following events: (a) failure by Borrower to pay when due any amount owing under the Agreement or this Mortgage if the failure continues for twenty-one (21) days after written notice of the failure is mailed to the Borrower (if the Property is located in Connecticut, this Mortgage is subject to one or more prior mortgages, and there were loan fees, points, or other prepaid finance charge imposed in connection with the Agreement, such notice will not be sent until at least 39 days after the payment is due); (b) Borrower makes any fraudulent statement or material misrepresentation in connection with the Agreement or this Mortgage; (c) any action or inaction on Borrower's part adversely affects the Property or the Lender's rights in the Property (e.g., a transfer of title to or sale of an interest in the Property without the Lender's consent; failure to maintain insurance or pay taxes on the Property; action by the Borrower resulting in the filing of a mortgage or lien that is or becomes senior to Lender's Mortgage; action by the Borrower that jeopardizes the Lender's security for future advances; death of all individuals obligated on the Agreement; a taking of the Property by eminent domain; foreclosure by a prior lienholder; or if the Lender's security interest is adversely affected due to (i) waste, destructive use of or Borrower's failure to maintain the Property; (ii) Borrower's illegal use of the Property that subjects it to seizure; (iii) the filing of a judgment against Borrower; (iv) death of one of the joint obligors on the Agreement (except that this event of default shall not apply if the Property is located in Connecticut) or the insolvency of such obligor; or (v) Borrower's moving out of the Property and failing to return within twenty-one (21) days after written notice is mailed to the Borrower), or (d) the value of the Property is significantly impaired.

**15.    Acceleration; Remedies.** On default, Lender may declare all sums secured by this Mortgage immediately due and payable, and Lender may invoke any of the remedies permitted under applicable law, including the STATUTORY POWER OF SALE, if any. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 15, including, but not limited to, reasonable attorneys' fees to the extent permitted by law. If Lender invokes a STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage in such order as Lender may determine; and (c) the excess, if any, to the person or persons legally entitled thereto.

**16.    Assignment of Rents; Appointment of Receiver.** As additional security hereunder, borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. On acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter on, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**17.    Waiver of Homestead; Dower and Curtesy.** When applicable, and as permitted by law, Borrower hereby waives all rights of homestead in the Property and relinquishes all rights of dower and curtesy in the Property.

**18.    Release.** Until all amounts secured are paid in full and the Agreement is cancelled, this Mortgage will remain in effect, even though the loan balance may be reduced to zero from time to time. This Mortgage shall be deemed to be satisfied, and Lender shall give Borrower a discharge therefor, when: (a) all sums secured by this Mortgage have been paid in full; and (b) the Lender has no continuing obligation to make additional advances.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien that has priority over this Mortgage to give notice to Lender, at Lender's address set forth at the beginning of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

        NOTICE TO CONSUMER:

        1. Do not sign this Mortgage before you read it.
        2. You are entitled to a copy of this Mortgage.

IN WITNESS WHEREOF, each of the undersigned has executed this Mortgage under seal this _17th_ day of _October_, 20_02_. WE AGREE AND ACKNOWLEDGE THAT WE HAVE RECEIVED TRUE COPIES OF THIS MORTGAGE.

Witness _____    Mortgagor _____

Print name: _Elaine C DiPisco_    Print name: _____

Witness _____    Mortgagor _____

Print name: _____    Print name: _____

STATE/COMMONWEALTH OF _Massachusetts_    Date: _10/17/02_

COUNTY OF _Essex_, SS.

Then personally appeared before me
HARY JANE CHALUPOWSKI _____, known by me (or satisfactorily proven) to be the Mortgagor(s) named in the foregoing instrument, and acknowledged the execution of such instrument for the purposes contained therein to be his/her/their [circle one] free act and deed.

                    [seal] _____
                    Notary Public

Remit all Legal Documents to:    Print Name: _Elaine C DiPisco_
Sovereign Bank
Mail Stop 10-421-CP2    My Commission Expires: _May 13 2005_
525 Lancaster Avenue
Reading, PA 19611

- 4 -

# TRUSTEE'S CERTIFICATE

The undersigned hereby certifies that: *26-30 Andrew St.*

1.  We are the current Trustees of the *Realty Trust*, created under the Declaration of Trust dated *10/4/95*, a copy of which was recorded with the *Essex South* County Registry of Deeds, in Book *13236*, Page *201*

2.  Said Trust has not been altered or amended, and is still in full force and effect pursuant to the terms said Declaration of Trust, and that *Chester J* and *Mary Jane* have been duly authorized to act as Trustees. *Chalupowski Jr. D. Chalupowski*

3.  No Beneficiary of said Trust has died or is incompetent.

4.  The undersigned further certify that they have been specifically authorized by all beneficiaries to execute a mortgage with Sovereign Bank and deliver any and all documents necessary to mortgage a rights, title, and interest to the premises located at *30 Andrew St, Salem MA 01970*

Witness my hand and seal this day:

_____

Individually and as Trustee, as aforesaid

_____

Individually and as Trustee, as aforesaid

STATE OF *Massachusetts*

COUNTY OF *Essex*, SS:

Then personally appeared the above-named *Chester J Jr Chalupowski* and both Individually and as Trustees, as aforesaid and acknowledged the foregoing instrument to be their free act and deed, before me

_____, Notary Public

My commission expires: *May 15, 2005*

**COMMONWEALTH OF MASSACHUSETTS**
ESSEX, ss                    **PROBATE AND FAMILY COURT**
                             **DOCKET # 00E 0127 GCI**

**DONNA CHALUPOWSKI**

**Vs.**

**CHESTER J. CHALUPOWSKI, Jr.**

### MOTION TO DISMISS

Now comes Chester J. Chalupowski, Jr., the Defendant in the above captioned action, and moves this Honorable Court to dismiss said action, with prejudice.

As reasons for his Motion, the Defendant states as follows:

1.  On July 9, 1993, Chester J. Chalupowski, Jr. entered into an Annuity Agreement with his mother, Mary Jane Chalupowski. Pursuant to said Annuity Agreement the sum of $176,000 was transferred into Chester's name. In return Mary Jane was receiving monthly payments of $566.67.

2.  On October 21, 1993, despite being informed about the valid and binding Annuity Agreement between her mother, Mary Jane and her brother, Chester, Donna Chalupowski brought a Superior Court action against Chester, accusing him of "conversion, fraud and deceit."

3.  During the following three years, Donna Chalupowski brought four more actions against every member of her immediate family. (A second Superior Court action against her mother Mary Jane, and against her sister, Judith, and three Probate Court actions seeking to have her mother declared incompetent.)

1

4. In March 1996, hoping to put an end to the protracted unnecessary litigation and to bring back peace and family harmony, Chester established the Mary Jane Chalupowski Family Trust, and deposited $176,000.00 (which pursuant to the Annuity Agreement was rightfully his own) into the specially established Trust account.

5. Under the provisions of said trust, Mary Jane was permitted but not required to receive income from the Trust. Section 4.1: *"The Trustee [...] may pay the income, if any, of the Trust Estate, less expenses of the Trust, to Mary Jane O. Chalupowsk during her life time."*

6. Between March of 1996 and present Mary Jane received all income paid out of the Trust. The total amount of said money exceeds the amount of total monthly payments she would have received throughout that period pursuant to the Annuity Agreement.

7. Despite this advantageous solution to the original arrangement of family affairs and Chester's good will efforts to bringing peace and harmony within the family, Donna in December of 2000 started filing a new series of her lawsuits against her entire family. Two new lawsuits filed on December 26, 2000, were followed by one more new action filed on January 5, 2001, and yet another one, filed on February 22, 2001.

8. On December 14, 2001, three out of four new cases were dismissed, leaving only the case at hand which pertains to the Mary Jane Chalupowski Family Trust.

9. Considering the trauma of the litigation, and lack of appreciation of Chester's good will efforts, as of April 2004, the res of the Mary Jane Family Trust has been reverted to the Annuity, and Mary Jane started to receive her, now guaranteed again, monthly

2

payment of \$566.67. As a result of the reversal of the funds back to the Annuity, the Mary Jane Family Trust has no assets, this renders the case at hand moot.

10. On May 10, 2004, an action was filed with the Superior Court against Donna Chalupowski, addressing all the consequences of the protracted, multifarious, vexatious litigation perpetrated by her on her family members. Said action alleges: abuse of process (three counts), multiple instances of fraud on the court, waste and fraud, interference with advantageous business relations (three counts), slander and libel (three counts), extortion, and intentional infliction of emotional distress (three counts). *Exhibit 1.* A separate action against Joseph P. Corona, the attorney who represented Donna Chalupowski in all her multiple lawsuits against her family members, is pending with the Essex County Superior Court.

Said Superior Court actions will address globally a full range of issues dealt with for the last 11 years by not less than seven Essex County courts, including all the issues raised in the instant case. Therefore, the Defendant, Chester J. Chalupowski, Jr. moves this Honorable Court to dismiss this last and only pending Probate Court action, which is now moot, for the sake of judicial economy and true justice.

RESPECTFULLY SUBMITTED by

Chester J. Chalupowski, Jr.
119 Water Street, #65
Beverly, MA 01915
(978)921 4945

3

## CERTIFICATE OF SERVICE

This is to certify that on this day the within Motion to Dismiss has been served in hand on

the Counsel of Record.

May 10, 2004                                                    Chester J. Chalupowski, Jr.

Commonwealth of Massachusetts
The Trial Court

ESSEX _____ Division    Probate and Family Court Department    Docket No. 00E-0127 GC1

DONNA CHALUPOWOSKI
~~Plaintiff/~~Petitioner

v.

CHESTER J. CHALUPOWSKI JR.
~~Defendant/~~Respondent

**MOTION FOR**

TO ORDER CHESTER J. CHALUPOWSKI TO

RETURN ALL TRUST FUNDS TO TRUST

Now comes **Donna M. Chalupowski and** Judith M. Chal-Venuto, by and through (name of moving party), the ~~plaintiff/defendant/petitioner~~respondent, her Guardian Ad Litem in this action who moves this Honorable Court as follows: _____

1. To order Chester J. Chalupowski, Jr., Trustee of the Mary Jane Chalupowski Family Trust, to return any and all trust monies, which he removed from said Trust, on or about April 2004; and

2. To enjoin him in the future, from dispersing or expensing any of said Trust monies pending final adjudication of this matter by this court. As grounds therefore, Petitioners state that in Paragraph 9 of the Motion to Dismiss, as filed by Chester J. Chalupowski, That he states: —

**NOTICE OF HEARING**

This Motion will be heard at the Probate & Family

Court in _May 10, 2004_ (city)

on _Salem_ (month/day/year)

at _3:30 pm_ (time of hearing)

Donna M. Chalupowski
By her Attorney
_____ (signature)
Joseph P. Corona (PRINT name)
21 Essex St
Salem, MA 01970
978-744-1851 (street address)
(city or town)

Judy M. Chal-Venut.
By her Guardian
Ad Litem
Sharon Meyer
Sharon D Meyers
30 Federal St
Salem MA 01970
(state) (zip code)
978-745-0575

Date: _____    Tel. No. ( ) _____

The within motion is hereby **ALLOWED — DENIED.**

_____ Date    _____ Justice of the Probate and Family Court

**INSTRUCTIONS**
1. Generally, refer to Mass.R.Civ.P./Mass.R.Dom.Rel.P. 5, 6 and 7; Probate Court Rules 6, 29, and 29B.
2. If the opposing party is represented by an attorney who has filed an appearance, service of this motion MUST be made on the attorney.
3. Certificate of Service on Reverse side must be completed.
4. All motions shall be accompanied by a proposed order which shall be served with the motion.

CJ-D 400 (06/02)

Commonwealth of Massachusetts
The Trial Court
Probate and Family Court Department

ESSEX Division — Docket No. 00E-0127 GC1

DONNA CHMIELEWSKI, Plaintiff/Petitioner — MOTION FOR

CHESTER S. CHMIELEWSKI, JR. — TO ORDER CHESTER CHMIELEWSKI TO RETURN ALL TRUST FUNDS TO TRUST

"As of April 2004, the res of the Mary Jane Family Trust has been reverted to the Annuity and ..."

[illegible]

May 10, 2004

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this motion upon:

(name of party and address or name and address of attorney of record; including, street address/city or town/zip code)

by — delivery in hand on— (date of delivery) at ______ A.M./P.M. — mailing (postage paid) on

(date of mailing) (signature)

**Commonwealth of Massachusetts**
**The Trial Court**
**Probate and Family Court Division**

Essex Division                                         **Docket No: 00E0127GC1**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Petition of Donna M. Chalupowski
To Remove Chester J. Chalupowski
Jr. as Trustee of the Mary Jane
O. Chalupowski and Chester
Chalupowski, Jr. Family Trust
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER**

Chester J. Chalupowski, Jr. is ordered to appear at the Essex Probate and Family Court on May 13, 2004 at 8:30 AM. Failure to do so may result in a capias for his arrest and/or sanctions at the rate of $500.00 per day. Failure to appear may also result in his removal in any fiduciary capacity he might have over the ward's funds.

It is further ordered that Attorney Anthony M. Metaxas is hereby appointed escrow agent to assume custody and control of the funds subject to this litigation pending further order of this Court. Attorney Metaxas shall pay the ordinary and customary expenses of the ward until further order of the Court. Attorney Metaxas shall be paid at his usual and customary rate by Chester Chalupowski.

This order may be served on the defendant by fax and/or telephone.

Dated : May 12, 2004

Peter C. DiGangi, Justice

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss                                        PROBATE & FAMILY COURT
                                                 DOCKET NO. 00E 0127-GC1

**********************************

Petition of Donna M. Chalupowski
To Remove Chester J. Chalupowski, Jr.
As Trustee of the Mary Jane                      ORDER
O. Chalupowski and the Chester
Chalupowski, Jr. Family Trust and as
Trustee of the 26-30 Andrew
Street Realty Trust.
**********************************

   This matter comes to the court after two hearings, one on May 12, 2004 and one
on May 13, 2004, concerning the alleged transfer of funds by Chester J. Chalupowski, Jr.
which are the subject of this litigation. Representations were made by counsel that on
two prior occasions, without knowledge or consent of the beneficiaries or life tenant,
Chester J. Chalupowski, Jr. unilaterally transferred funds to other accounts. In addition,
there were allegations that Chester J. Chalupowski, Jr. encumbered the real estate, which
is also the subject of this litigation, in contravention to an injunction issued by the
Appeals Court, Barry, J.

   As a result of that hearing, on May 13, 2004, this court ordered that by 12:00
noon on Friday, May 14, 2004, Chester J. Chalupowski, Jr. transfer to Anthony Metaxes,
Esq. of Beverly, MA as escrow agent, the following accounts:

1. Fidelity Account......................Account Number Y99-171700 and/or X01-
   771414 held in the name of the Chalupowski Family Trust, or any subsequent
   account derived from said account (the Family Trust funds)
2. Sovereign Bank ......................Account Number 00005119623409 and/or
   60404942017 held in the name of Mary Jane Chalupowski, or any subsequent
   account derived from said account (a home equity loan)
3. Salem Five Bank......................Account Number 0886244904 held in the
   name of Mary Jane Chalupowski, or any subsequent account derived from said
   account. (Mary Jane's personal account)

   In addition, the court ordered that any sums from these account which may be
needed to pay the day to day living expenses of Mary Jane O. Chalupowski, may be
utilized by the escrow agent for that purpose.

   Chester J. Chalupowski, Jr. failed to take the necessary steps to make the
transfers to Anthony Metaxes, Esq. by noon on Friday, May 14, 2004, and is in direct
contravention of a clear and explicit order of this court.

After hearing, it is adjudged that the Defendant is:

1.    GUILTY of contempt of this court for having willfull neglected and refused to comply with this Court's Order of May 13, 2004.

2.    Chester J. Chalupowski, Jr. shall be forthwith committed to jail until he shall purge himself of said contempt by transferring said accounts to Anthony Metaxas, Esq.

3.    Chester J. Chalupowski shall be sanctioned $500.00 per day beginning noon, May 14, 2004, for each day of noncompliance.

4.    Under the Court's general equitable authority the court hereby appoints Anthony M. Metaxas, Esq. as Receiver and Escrow Agent to take possession of said property and conserve it in accordance with this Court's order.  The Receiver shall file a Bond With Corporate Sureties in the amount of $250,000.00 within seven (7) days.

5.    A Temporary Restraining Order shall issue, enjoining Chester J. Chalupowski, Jr., his agents, servants and assigns, including but not limited to Fidelity Investments, Sovereign Bank and Salem Five Bank from permitting any transfer or withdrawal from said accounts, which is inconsistent with this Court's Order appointing Anthony M. Metaxas as Receiver and Escrow Agent of the above described accounts at each of the respective institutions.

6.    In addition, Chester J. Chalupowski, Jr., his agent, servants and assigns, is enjoined and restrained from utilizing any purported Power of Attorney granted to him by Mary Jane O. Chalupowski, pending further order of this Court.

7.    Nothing in this Temporary Order shall prevent said banks from paying over any of the aforementioned funds to Anthony M. Metaxas, Esq., as Receiver and Escrow Agent.

**MAY 14, 2004**
**Date**

Peter C. DiGangi, Justice
**Probate and Family Court**

**COMMONWEALTH OF MASSACHUSETTS**
**THE TRIAL COURT**
**THE PROBATE AND FAMILY COURT DEPARTMENT**

**ESSEX DIVISION**                                    **DOCKET NO:00E0127-GC1**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**Petition of Donna M. Chalupowski,**
**to Remove Chester J. Chalupowski, Jr.**
**as the Trustee of the Mary Jane O. Chalupowski**
**and the Chester Chalupowski, Jr. Family Trust and**
**as Trustee of the 26-30 Andrew Street**
    **Realty Trust.**
            **Respondent.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AMENDED ORDER

After hearing, the court orders that Chester J. Chalupowski transfer to Anthony Metaxas, Esq. of Beverly, MA forthwith as escrow agent the following accounts, pending further order of the Court.

1. Fidelity Account..........Account Number Y99-171700 and X01771414 held in the name of the Chalupowski Family Trust, or any subsequent account derived from said account.

2. Sovereign Bank...........Account Number 00005119623409 and 60404942017 held in the name of Mary Jane Chalupowski, or any subsequent account derived from said account.

3. Salem Five Bank............Account Number 0886244904 held in the name of Mary Jane Chalupowski, or any subsequent account derived from said account.

Further, the court orders that any sums from the transferred accounts which may be needed to pay the day to day living expenses of Mary Jane O. Chalupowski, may be utilized by the escrow agent for that purpose.

Chester J. Chalupowski shall not utilize any funds emanating The Fidelity Account X01-012262 or any subsequent account derived from said account or funds for other than day to day living expenses without permission from the Court.

All transfers are to be completed no later than 12:00 noon, Friday, May 14, 2004. If said transfers are not completed by the assigned date and time all parties including Mr. Chalupowski shall appear before the Court at 2:00 p.m. on May 14, 2004 in Salem.

Date: May 13, 2004

Peter C. DiGangi, Justice
Probate and Family Court

TOTAL P.01

# BOSTON POLICE
## INCIDENT REPORT

ORIGINAL ☐ SUPPLEMENTARY ☐

| KEY SITUATIONS | | | | COMPLAINT NO | | REPORT DIST. | CLEARANCE DIST |
|---|---|---|---|---|---|---|---|
| OTHERS | | | | 040315692 | | A1 | |
| TYPE OF INCIDENT | | CRIME CODE | | STATUS | | DATE OF OCCUR. | 8 06/10/04 |
| THREATS | | 10 | | | | A.06/10/04 | |
| LOCATION OF INCIDENT | | | APT. | DISPATCH TIME | | TIME OF OCCUR. | 8.11:00 AM |
| 5 NEW CHARDON ST | | | | | | A.11:00 AM | |
| VICTIM-COMP. (LAST, FIRST, MI) | | PHONE | | SEX | RACE | | MARITAL STATUS |
| MEYERS, SHARON | | (978)-745-0573 | | FEMALE | | | N/A |
| ADDRESS | | APT. | OCCUPATION | | | AGE | D.O.B. |
| 70 FEDERAL ST ,SALEM,MA,01970-0000 | | 200 | ATTORNEY AT LAW | | | 0 | |
| WHO IS REPORTING | | ADDRESS | | | | APT. | PHONE |
| O'NEILL, DANIEL I | | 40 NEW SUDBURY ST.,BOSTON,MA,02114-0000 | | | | | (617) 343-4240 |

WAS THERE A WITNESS TO THE CRIME

| PERSON INTERVIEWED | AGE | LOCATION OF INTERVIEW | APT. | HOME ADDRESS | | APT. | TELEPHONE | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | RES ☒ YES ☒ NO | |
| | | | | | | | BUS | |

NUMBER OF PERPETRATORS: 1 — CAN SUSPECT BE IDENTIFIED AT THIS TIME

| STATUS | | NAME (LAST, FIRST, MI) | | | S.S. NO. | | BOOKING NO. | PHOTO NO. | ALIAS | ☒ ☐ |
|---|---|---|---|---|---|---|---|---|---|---|
| N/A | | CHALUPOWSKI, CHESTER | | | | | | | | YES NO |
| WARRANT NO. | ADDRESS | | | SEX | RACE | | | AGE | HEIGHT/DOB | |
| | 118 WATER ST ,BEVERLY,MA,01905-0000 | | | MALE | WHITE NON HISPANIC | | | 51 | | |
| SPECIAL CHARACTERISTICS(INCLUDING CLOTHING) | | | | WEIGHT | BUILD | | HAIR | | EYES | |
| | | | | | | | N/A | | N/A | |

CAN SUSPECT VEHICLE BE DESCRIBED

| STATUS | | REG. STATE | REG. NO. | | PLATE TYPE | | YEAR(EXP) | MODEL | ☐ ☒ |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | YES NO |
| VEHICLE MAKE YEAR | | VEHICLE NO. | | | STYLE | | COLOR(TOP-BOTTOM) | | |
| OPERATOR'S NAME | | | | | LICENSE NO. | STATE | OPERATOR'S ADDRESS | | |
| OWNER'S NAME | | | | | OWNER'S ADDRESS | | | | |

CAN PROPERTY BE IDENTIFIED

| STATUS | TYPE OF PROPERTY | SERIAL OR IDENTI-GUARD NO. | BRAND NAME-DESCRIPTION | | MODEL | VALUE | UCR | ☐ ☒ |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | YES NO |
| | | | | | | | | |

IS THERE A SIGNIFICANT M.O

| TYPE OF WEAPON-TOOL | NEIGHBORHOOD | | | TYPE OF BUILDING | | PLACE OF ENTRY | ☐ ☒ |
|---|---|---|---|---|---|---|---|
| | | | | | | | YES NO |
| WEATHER | LIGHTING | | TRANSPORTATION OF SUBJECT | | VICTIM'S ACTIVITY | | |
| UNUSUAL ACTIONS AND STATEMENTS OF PERPETRATOR | | | | | RELATIONSHIP TO VICTIM | | |

IS THERE ANY PHYSICAL EVIDENCE (DESCRIPTION AND DISPOSITION IN NARRATIVE) ☒ ☐

IS THERE ANY OTHER REASON FOR INVESTIGATION (REASON BELOW)

NARRATIVE AND ADDITIONAL INFORMATION ☒ ☐

WHILE INSIDE THE EDWARD BROOKE COURTHOUSE IN COURT ROOM #11, THURSDAY, JUNE 10,2004 AT 11:00 AFTER THE CIVIL SESSION BEING HEARD BY JUDGE JANICE WAS CONCLUDED AND ALL PARTIES WERE EXITING THE COURT ROOM. MR. CHESTER CHALUPOWSKI WHO IS A PARTICIPANT IN THE CIVIL PROCESS ATTEMPTED TO ASSAULT THE OPPOSING COUNSEL, A ( ATTORNEY SHARON MEYERS BUT WAS PREVENTED BY COURT PERSONNEL AND HIS GIRLFRIEND. WHILE BEING RESTRAINED HE WAVED A CLENCHED FIST AT MS. MEYERS SAYING "YOUR GOING TO PAY THE PRICE FOR THIS" MS. MEYERS WAS APPOINTED BY JUDGE JOHN STEVENS OF THE SUFFOLK PROBATE COURT GUARDIAN OVER JUDITH CHAL-VENUTO. MS. VENUTO SUFFERS FROM BEING BI-POLAR AND ATTORNEY MEYERS ASSISTS IN HER DAILY AFFAIRS AND THE NOW DEALS WITH THE IRATE BROTHER WHO IS GETTING OUT OF CONTROL. MS. MEYERS DOES NOT WISH TO GO ANY FURTHER AS FAR AS FORMAL CHARGES BUT FOR HER PROTECTION AGAINST FURTHER ABUSIVE BEHAVIOR FROM MR. CHALUPOWSKI WANTED THIS REPORT ON FILE

| UNIT ASSIGNED | TOUR OF DUTY | REPORTING OFFICERS NAME | REPORTING OFFICERS SIGNATURE | | OFFICERS ID | PARTNERS ID | |
|---|---|---|---|---|---|---|---|
| A801 | 3 | DANIEL J ONEILL | | | 8478 | | NO |
| DATE OF REPORT | SPECIAL UNITS NOTIFICATION(REPORTING) | | | | | | TELETYPE NO. |
| 06/18/04 | | | | | | | |
| TIME COMPLETED | PATROL SUPERVISOR NAME | PAT. SUP. ID | DUTY SUP. NAME | | DUTY SUP. SIGNATURE | | DUTY. SUP. ID |
| 05:33 PM | | | TIMOTHY M KERVIN | | | | 8962 |

*Det Dan O'Neill*
*343-4248   x34*

# SHARON D. MEYERS

_____ATTORNEY AT LAW_____
30 Federal Street
Suite 200
Salem, Massachusetts 01970-3520

Sharon D. Meyers, Esq.*

Sandra A. Valaitis, Paralegal
Nicoli Ann Bailey, Paralegal

(978) 745-0575
Fax (978) 745-6757
Email:
sdmeyers@meyerslawpc.com
* *also admitted in Vermont*

July 9, 2004
VIA FACSIMILE ONLY

Detective Dan O'Neill
Boston Police Department
Area A
Boston, MA

Re:   *Incident Report:   04-0315692*

Dear Det. O'Neill:

Thank you for your phone call. The only amendment I would suggest to the Incident Report is that the court official should be referred to as Justice Janice Berry rather than Judge Janice.

As I mentioned to you, this was a hearing in the Appeals Court addressing issues of alleged contumacious behavior on the part of the Defendant, Chester J. Chalupowski, Jr. I am the Guardian Ad Litem for his sister, Judith Chal-Venuto. This matter alleges misuse of funds of an estate, and is not related to a domestic violence issue. The threats issued to me were made in conjunction with the litigation.

I do not wish to take out a complaint at this time, only to have a record of the incident in the event Mr. Chalupowski takes any further action.

Very Truly Yours,

Sharon D. Meyers

SDM/sav

Uor 15, 2004

## COMMONWEALTH OF MASSACHUSETTS
### PROBATE AND FAMILY COURT DEPARTMENT

ESSEX, ss                                                   Docket No. 00E 0127 GCl

IN RE:

Petition of Donna M.
Chalupowski To Remove
Chester J. Chalupowski, Jr.
As Trustee of the Mary Jane
O. Chalupowski and the
Chester Chalupowski, Jr.
Family Trust and Petition of
Judith Venuto To Remove
Chester J. Chalupowski, Jr as
Trustee of the 26-30 Andrew
Street Realty Trust

## PROCEDURAL HISTORY, FINDINGS OF FACT, RATIONALE, and JUDGMENT

On Donna M. Chalupowski's Petition To Remove Chester J. Chalupowski, Jr. as Trustee of
the Mary Jane O. Chalupowski and the Chester Chalupowski, Jr. Family Trust, filed
December 8, 2000 and Judith Venuto's Petition To Remove Chester J. Chalupowski, Jr. as
Trustee of the 26-30 Andrew Street Realty Trust, filed on or about January 14, 2002

### INTRODUCTON

This case came before the Court on May 23, 2004, the Honorable Peter C. DiGangi

presiding, on Donna M. Chalupowski's Petition To Remove Chester J. Chalupowski, Jr. as Trustee

of the Mary Jane O. Chalupowski and the Chester Chalupowski, Jr. Family Trust and Judith

Chalupowski-Venuto's Petition to Remove Chester J. Chalupowski, Jr as Trustee of the 26-30

Andrew Street Realty Trust.

The petitions filed by Donna Chalupowski (hereinafter "Donna") and Judith Venuto-

Chalupowski (hereinafter "Judith") seek to have their brother, Chester Chalupowski (hereinafter

"Chester"), removed as trustee of two family trusts. These petitions also seek repayment of monies

1

intentionally misappropriated by Chester from the Trust for his own personal use, and repayment of monies lost by the trusts due to Chester's mismanagement.

On May 23, 2004, the parties were present and represented by counsel. Donna was represented by Attorney Joseph Corona, Judith was represented by Attorney Susan Meyers, Chester was represented by Attorney James Tewhey, and Attorney Christopher Welch was present in his capacity as Guardian ad Litem for the parties' mother, Mary Jane O. Chalupowski (hereinafter "Mary Jane").

Chester was the only witness called on the first day of trial; he testified on direct examination by Attorney Corona, cross examination by Attorney Tewhey, and began his direct examination by Attorney Meyers. On the second day of trial, Chester failed to appear.

The Court finds that Chester's testimony on direct examination and cross examination on May 23, 2004 not to be credible. The Court also finds that Chester's testimony was material to the disposition of the case, and that all other witnesses were scheduled only as rebuttal witnesses to Chester's testimony.

The Court finds that Chester was aware of his obligation to appear for all days of trial, and was duly served with notice of the dates of trial. Further, the Court finds that the evidence presented by Donna and Judy through their attorneys on May 23, 2004 is sufficient to find that Chester should be removed as trustee, and pay the sum certain. Therefore, the Court enters the following Judgment, Procedural History, Findings of Fact and Rationale.

## PROCEDURAL HISTORY

(Paragraphs 1 – 44, 46, 50, 52 and 54 were stipulated by the parties at the time of trial, and the Court hereby adopts these stipulated findings. The remaining paragraphs are based on the testimony and evidence presented to the Court during the trial on the merits, and from the record and file.)

1) On December 19, 1984, the Chalupowski Realty Trust was formed by Chester J. Chalupowski, Sr. under a Declaration of Trust. On the same date, the instrument was recorded at the Essex County South Registry of Deeds at Book 7612, Page 409.

2

2) On December 19, 1984, Chester J. Chalupowski, Sr. and his wife Mary Jane Chalupowski, (hereinafter Mary Jane) as tenants by the entirety, conveyed the properties known as Twenty-six (26) and Thirty (30) Andrew Street, Salem, Massachusetts to Chester J. Chalupowski, Sr. as Trustee of the Chalupowski Realty Trust. The quitclaim deed recording this transaction was filed on December 20, 1984, with the Essex County South Registry of Deeds at Book 7612, Page 416.

3) On August 12, 1989, Chester J. Chalupowski, Sr. died. Pursuant to the terms of the Chalupowski Realty Trust, upon Mr. Chalupowski's death, Mary Jane and Judith assumed the duties of co-trustees of the Chalupowski Realty Trust.

4) On July 9, 1993, Chester J. Chalupowski, Jr. (hereinafter "Chester") transferred $176,022.21 from Mary Jane's individual accounts to one account held jointly in the names of Chester and Mary Jane.

5) Also on July 9, 1993, a document was executed entitled "Agreement Regarding Absolute and Final Transfer of Funds and Payment of Annuity", (hereinafter "Annuity Agreement"). As terms of the Annuity Agreement, Chester was obligated to pay four (4%) percent interest per annum on the $176,000.00 on a monthly basis to Mary Jane. Upon Mary Jane's death, the principal would become Chester's sole property. The signing of the Annuity Agreement was recorded on video tape.

6) On August 17, 1993, Donna challenged the July 9, 1993 transfer, and sent correspondence to Chester J. Chalupowski, Jr. for return of the monies.

7) At some time shortly after August 17, 1993, Chester removed the funds from the joint account held in his and Mary Jane's names jointly name and placed it into a separate account bearing his name only.

8) On September 13, 1993, Mary Jane signed an affidavit, alleging that she was coerced into signing the Annuity Agreement, and sought its recession.

9) On October 12, 1993, Mary Jane created a handwritten document which claimed that her affidavit of September 13, 1993, was the product of duress by Donna and reaffirmed the agreement of July 9, 1993. The Document explained that the purpose of the transfer of funds was to "increase, protect and shelter [her] income."

10) On October 21, 1993, Donna, as Next Friend of Mary Jane Chalupowski, filed a Complaint in Essex Superior Court; Docket #93-2465, seeking the return of the $176,220.21. On October 27, 1993, Donna, obtained an Attachment on 11 and 13 Beckett Street, Salem Massachusetts, properties belonging to Chester. That lawsuit was ultimately dismissed.

11) On February 10, 1994, Donna petitioned the Court for a Permanent Conservatorship over her mother, Mary Jane, on the basis of mental weakness.

12) On March 9, 1994, Judith, Mary Jane's second daughter, filed a handwritten objection to the Conservatorship petition.

3

13) On March 16, 1994, a Mary Jane's Medical Certificate was filed. The Certificate stated that Mary Jane had "below average ability to handle abstraction, conceptualization and arithmetic problems." The Certificate was signed by Robert D. Fallon, Jr., M.D.

14) On March 16, 1994, Chester filed an Opposition to the Temporary Conservatorship wherein he states his opposition to the temporary conservatorship and the appointment of Donna as conservator.

15) On March 23, 1994, Donna "and other interested parties having been given notice in accordance with applicable rules entered into a stipulation agreeing to the appointment of Attorney Carmen Frattaroli as Temporary Conservator for Mary Jane Chalupowski for a period of ninety (90) days." Judith did not assent to the stipulation.

16) On March 23, 1994, Chester filed a Conditional Agreement....to the Appointment of Temporary Conservator. As part this pleading, Chester reserved the right to challenge the necessity of the Temporary Conservator or any of his actions.

17) On April 4, 1994, Chester filed a Statement of Opposition to Conservatorship opposing a permanent conservatorship for Mary Jane Chalupowski.

18) On April 6, 1994, Carmen A. Frattaroli filed a Bond of Temporary Conservator listing the estimated personal estate at one thousand dollars ($1,000.00.)

19) On April 6, 1994, the Court (Manzi, J.) entered a Temporary Decree of Conservatorship naming —————— Carmen A. Frattaroli as Temporary Conservator. The appointment of Attorney Frattaroli was extended, by motions, until December 25, 1994.

20) On July 1, 1994, Attorney Frattaroli, as Temporary Conservator, filed an Inventory listing as the amount of the personal estate $187,500.00 and as the amount of real estate $289,000.00.

21) On October 24, 1994, the Court (Manzi, J.) entered a temporary order appointing Dr. Laurence Posner to perform a mental examination of the proposed ward, Mary Jane.

22) On October 6, 1994, a Medical Certificate was filed for the proposed ward. The Certificate stated that the proposed ward "has significant difficulties with abstraction and arithmetic concepts and cannot responsibly manage her financial affairs." The Certificate was signed by Robert D. Fallon, Jr., M.D.

23) On October 4, 1995, Chester formed, under a Declaration of Trust, the 26 Through 30 Andrew Street Realty Trust. On the same date, the trust instrument was recorded at the Essex County South Registry of Deeds at Book 13236, Page 196.

24) On October 4 and 13, 1995, Judith and Mary Jane, as Co-Trustees of the Chalupowski Realty Trust, conveyed the entire corpus of the Chalupowski Realty Trust, namely the real property known as Twenty-six (26) and Thirty (30) Andrew Street, Salem, Massachusetts, to the 26 Through 30 Andrew Street Realty Trust. The quitclaim deed recording this transaction was filed on October 16, 1995, with the Essex County South Registry of Deeds at Book 13236, Page 201.

4

25) On November 17, 1995, Health and Education Services, Inc., filed a Petition for Order for Protective Services (docket 94P-O314-EAI, docket #1). The petition sought protective services for the proposed ward, Mary Jane Chalupowski, due to financial exploitation. On December 5, 1995, after a preliminary hearing, the Court (Manzi, J.) appointed Elaine Clarke as a Guardian Ad Litem for Mary Jane Chalupowski.

26) January 25, 1996, Health and Education Services, Inc., filed a Conservatorship Petition (docket 94P-0314-CV2, docket #1). The Conservatorship Petition sought a conservatorship over the proposed ward, Mary Jane Chalupowski, on the grounds of mental weakness.

27) On January 30, 1996, the Court (Manzi, J.) entered a Temporary Decree of Conservatorship (docket 94P-O3140CV2, docket #6) and re-appointed Carmen A. Frattaroli, as temporary conservator. The temporary conservatorship was extended until June 27, 1996 (See 254 docket 94P-0314-CV2, docket #10) (See also docket 94P- 0314-CI, docket #32 and #36).

28) On March 26, 1996, the Mary Jane O. Chalupowski, Judith Chalupowski Venuto, Donna Chalupowski and Chester J. Chalupowski, Jr. Family Trust (hereinafter referred to as the "Family Trust") was formed by Chester, under a Declaration of Trust. Unlike the previous two trust instruments, the Family Trust instrument was never recorded at the Essex County South Registry of Deeds.

29) This trust was funded with a transfer of $170,000 from the annuity of which left the annuity unfunded.

30) April 24, 1996, the Court (Highgas, J.) entered a Court Directive (docket #31) directing the Family Service Office to designate a psychologist or psychiatrist to conduct an examination upon Mary Jane in order to determine "is she is a person who by reason of mental weakness is unable to properly care for her property such that a conservator [need] be appointed to manage her properly."

31) July 3, 1996, the Court (Highgas, J.), after hearing on June 27, 1996, issued an Order Vacating Temporary Conservatorship of Mary Jane Chalupowski and Further Orders which provided in pertinent part that:
   (a) the petitioners had failed to demonstrate that Mary Jane was unable to properly care for her property due to mental weakness;
   (b) the appointment of Carmen Frattaroli as Temporary Conservator of Mary Jane was revoked as of June 27, 1996;
   (c) Chester was ordered to assist Mary Jane in the management of the properties at 26 and 30 Andrew Street and render an accounting to the trustees of all income received and all funds disbursed for the preceding month; and
   (d) the Declaration of Trust of the Mary Jane O. Chalupowski, Judith Chalupowski Venuto, Donna M. Chalupowski and Chester J. Chalupowski, Jr. Family Trust was affirmed.

32) On October 30, 1996, the Court (Highgas, J.) entered an Amended Order vacating the Temporary Conservatorship and an Order on Petition for Protective Services. The Order provides:

5

- (a) the Petitioners are unable to demonstrate that Mary Jane is unable to properly care for her property due to mental weakness;
- (b) the Petition for Conservatorship filed by Donna on February 10, 1994, Docket #. 94P-0314-Cl is DENIED and DISMISSED as of June 27, 1996;
- (c) the Petition for Conservatorship filed by Health and Education Services, Inc., on January 25, 1996, docket no. 94P-O314-CV2 is DENIED and DISMISSED as of June 27, 1996;
- (d) the appointment of Carmen Frattaroli as temporary conservator of Mary Jane is revoked as of June 27, 1996; and
- (e) the appointment of Elaine Clark as Guardian Ad Litem is revoked as of June 27, 1996.

33) On April 12, 2000, Judith filed a Petition to Remove Chester as Trustee of the Chalupowski Realty Trust , wherein she sought to be permitted to resume her duties as trustee under the terms of the Chalupowski Realty Trust.

34) On May 26, 2000, Judith filed a second Petition to Remove Chester J. as Trustee of the Chalupowski Realty Trust, wherein she requested that she be appointed his successor.

35) On or about August 8, 2000, Judith filed a Motion to "Waive Bond with Sureties as Trustee Resumes Duties Extend Time to File Documents" (docket #72). On that same day, the court (Kagan, J.) deferred these matters to August 23, 2000, to be heard with Judith's Complaint for Contempt scheduled for that same date. On August 25, 2000, the Court (Kagan, J.) entered a Memorandum and Order continuing the hearing for one week. The Court also issued copies for the defendants, Chester Chalupowski, Jr. and Harbor Realty.

36) On August 30, 2000, the Court (Stevens, J.) issued an Order which provided that inasmuch as it appeared that proper service may not have been made with regard to the Petition filed April 12, 2000:

- (a) the Petitioner, Judith, was ordered to obtain a new citation and to comply with the terms of the citation as instructed;
- (b) all motions and contempts then pending were stayed pending completion of service of process in accordance with the citation and upon proper filing of the citation with proof of service;
- (c) upon filing of the citation with proof of proper service, the trial department would schedule the matter for a pre-trial conference;
- (d) all motions and contempts then pending or filed thereafter were to be consolidated for hearing at the pre-trial conference;
- (e) all motions and complaints by the petitioner were to first be reviewed by the lawyer for the day before filing; and
- (f) except as otherwise provided, all prior orders of the Court then in effect, where ratified and confirmed.

37) On or about October 10, 2000, Judith filed an Affidavit (undocketed) in support of her request to resume duties as trustee of the Chalupowski Realty Trust with accompanying letters of recommendation.

6

38) On November 17, 2000, the Court issued a Pre-Trial Notice and Order (undocketed) scheduling a pre-trial conference on December 29, 2000.

39) On December 29, 2000 Chester filed a Pre-trial Conference Memorandum and a First Account of the Chalupowski Family Trust (undocketed). On that same day, Mary Jane filed an Affidavit to affirm her wish that her son, Chester, continue to serve as trustee of the 26 Through 30 Andrew Street Trust. On December 29, 2000, the Court (Stevens, J.) issued an Order Following Pre-Trial Conference wherein trial was scheduled for one day on the issue of Removal of Trustee.

40) On December 8, 2000, Donna filed a Petition to Remove Chester as Trustee of the Family Trust (00E0127-GCI) and a Petition for Declaratory Judgment (00E0126-GCI) alleging that the transfer of property from the Chalupowski Realty Trust to the 26 Through 30 Andrew Street Trust should be declared null and void and that Chester was not performing his duties as trustee. On January 11, 2000, Chester filed Motions to Dismiss.

41) On January 5, 2001, Donna filed a Petition to Remove Mary Jane and Judith as Trustees and Chester as Manager of the Chalupowski Realty Trust (01E-0005-GCI).
> (a) On February 13, 2001, the Court (Stevens, J.) entered Memorandum of Decision and Order dismissing Judith's Petition to Remove Chester as Trustee of the Chalupowski Realty Trust. The Order provided in pertinent part:
> (b) Mary Jane and Judith, in their capacity as trustees of the Chalupowski Realty Trust, validly effectuated the quitclaim deed conveying the real estate to the 26 Through 30 Andrew Street Real Trust;
> (c) the corpus of the Chalupowski Realty Trust was effectively depleted by the conveyance to the 26 Through 30 Andrew Street Realty Trust; and
> (d) because the beneficiaries are the same under the Chalupowski Realty Trust and the 26 Through 30 Andrews Street Realty Trust the remainder interests were not altered by the transfer of the property from one trust to the other.

42) Also on February 13, 2001, the Court (Stevens, J.) dismissed Judith's petition to remove Chester and insert herself as Trustee.

43) On February 23, 2001, Donna filed a Motion for New Trial and Amendment of the Court's February 13, 2001 "Judgment". As grounds thereof, Donna alleged:
> (a) that the Court was not made aware of certain facts which, if known, would have yielded a different result;
> (b) that the decision of the Court was contrary to case law; and
> (c) that the decision of the Court did not enforce the settlor's intent.

44) Chester filed a Motion in Opposition to Donna's Motion for New Trial and Amendment of Judgment. On April 17, 2001, Chester filed a Supplemental Opposition to Petitioner's Motion.

45) On April 17, 2001, Chester filed a Motion to Consolidate Docket Nos. 94P-0314-C1. 00E-0126, and 00E-0127.

46) On October 29, 2001, the Court, (Stevens, J.) appointed Sharon D. Meyers, Esq. as Guardian Ad Litem for Judith.

7

47) On December 14, 2001, the Court (Stevens, J), ordered the dismissal of actions 00E-0126 GC1 (Donna's Complaint for Declaratory Judgment which sought a declaration the deed which transferred the real estate from the old realty trust to the new realty trust, null and void) and 01E005 GC1 (Donna's petition to remove Mary Jane and Judith as Trustees and Chester as Manager of the Chalupowski Realty Trust). On December 14, 2001, the Court allowed Chester's motion to consolidate dockets 94P-0314 C-1, 00E-0005, 00E-0126, 00E-0127, and denied Donna's motion for a new trial in 94P0314 C-1, and denied Chester's motion to dismiss docket 00E-0127.

48) On February 26, 2003, the parties entered into an oral framework for settlement on the record.

49) On June 12, 2003, this Court (Stevens, J) found after a review of the transcript of the oral representations made by counsel at the February 26, 2003 hearing, that the parties had not reached a formal agreement and did not intend that the oral representations constitute a final agreement. The Court set the matter down for a three day trial in November 2003.

50) On June 12, 2003, in order to ensure Mary Jane's interests in the pending litigation were represented, John D. Welch, Esq. was appointed as Guardian Ad Litem of Mary Jane.

51) On October 20, 2003, this Court, (Stevens, J.) ordered that the matters before this court for trial arise out of Docket 00E-0127 and that the issue ripe for adjudication involved whether Chester should be removed as trustee of one or both trusts, and whether he properly provided an accounting.

52) On November 7, 2003, Attorney James Tewhey filed his notice of appearance for Chester.

53) On November 14, 2003, this court (Stevens, J.) denied Chester's Motion to disqualify Attorney Corona, and Motions to clarify the Court Order and to Clarify the Record.

54) On November 20, 2003, Chester moved to continue trial as Judith was unavailable on that day and he would be unable to present an adequate defense. The trial was continued until January 26, 27 and 28, 2004.

55) On January 2, 2004, Mary Jane, through her Guardian ad Litem, filed a Petition for Repayment of Funds under docket 00E-0127 for repayment of funds from Chester.

56) The parties appeared for trial on January 26, 2004. However, due to the unavailability of the court, the matter was continued May 24, 25 and 26, 2004.

57) On May 10, 2004, Mary Jane's Guardian Ad Litem presented a motion to exclude her presence at trial based on her frail health. In addition, the Guardian Ad Litem moved for a release of trust funds to pay for a competency evaluation for Mary Jane.

58) On May 10, 2004, Chester, acting pro se, served counsel for the Petitioners, and attempted to file a Motion to Dismiss on the basis that "as of April 2004, the res of the Mary Jane Family Trust has been reverted to the Annuity." The court declined to accept the filing, unless presented through his counsel.

8

59) On May, 10, 2004, the Court, (DiGangi, J.) ruled that Chester could propound twenty-five (25) questions to Attorney Welch, which would be answered under oath by Mary Jane in lieu of her testimony at trial, so long as the questions were propounded by May 12, 2004.

60) On May 12, 2004, no questions were propounded to Mary Jane's Guardian Ad Litem, and on that date, the court deemed the questions waived and excused Mary Jane from testifying. On May 12, 2004, the Court ordered that it was unnecessary for Mary Jane to undergo a competency evaluation. On May 12, 2004, the Court further ordered that Chester transfer accounts subject to litigation to Attorney Anthony Metaxes as an escrow agent.

61) On May 13, 2004, Judith and Donna filed a Motion to Identify Accounts Subject to Escrow, and to order those accounts to be subject to the Court's May 12, 2004 Order appointing Anthony Metaxes, Esq. To assume custody of the funds subject to the litigation.

62) On May 12, 2004, the Court, (DiGangi, J.) appointed Anthony M. Metaxes as escrow agent, and Mr. Metaxes was given the authority to assume custody and control of the funds subject to the litigation.

63) On May 13, 2005, the Court (DiGangi, J) issued a Temporary Order, wherein Chester was ordered to transfer to Anthony Metaxas, as escrow agent, the three accounts that are the subject of the litigation, with said transfer to occur by noon on May 14, 2004. The Court further ordered that Chester appear before the Court to transfer the funds by noon on May 14, 2004 or to appear before the Court at 2:00 p.m. on May 14, 2004 to explain why the transfer was not completed.

64) On May 14, 2004, the court (DiGangi, J) found Chester GUILTY of contempt of court for having willfully neglected and refused to comply with the Court's May 13, 2004 Temporary Order, and a capias issued forthwith. Chester was ordered to jail until he purged himself of said contempt by transferring said accounts to Anthony Metaxes.

65) Also on May 14, 2004, the Court (DiGangi, J.) issued a Temporary Restraining Order wherein Chester, his agents, servants and assigns, including Fidelity Investments, Sovereign Bank and the Salem Five Bank were enjoined from making or permitting any transfer or withdrawal from the identified accounts.

66) On May 14, 2004, the Court (DiGangi, J) further ordered that Chester, his agents, servants and assigns were enjoined and restrained from utilizing any purported Power of Attorney granted to him by Mary Jane, pending further order of the Court.

67) On May 17, 2004, Chester purged himself of the Contempt by paying contempt fees to the Court, $300.00 to the Essex County Sheriff's Office for execution of the capias, and by providing the Receiver Anthony M. Metaxas with the documents necessary to effectuate the transfer to the escrow account.

68) The trial was scheduled for May 24, 25, 26 and if needed May 28, 2004.

9

69) On May 24, 2004, Chester filed two Motions in Limine. The first Motion in Limine requested that the court take judicial notice of the order entered by the Court, (Highgas, J.) finding that Mary Jane Chalupowski was a competent person as of October 30, 1996. There was no opposition and the motion was allowed.

70) The second Motion in Limine filed on May 24, 2004 requested that the court limit the trial to those issues relating to the Mary Jane O. Chalupowski *et al* Family Trust, and not any issues concerning the real estate trust. In support of this Motion, Chester argued that the Judith's Petition was not timely filed and should be barred. Chester also argued and that the issues raised in Judith's Petition were duplicative of those before the Appeals Court and contained within a Motion for Contempt in the Appeals Court. Chester finally argued that this Court should not address the issue of the Realty Trust, as Donna had a pending appeal concerning the validity of the 26-30 Andrew Street Realty Trust, the resolution of which could declare the Trust a nullity.

> (a) As to the first ground, the court ruled that Judith's Petition of January 14, 2001 was timely filed. It was discovered that the Petition, although not docketed, had been filed in a timely fashion, and furthermore, that all counsel then appearing, had received the Petition in a timely fashion. In addition, this court ruled that the issue had not been raised in a timely fashion and that Chester's time to object to this filing had long run
>
> (b) As to the second ground, the court ruled that the issues raised in the Appeals Court and the Motion for Contempt involved actions related only to an Order of the Appeals Court, not an action related to these proceedings. Justice Berry, in her order of August 2, 2002, of which this court takes judicial notice, stated that her actions staying the eviction of the two sisters (a Salem District Court Action, 0136CV1361 and 0136CV1360) "shall not affect the continuing jurisdiction of the Probate Court in respect to the remaining pending matters."

71) As to the third ground, Chester's contention the determination of the validity of the deed transfer to the 26-30 Andrew Street Realty Trust would be dispositive of the issues surrounding the realty trust, the Court ruled that the issues of mismanagement and waste would still need to be litigated. The Court further held that it was necessary to determine whether Chester was acting under his authority as trustee from 1995 to the present, his apparent authority as trustee from 1995 to the present, or as Mary Jane's designee, from 1995 to the present.

72) Chester's Motion in Limine was denied and Chester's objection was noted for the record.

73) On May 25, 2004, Chester failed to appear for the second day of trial, and Attorney Meyers, on behalf of Judith made an oral motion for Default Judgment.

74) On May 25, 2004, the Court (DiGangi, J.) issued a judgment against Chester on the consolidated matter 00E-0127, consisting of the Petitions to remove him as trustee of the Chalupowski Family Trust and the 26-30 Andrew Street Realty Trust and to repay misappropriated funds.

75) On May 25, 2004, Chester filed a Petition for a Restraining Order in the Appeals Court. The Appeals Court, assuming that the Petition was intended to serve as an interlocutory appeal, would not rule on the motion absent a final judgment from this Court.

## THE 26-30 ANDREW STREET REALTY TRUST

76) Chester formed the 26-30 Andrew Street Realty Trust (hereinafter 'Realty Trust") in 1995 by a Declaration of Trust which named him sole trustee, and provided him as trustee with the following powers:

      (a) The Trustee shall have full right, power and authority, in his sole and absolute discretion and without authorization from any court, as follows:

      (b) To retain indefinitely any property, real or personal or mixed, and to operate at the risk of the trust estate any property …that shall be transferred to the trustee in trust;

      (c) To sell, convey or otherwise dispose of the whole or any part of any property at any time held thereunder at such times for such prices…as trustee shall deem advisable;

      (d) To make such purchases or exchanges at such times, for such priced, in such manner, and upon such other terms and conditions as trustee shall seem advisable, and to invest and reinvest in such securities, mortgages, insurances…as trustee shall seem advisable, regardless of whether any investment shall be of a wasting asset nature and without regard to any law concerning the investment of trust funds;

      (e) To pay or reserve sufficient funds to pay all expenses of management and administration of the trust estate;

      (f) To do all acts, to institute all proceedings, and to exercise all other rights, powers, privileges that an absolute owner of the property would have the right to do, subject always to the discharge of the trustee's fiduciary obligations.

77) In addition to the broad grant of powers Chester received as Trustee, the Declaration of Trust included language intended to exempt Chester from wrong-doing or mismanagement in his capacity as trustee. See (c) above.

78) The Realty Trust provided that Mary Jane would receive, after the payment of expenses of management of the Trust estate and administering the Trust, all of income earned by the trust for the duration of her life.

79) The Declaration of Trust for the Realty Trust provided that after Mary Jane's death, the trust property was to be divided equally between the "secondary beneficiaries" – Donna, Judith, and Chester.

80) Pursuant to the Declaration of Trust, the Trustee was to receive no compensation for the performance of his duties.

81) From May 1997 through June 2001, Chester delegated his obligation to manage the properties located at 26 and 30 Andrews Street. Chester testified that he employed Harbor Realty and Property Management to act as the property managers for 26-30 Andrew Street. In their capacity as building managers, Harbor Management arranged for routine maintenance, repairs and collected rents.

82) Chester testified that Harbor Management was paid $150 per month, per building as their management fee. Harbor Management's fee was paid out of the rental income collected each month by Harbor Management.

83) Chester testified that Harbor Management had problems collecting rent from the tenants in 26-30 Andrews Street. The Court finds that based on Harbor Management's monthly statements submitted as evidence, some rental income was collected each month by Harbor Management, however, rental income was not collected from all tenants.

84) After deducting their management fee, and the cost of repairs made during the month, Harbor delivered the income in the form of a check to Chester.

85) The check from Harbor Management was deposited into an account held at Eastern Bank, under the name of the Mary Jane Chalupowski Family Trust.

86) Chester testified that, exercising his check writing authority, he wrote checks to himself as "rent". He rationalized this practice as providing him an equal benefit from the trust, because his sisters were living in their apartments in 26-30 Andrews Street without paying rent. Chester testified that he paid himself in amounts varying between $300 per month to $1,000 per month as "rent".

87) Chester paid himself in excess of the actual rent being received by Harbor Management. The rents collected by the management company ranged between $600-$750.00 per month.

88) Chester continued to pay himself "rent" though he delegated his authority as "manager" of the trust property to Harbor Management.

89) The court finds that the payment of "rent" to Chester to be an inappropriate expenditure.

90) The Declaration of Trust did not provide for compensation to the trustee, and all of the income from the rents collected should have inured to the life tenant, Mary Jane. Chester's suggestion that because his sisters did not have to pay rent, he was entitled to a distribution from the trust account is inappropriate and not consistent with the Trust document.

91) The Court finds that Chester did not have the authority to delegate his management duties to a third party, and did not have the authority to use trust funds to pay for the services of that third party using income from the Realty Trust.

92) The payment of $300.00 per month to Harbor Management should have been paid to Mary Jane as part of the "income".

93) Chester shall repay all amounts tendered to Harbor Management to Mary Jane. Said amount is to be determined at a subsequent hearing.

94) The Court does not find that the cost for the repair services paid for by Harbor Management should be included as "income" earned by the Trust, and only finds Chester liable for the $300.00 payment per month to Harbor Management from May 1997 through June 2001.

12

95) Chester terminated Harbor Management sometime in June 2001. Since that time, the rental income has continually declined until now, there is no rent coming into the Trust.

96) Chester testified that the properties should be generating approximately $10,000 per month.

97) Due to Chester's mismanagement, the real estate is presently producing no income.

98) Chester breached his duty as fiduciary when he did not use reasonable care, and failed to effectively manage the real estate.

99) From March 20, 1997 through September 25, 2002, Chester used approximately $81,558.26 of the income from the Realty Trust for his own personal gain, and committed waste of the trust funds from Eastern Bank.

100) On or about October 17, 2002 Chester obtained a home equity loan from Sovereign Bank in the amount of $127,000 in Mary Jane's name, by signing as Mary Jane's attorney in fact under the authority of an "irrevocable durable power of attorney" granted him October 4, 1995. [2]

101)    The equity loan from Sovereign Bank encumbered the Realty Trust property located at 30 Andrew Street.

102)    Chester executed the bank documents for this home equity loan as Trustee. He signed a Trustee Certificate certifying that he had been specifically authorized to exercise the mortgage with Sovereign Bank by all beneficiaries, that no beneficiary of the Trust had died or was incompetent, and that Mary Jane Chalupowski was duly authorized to act as a Trustee. (See Exhibit 21)

103)    The court finds that Chester's representation that Mary Jane was duly authorized to act as a Trustee to be false, as Mary Jane was not a trustee under the 26-30 Andrew Street Realty Trust.

104)    The court finds that Chester did not obtain authorization from all beneficiaries to encumber the property located at 30 Andrew Street.

105) Chester made withdrawals in the amount of $30,000 from the home equity loan, all of which was transferred into the Sovereign trust account.

106)    Some of this money was properly used to maintain the trust property.

107)    In addition to the monies taken by Chester, the court finds that Judith, under the belief that she was Trustee and was obligated to make repairs and maintain the trust property, obtained checks and cashed checks from the home equity line (checks numbered 142-150) in the amount of $33,517.04.

[1] It is Chester's action of mortgaging the Trust property at 30 Andrew Street that is the subject of the Motion for Contempt in the Appeals Court, Docket No. 2002-J-0057. See Order attached hereto
[2] It is Chester's action of mortgaging the Trust property at 30 Andrew Street that is the subject of the Motion for Contempt in the Appeals Court, Docket No. 2002-J-0057. See Order attached hereto

13

108) The court finds that all but $5,000 was returned to Chester Chalupowski, and there remains the sum of $5,000 wrongfully paid to Judith.

109) Of the $28,517.04 returned to Chester, none has been accounted for and this Court finds that Chester has misappropriated said funds.

110) Regarding the home equity loan from Sovereign Bank, from October 22, 2002 through April 2004, Chester J. Chalupowski misappropriated $28,571.04 of the funds from the home equity loan.

111) There is a Sovereign Bank account, in the name of the 26 through 30 Andrew Street Realty Trust, with Mary Jane as Trustee, and Chester "under Power of Attorney".

112) Chester utilized funds from the Sovereign Bank account for his personal use, including payment of attorney's fees, parking tickets, and other miscellaneous expenses not directly related to the maintenance, management or improvement of the Trust property.

113) Chester testified that he used these funds to help defend himself from the 209A abuse protection Complaints filed by his sisters, and that he used trust funds to pay for his attorneys.

114) Chester testified that he could not recall how many times he used an attorney, or how much the trust paid the attorney on his behalf.

115) This Court will not condone a trustee's utilization of trust funds to defend against suits alleging that he used of abusive behavior against the beneficiaries of the trust.

116) Chester transferred funds derived from Mary Jane's social security check and pension monies, which belonged solely to Mary Jane, to the Sovereign Bank Account in the name of the Realty Trust.

117) Chester commingled Mary Jane's funds with his own funds and with funds belonging to the 26-30 Andrew Street Realty Trust.

118) From October 17, 2002 through April 2004, Chester misappropriated $22,564.51 from the Sovereign Bank 26-30 Andrew Street Realty Trust account

## THE MARY JANE O. CHALUPOWSKI, JUDITH CHALUPOWSKI VENUTO, DONNA M. CHALUPOWSKI AND CHESTER J. CHALUPOWSKI, JR. FAMILY TRUST

119) In July 1993, Mary Jane held approximately $177,158.97 in several accounts maintained at Salem Five Bank in her own name.

120) On July 9, 1993, Chester J. Chalupowski, Jr. (hereinafter "Chester") transferred $176,022.21 from Mary Jane's individual accounts to one account held jointly in the names of Chester and Mary Jane.

14

121) Also on July 9, 1993, a document was executed entitled "Agreement Regarding Absolute and Final Transfer of Funds and Payment of Annuity", (hereinafter "Annuity Agreement"). As terms of the Annuity Agreement, Chester was obligated to pay four (4%) percent interest per annum on the $176,000.00 on a monthly basis to Mary Jane. Upon Mary Jane's death, the principal would become Chester's sole property. The signing of the Annuity Agreement was recorded on video tape.

122) On July 13, 1993 Chester wrote a check in the amount of $170,000 and deposited it into his Eastern Bank Account.

123) On July 13, 1993, Chester wrote a check from his Eastern Bank account, in the amount of $184,941.65 and deposited it into his personal account at Fidelity Investments to fund the private annuity he established on July 9, 1993. (See Finding 108)

124) The Annuity provided that Chester would hold the sum of $170,000 as his absolute property, and that he would pay Mary Jane Chalupowski each month, the sum of $566.67, totaling four percent per annum on the $170,000.

125) According to the Annuity, this obligation would continue during the life of Mary Jane, and upon her death, the Annuity Agreement would cease, and the $170,000 would remain his own absolute property.

126) On March 26, 1996, Chester formed the Mary Jane O. Chalupowski, Judith Chalupowski Venuto, Donna M. Chalupowski and Chester J. Chalupowski, Jr. Family Trust (hereinafter "Family Trust"), effective July 21, 1993. This trust, unlike the Realty Trust was never recorded in the Salem Registry of Deeds.

127) The Family Trust was intended to be a nominee trust for federal and state income tax purposes, and its purpose was to hold the record legal title to the trust estate and to perform such functions as are necessary and incidental thereto.

128) The Family Trust was funded with the $170,000 Chester received from Mary Jane in 1993, plus the accrued interest, less the annuity distributions to Mary Jane O. Chalupowski and expenses.

129) The Family Trust is an income only trust. Mary Jane, the life beneficiary is only entitled the income, less expenses of the trust, during her lifetime.

130) Pursuant to the Family Trust's Declaration of Trust, upon Mary Jane's death, the corpus of the Trust was to be distributed equally between the three Chalupowski children.

131) Chester is named as the Trustee of the Family Trust.

132) The Family Trust contains no provision for payment to the Trustee for any services rendered by the Trustee, however, there is a provision to pay all expenses of management and administration of the Trust estate.

133) Chester, as trustee, is given the following powers:

15

(a) The Trustee shall hold the Trust Estate for the benefit of the Beneficiaries, and may pay the income, if any,...to [Mary Jane] during her life time, and shall distribute the trust estate, less expenses to the remaining Beneficiaries, by agreement of the Beneficiaries...subsequent to the death of [Mary Jane];

(b) To retain indefinitely any property, real, personal or mixed, and to operate at the risk of the trust estate any property or business that shall be transferred to trustee in trust...regardless of any lack of diversification, any risk, or any nonproductivity;

(c) To sell, convey, or otherwise dispose of the whole or any part of the property at any times held hereunder at such times for such prices...as trustee shall deem advisable;

(d) To pay or reserve sufficient funds to pay all expenses of management and administration of the trust estate;

(e) To do all acts, to institute all proceedings,. and to exercise all other rights, powers, and privileges that an absolute owner of the property would have the right to do, subject always to the discharge of the trustee's fiduciary obligations;

(f) To buy, sell, convey, assign, mortgage, or otherwise dispose of all or any part of the Trust Estate, and as landlord or tenant execute and deliver leases and subleases;

(g) To execute and deliver notes for borrowing on behalf of the Beneficiaries and to endorse and deposit checks in an account for the benefit of the Beneficiaries and to maintain bank accounts in the name of the Trust or Trustee, and the Trustee may maintain bank accounts in the name of the beneficiaries.

134)    The Family Trust's Declaration of Trust contained an exemption for mistakes made by trustees in "good faith." The provision reads:

"No Trustee shall be liable for any actions taken at the direction of the Beneficiaries, not for any error of judgment not for any loss arising out of any error of judgment not for any loss arising out of any act or omission in the execution of the trust so long as the Trustee is acting in good faith."

135)    The Declaration of Trust further provides that a Trustee "shall be responsible only for his or her own willful breach of trust."

136)    On October 24, 1996, Elderly Protective Services began investigating allegations that Chester's malfeasance or misappropriation of Mary Jane's funds. Elder Services investigation related to Chester moving his mother's funds in July, 1993 from a joint account into his personal account at Fidelity. The investigation further tracked the $170,000 while it stayed in Chester's personal Fidelity Account and was co-mingled with his separate funds and earned interest, and then in 1996, when Chester withdrew $170,000 from the Fidelity Account and used it to form the Family Trust.

137)    Following the investigation, Robert Wall of Elderly Protective Services produced a report on August 1, 1997, which concluded that Chester should deposit $25,000 into the Trust account as interest that had accrued on the $170,000 while in Chester's personal Fidelity Account.

05/19/04  THU 12:51  [TX/RX NO 6304]

138)  Robert Wall reached this conclusion by applying a Fidelity Asset Manager Hypothetical Illustration of the growth of a no-load $170,000 investment made on July 21, 1993 with all distributions having been reinvested to the original $170,000 invested in July 1993.

139)  This analysis showed $170,000 growing to $212,543.83 from July 21, 1993 to March 16, 1996 for a gain of $42,543.85. Mr. Wall gave Chester credit for $17,566.77, which he had paid pursuant to the annuity agreement, therefore reducing the gain to $24,977.08.

140)  Mr. Wall recommended that this amount should be put back into the trust account. See Exhibit 25.

141)  Chester failed to deposit this sum of $24,977.08 into the Fidelity Trust Account. By failing to contribute the $24,977.08 earned as interest on the $170,000 during the time it was co-mingled with his own funds in the Fidelity Account, this court finds that Chester misappropriated $24,977.08 from the Family Trust.

142)  Chester instructed Fidelity to send any capital gain or dividend distribution from the Chalupowski Family Trust account to his own Fidelity Account, #X01-012262.

143)  After receiving the capital gain or dividend distributions from the Chalupowski Family Trust to his Fidelity Account, Chester deposited most of the capital gain and or dividend distribution checks into the Eastern account.

144)  Chester withdrew or transferred money from the Fidelity Trust Account into his own personal account or for his own personal use.

145)  Chester misappropriated sums properly belonging to the Chalupowski Family Trust.

146)  From February 1997 to the present, Chester J. Chalupowski committed the following waste of trust funds from Fidelity Investment Account No. Y99-171700, the Chester J. Chalupowski, Jr. The Chalupowski Family Trust account. :

| 2/03/97 | Transferred to Chester's account | $5,000 |
| 4/1/97 | Transferred to Chester's account | $5,000 |
| 12/1/97 | Transferred to Chester's account | $13,562.04 |
| 3/2/97 | Transferred to Chester's account | $6,962.59 |
| 5/1/98 | Transferred to Chester's account | $2,977.81 |
| 6/9/98 | Withdrawal | $405.76 |
| 7/31/98 | Withdrawal | $5,000 |
| | TOTAL | $38,908.20 |

147)  On or about January 11, 2002, Chester transferred the Fidelity Trust account to another Fidelity Trust account, Account No. X01-771414, giving himself sole check writing authorization. See Exhibit 23.

148) On April 6, 2004 Chester converted the trust's holdings in the Spartan Muni Income Fund into cash. This constituted a transaction amount of $42,616.55.

149) Between April 15 and April 16, 2004, Chester transferred the entire Fidelity Trust account, in the amount $174,055.10 to his own account X01-012262 at Fidelity.

150) Upon this transfer he immediately withdrew and deposited $50,000 into his personal account at J.P. Morgan via check. See Exhibit 24.

151) Chester Chalupowski has wasted, misappropriated and otherwise taken trust funds for his own use.

### TAX RETURNS

152) As Trustee of the 26 through 30 Andrew Street Realty Trust, Chester was obligated to file tax returns on a yearly basis.

153) Chester failed to file tax returns on a yearly basis for the 26 through 30 Andrew Street Realty Trust, and has breached his fiduciary responsibilities.

154) Chester provided information to an accountant, Stuart A. Steinberg & Associates, in order to prepare tax returns for his mother. See Exhibits 15-18.

155) Chester testified that he provided information to the accountant, regarding the financial activities of the trusts.

156) The tax returns indicate that Mary Jane filed a Schedule E, claiming that she had income and expenses from rental real estate that she owned.

157) Mary Jane does not own any real estate, is only the life tenant, and the real estate in question is owned by the 26 through 30 Andrew Street Realty Trust.

158) Any income to the trust should have been claimed by the trust, any expenses for the real estate should have been claimed by the trust, and only net income after expenses should have been paid to, and claimed by, Mary Jane.

159) Chester directed the fraudulent filing of tax returns for Mary Jane, and caused erroneous tax returns to be filed on behalf of his mother, for whom he exercised a Power of Attorney, from at least from 1999 to the present.

160) Chester filed tax returns for himself, including tax returns filed for 1998-2002. See Exhibit 9-13.

161) Although Chester paid himself income of "rent" during the years 1992-2001, he did not declare this income.

18

162)    Although Chester transferred money into his Fidelity account from the Fidelity Trust
        Account, he did not declare the income.

163)    Although Chester transferred money from the Sovereign account into his personal account,
        he did not declare the income.

164)    Chester fraudulently failed to declare income from 1997 to the present.

165)    Chester filed an extension to file 2002 income tax returns, on behalf of himself and his
        mother.

166)    Chester claimed that he was "currently involved in a federal trial that is taking up 100% of
        [his] time" and that he could not devote the time to finishing his tax return.

167)    Chester filed a similar request for extension for his mother.

168)    Chester is not involved with a federal trial, and misrepresented his reasons for needing an
        extension to file his tax return and on his mother's tax return.

169)    On each and every tax return from 1997 to the present, Chester claimed Malgorzata
        Nabialczyk as his dependent. She is his fiancé, and is not a minor, over 65, blind nor otherwise
        disabled.

170)    Chester committed fraud by claiming Dr. Malgorzata as his dependent for tax purposes.

171)    Chester claimed at trial that he was a property manager, and as part of his 1999 and 2000 tax
        return, he claimed as a business expense of a computer and a printer.

172)    Chester testified at trial that he purchased a printer and paper as well as a digital video
        camera with trust assets.

173)    Chester's purchases for his own use constitute embezzlement.

174)    Chester's adjusted gross income in 1998 was $7429, in 1999 was $13,772, in 2000 was
        $4,501, in 2001 was $15,098 and in 2002 was $2,972.

175)    Chester has rental property located at 11 and 13 Beckett Street, Salem, MA, however, his
        listed income after expenses is allegedly not substantial: in 1998, $6,484; in 1999, a loss of
        $2,940; in 2000, a loss of $14,467; in 2001, $11,801; and, in 2002 $2972.

176)    Chester also lists no wages of any kind on his tax return. However, Chester testified that he
        drives a 1997 BMW Z3, and owns numerous expensive acoustical guitars and holds himself as
        a musician.

177)    Chester's life style is inconsistent with his income.

178)    Chester used money from the real estate trust and from the Family Trust to support his life
        style.

19

179) Chester misappropriated money from the 27 though 30 Andrew Street Realty Trust and from the Mary Jane O. Chalupowski, et al Family Trust, totaling $196,525.09.

180) This court finds that Chester J. Chalupowski, Jr. has committed acts inconsistent with his appointment as trustee and should immediately be removed as Trustee from the Realty Trust and from the Family Trust.

181) By using trust property purely for his personal gain, [Chester] committed a breach of his fiduciary duty so flagrant as to require removal as Trustee. *Gordan v. Gordan*, 332 Mass. 210, 212-213 (1955).

182) Pursuant to the July 3, 1996 Order of this Court, Chester had an obligation to render accurate accounts on a quarterly basis to all the beneficiaries. Only three accounts were filed, none of which conform to Probate Court requirements.

## CONCLUSIONS OF LAW

"By thus disposing of the trust property purely for his personal gain, the respondent committed a breach of his fiduciary duty sufficient to justify his removal, and, in our opinion, so flagrant as to require it." See *Gordon v. Gordon*, 332 Mass. 210-212-213 (1955).

The most fundamental duty imposed on a trustee as fiduciary of the beneficiaries is a duty of good faith and loyalty. *Bowen v. Richardson*, 133 Mass. 293, 296 (1882).

"The rule is general and fundamental, that no person holding trust funds can be allowed to derive any personal gain or advantage, either directly or indirectly, from the use thereof, but he must manage them with a single eye to the advantage of the trust estate . . ." Id.

As a fundamental principal of trust law, the Trustee has a duty of loyalty to administer the trust solely in accordance with the terms of the trust, and in the best interests of the beneficiaries. See, *Morse v. Hill*, 136 Mass 60 (1983); *Hayes v. Hall*, 188 Mass 510 (1905); *Comstock v. Bowles*, 295 Mass 250 (1936); *Jose v. Lyman*, 316 Mass 271 (1944); *Horwitz v. Horwitz*, 3 Mass.App.Ct. 753 (1975); *Johnson v. Witkowski*, 30 Mass.App.Ct. 697 (1991).

A Trustee cannot derive personal advantage at the expense of the trust or put himself in a position antagonistic to those of the beneficiaries. *Ball v. Hopkins*, 268 Mass. 260, 266, 167 N.E. 338 (1929), see also *Johnson v. Witkowski*, 30 Mass. App. Ct. 697, 706, 573 N.E.2d 513 ("The rule that a fiduciary may not derive personal advantage at the expense of the trust, nor put himself in a position antagonistic to the beneficiaries of the trust will be strictly enforced") rev. denied, 411 Mass. 1104, 581 N.E.2d 481 (1991); Bogert and Bogert, Law of Trust and Trustees, § 543 at 217 (2nd rev. ed.).

"A trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust. [She] must lay aside self interest . . . for the office of trustee cannot be subverted to fostering the personal [*67] advantage or individual gain of the incumbent. There can be no divided loyalty." *Rutanen v. Ballard*, 424 Mass. 723, 731, 678 N.E.2d 133 (1997).

20

Acts of a Trustee will be struck down "upon clear proof" that the Trustee is "abusing their authority and acting in perversion of the trust." *Dumaine v. Dumaine. 301 Mass____. 221 (XXXX).*

Although the 26-30 Andrew Street Realty Trust and the Family Trust have exculpatory provisions, when there is a breach of trust committed in bad faith, or intentionally or with reckless indifference to the interest of the beneficiary or as to breaches from which the trustee has realized a profit, the exculpatory clauses are deemed to be void. *Dill v. Boston Safe Deposit & Trust Co.*, 343 Mass. 97, 100, 175 N.E.2d 911 (1961).

An agent or fiduciary is under a duty to keep and render accounts and, when called upon for an accounting, has the burden of showing that he properly disposed of funds which he is shown to have received for his principle or trust." *Samia v. Central Oil Co. of Worcester*, 339 Mass. 101, 126, 158 N.E.2d 469 (1959). See also; *Briggs v. Crowley*, 352 Mass. 194, 199, 224 N.E.2d 417 (1967) (it is well settled that trustee has duty to account for trust property).

### RATIONALE

Upon his appointment as "trustee" for the Realty Trust and the Family Trust, Chester was required to satisfy a certain standard of conduct. A trustee "must lay aside self interest when it become adverse to the rights of the beneficiaries, because of the office of trustee cannot be subverted to fostering the personal advantage or individual gain of the incumbent." Mass Practice, § 39.1, citing, Spinner v. Nutt, 417 Mass 549 (1994); Burlingham v. Worcester, 351 Mass 198 (1966); Boston Safe Deposit & Trust Co. v. Lewis, 317 Mass 137 (1944). Further, Trustees are obligated to act in good faith solely for the benefit of the beneficiaries. Further, trustees are obligated to act in good faith, and their actions must be solely for the benefit of the beneficiaries. Chester failed completely in his duty to "lay aside self interest", and it appears to this Court, based on the facts presented, that Chester failed to engage in any course of conduct for the benefit of the beneficiaries.

As Trustee for both the Realty Trust and the Family Trust, Chester failed to account to the beneficiaries, and mismanaged and wasted trust property. As Trustee of the Realty Trust, Chester delegated authority to a third party to manage trust assets, and failed to make necessary repairs in order to enhance the value of the trust property, took out a home equity loan using trust property as

21

collateral, and failed to account for a portion of the proceeds from that loan. As Trustee of the Family Trust,

Chester abused the office with which he was charged. The Court finds that Chester used the office of "trustee" as a means to use his mother's assets for his own benefit, and to enable him to live a lifestyle which far exceeded the lifestyle his personal income would have allowed. Chester failed to protect the immediate and long-terms needs of the beneficiaries by properly managing trust assets

Chester's failure to appear before this Court on May 25, 2004 supports the analysis that Chester does not recognize the Court's authority and the gravity of these proceedings. On May 25, 2004, Chester was aware of his obligation to appear and continue to defend himself against the charges levied against him. Chester's decision not to appear was against the advice of his counsel. This Court finds that Chester failure to appear is based on his lack of comprehension regarding the gravity of the charges levied against him by the beneficiaries, and the fundamental duty he stands accused of breaching when he failed to protect the beneficiaries' interests. Throughout these proceedings, Chester has attempted to minimize his responsibility for his actions. He has demonstrated an unwillingness to accept responsibility, or participate in mitigating the damage he caused to the Realty Trust and the Family Trust through his mismanagement of the assets. Chester's failure to appear for the second day of trial is yet another example of this pattern of denial.

The evidence presented by Donna and Judy through their attorneys on May 23, 2004 is sufficient to find that Chester should be removed as trustee, and that he should be obligated to repay the trusts the amounts he misappropriated. The Court does not find, however, that sufficient evidence was presented regarding attorney's fees, and holds that a hearing shall be scheduled to determine that issue.

22

In light of the Findings and Rationale of this Court, the following Judgment hereby enters:

## JUDGMENT

1.  Chester J. Chalupowski, Jr. shall be immediately removed as Trustee of the Mary Jane
    O. Chalupowski ; et al Family Trust ("Family Trust").

2.  The court reaffirms the terms of the Family Trust that the life beneficiary, Mary Jane O.
    Chalupowski shall receive the income and dividends, if any, derived from the Family
    Trust. Judith Chalupowski Venuto also known as Judith Chal-Venuto, ("Judy") Donna
    Chalupowski ("Dorina") and Chester J. Chalupowski, Jr. (Chester) are the residual
    beneficiaries.

3.  Although the 26-30 Andrew Street Realty Trust and the Family Trust have exculpatory
    provisions, when there is a breach of trust committed in bad faith, or intentionally or
    with reckless indifference to the interest of the beneficiary or as to breaches from which
    the trustee has realized a profit, the exculpatory clauses are deemed to be void. *Dill v.
    Boston Safe Deposit & Trust Co.*, 343 Mass. 97, 100, 175 N.E.2d 911 (1961), and this
    court finds that to the extent either of the Trusts in question contained exculpatory
    clauses that would other wise have relieved the Trustee for errors in judgment, has no
    applicability in this matter.

4.  Chester, as trustee, to the extent that such funds are available to him, shall forthwith
    surrender title to the Fidelity account which contained the sum of $174,055.10, on April
    15, 2004. Such title shall be transferred, to the extent it has not been transferred already
    to Anthony M. Metaxes as receiver until such time as the successor trustee can establish
    a subsequent trust account.

5.  Chester shall forthwith pay back into the Family Trust as follows: $24,977.08 (from
    Elderly Protective Service calculations 1994-1997) plus interest at the annual rate of 6%

from October 15, 1997, and $38,908.20 (from Fidelity account 1997-2002) plus interest at the rate of 6% from August 1, 1998.

6. Trustee Anthony Metaxes of Beverly, MA is appointed by this Court to manage the investment portfolio of the Family Trust, and to take only those acts consistent with the Trust instrument, which includes the distribution of income and dividends to the life tenant.

7. Chester J. Chalupowski, Jr. shall be immediately removed as Trustee of the 26 through 30 Andrew Street Realty Trust ("Realty Trust").

8. Chester shall forthwith pay back into the Realty Trust, the sum of $81,558.26 (Eastern Bank Account) plus interest at the annual rate of 6% from September 1, 2002 plus $28,571.04 (Repayment of funds from Sovereign seized from Judy) + $22,564.51(Sovereign account).

9. Chester J. Chalupowski, Jr. shall cooperate fully with the escrow agent and with Fidelity Investments to identify which of his personal funds shall be liquidated to refund the Money fund at its value as of April 15, 2004.

10. This Court finds that Chester J. Chalupowski, Jr. has used the Durable Power of Attorney granted to him by his mother, Mary Jane O. Chalupowski, against her interest.

11. This Court revokes the Power of Attorney granted to Chester J. Chalupowski by Mary Jane O. Chalupowski dated October 4, 1995.

12. This Court directs Elder Services to investigate to determine whether a Guardian should be appointed on behalf of Mary Jane O. Chalupowski forthwith.

13. This Court further directs Elder Services to manage and oversee the transition from Chester to the trustees of Mary Jane's financial affairs.

24

14. If the services of Mary Jane's Guardian Ad Litem are required, as anticipated, in this process he shall be paid from the Chalupowski Family Trust.

15. This Court appoints Attorney Anthony Metaxes as an independent Trustee to act as the sole Trustee of the 26-30 Andrew Street Realty Trust, until such time as the Appeals Court rules on the issue of which Trust vehicle governs the management and operation of the real estate located at 26 through 30 Andrew Street. Regardless of the decision of the Appeals Court, this court finds that none of the beneficiaries or the life tenant is qualified to act as a Trustee.

16. Therefore, upon the Appeals Court decision as to which Trust shall govern the management and operation of the real estate, the Trustee nominated above shall continue to act as the Trustee.

17. The Court appoints Attorney Anthony Metaxes as Trustee of the Mary Jane O. Chalupowski, Judith Chalupowski Venuto, Donna M. Chalupowski and Chester J. Chalupowski, Jr. Family Trust. This court finds that none of the beneficiaries or the life tenant is qualified to act as a Trustee.

18. This Court directs the Successor Trustees of both trusts to file amended tax returns for both trusts and for Mary Jane O. Chalupowski from 1995 to present and orders that any costs for such filings including costs of preparation, penalties, and interests are borne by Chester J. Chalupowski, Jr.

19. The Court orders the Successor Trustee of the Realty Trust to terminate the equity line currently in the name of Mary Jane O. Chalupowski or if possible, convert such equity line to the name of the Realty Trust. Any costs of such termination or transfer shall be borne by Chester J. Chalupowski, Jr.

25

20. This Court orders that the injunction against Chester J. Chalupowski and his agents, servants and assigns including but not limited to Fidelity Investments, sovereign Bank and Salem Five from permitting any transfer or withdrawal from said accounts shall remain in effect until such time as the Trustees and Receiver have reported to this Court that all aspects of this order have been complied with.

21. The court finds that Chester J. Chalupowski, Jr. has sufficient funds exceeding $50,000 which he transferred from his Fidelity Account in April with which to pay his personal expenses until he has complied with this order.

22. The court directs that Mary Jane is entitled to all income less expenses of either trust and that such deposits shall begin forthwith.

23. All parties are ordered to cooperate fully with Elder Protective Services and Attorney Anthony Metaxes his capacity as Trustee in their efforts to act in compliance with this order.

25. The Court shall hold a hearing on the issue of fees for Susan Meyers, John Welch and Joseph Corona.

August 17, 2004

Peter DiGangi, Justice
Essex Probate and Family Court Department

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                          Docket No. 00E 0127 GC1

IN RE:      Petition of Donna M. Chalupowski
            to Remove Chester J. Chalupowski, Jr.
            as Trustee of the Mary Jane O. Chalupowski
            and the Chester Chalupowski, Jr. Family
            Trust and Petition of Judith Venuto to
            Remove Chester J. Chalupowski, Jr. as
            Trustee of the 26-30 Andrew Street
            Realty Trust

## EMERGENCY MOTION OF ANTHONY M. METAXAS, TRUSTEE FOR EQUITABLE RELIEF

Anthony M. Metaxas, Trustee of both Chalupowski Family Trust and 26-30 Andrew

Street Realty Trust ("Trustee") requests this Court to order the defendant, Chester J.

Chalupowski, Jr. ("Chester") and financial institutions in which Chester maintains brokerage

and/or bank accounts including, but not limited to, Fidelity Investments, BrownCo, Sovereign

Bank and Salem Five to forthwith transfer to the undersigned all funds and securities standing in

any account in the name of Chester.

In support of this motion, the undersigned states the following:

1.  This Court's August 17, 2004, judgment removed Chester as Trustee of both the

    Chalupowski Family Trust and the 26-30 Andrew Street Realty Trust and appointed

    the undersigned as successor trustee of both trusts.

2.  In paragraphs 4, 5, and 8 of said judgment, the Court directed that Chester forthwith

    repay to the undersigned as trustee of the family trust, $174,055.10 from the Fidelity

    Trust account and $24,977.08 plus interest, and $38,908.00 plus interest, for a total

    of $266,767.77, which includes interest. The breakdown of these amounts, including

calculations of interest, are set forth in the supporting Affidavit of Sharon D. Meyers in paragraphs 4 through 6.

3.  In addition, Attorney Meyers' affidavit has calculations that Chester will owe a further amount in connection with management fees improperly paid and amounts taken by Chester in the form of rent which Attorney Meyers has calculated to be $14,700.00.

4.  In paragraph 7 and 8 of said judgment, the Court directed that Chester repay to the 26-30 Andrew Street Realty Trust the amounts of $81,558.26 plus interest; $28,571.04; and $22,564.61, plus the amount for management fees improperly paid. The breakdown of these amounts, including calculations of interest, are set forth in the supporting Affidavit of Sharon D. Meyers in paragraph 8 through 10. The total, therefore, which will in all probability be owed to the undersigned, as trustee is $157,360.96.

5.  The undersigned has contacted Chester's counsel on several occasions to discuss Chester's obligations to cooperate with the undersigned in the payment of the amounts ordered by the August 17, 2004, judgment. From conversations with Chester's counsel, it does not appear that Chester is in communications with him.

6.  The undersigned has a fiduciary obligation to take possession of amounts which the Court has determined are due to the trusts.

7.  There is an immediate need for funds to pay the expenses of Mary Jane O. Chalupowski ("Mary Jane") and to maintain the trust properties.

8.  The undersigned is of the belief that Mary Jane and the trust properties will suffer
    irreparable harm by further delay in the payment of the amounts held owing by
    Chester to the trust.

WHEREFORE, the undersigned requests that this Court enter an order directing that the

defendant, Chester Chalupowski, Jr., and all banking and brokerage institutions which presently

have accounts standing in the name of Chester J. Chalupowski, Jr. forthwith pay over all funds

and securities contained in said accounts to the undersigned, as trustee.

Anthony M. Metaxas in his capacity as Trustee of the Chalupowski Family Trust

and as Trustee of the 26-23 Andrew Street Realty Trust.

> Anthony M. Metaxas, Trustee of Chalupowski
> Family Trust and as Trustee of the 26-30 Andrew
> Street Realty Trust
>
>
>
> Anthony M. Metaxas (BBO #344040)
> METAXAS, NORMAN & PIDGEON, LLP
> 900 Cummings Center, Suite 207T
> Beverly, MA 01915
> (978) 927-8000

Dated: August 31, 2004

G:\Chalupowski\Documents\Emergency Motion of AMM.doc

3

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                    Docket No. 00E 0127 GC1

IN RE:        Petition of Donna M. Chalupowski
              to Remove Chester J. Chalupowski, Jr.
              as Trustee of the Mary Jane O. Chalupowski
              and the Chester Chalupowski, Jr. Family
              Trust and Petition of Judith Venuto to
              Remove Chester J. Chalupowski, Jr. as
              Trustee of the 26-23 Andrew Street
              Realty Trust

### AFFIDAVIT OF ANTHONY M. METAXAS
### IN SUPPORT OF EMERGENCY MOTION FOR EQUITABLE RELIEF

I, Anthony M. Metaxas, on oath depose and state the following:

1. I am an attorney licensed to practice law in the Commonwealth of Massachusetts and was appointed on May 12, 2004 as Escrow Agent by this Court (DiGangi, J.)

2. Following my appointment, I learned that funds belonging to the Chalupowski Family Trust had been intermingled with what appeared at that time to be non-trust funds.

3. All of the accounts; however, were attached.

4. The August 17, 2004, Judgment which both removed Chester Chalupowski, Jr. ("Chester") as Trustee of both Trusts and appointed me and required Chester to turn over the Trust funds and other amounts which Chester misappropriated from one or both of the Trust.

5. The Court's Judgment also required Chester to cooperate for the transfer of those amounts to me.

6. I have placed three telephone calls to Chester's counsel, Attorney James Tewhey, for the purpose of discussing the Court's Judgment and the issues which require action on the part of Chester.

7. During my first telephone conversation with Attorney Tewhey, I was advised that he had not yet received the Court's Judgment. In my second conversation with Attorney Tewhey, I was advised that Chester had not been in contact with him.

8.  The undersigned is in immediate need of funds to pay bills in connection with Mary Jane O. Chalupowski and the trust properties. At the present time, there is no rent being received to defray any of those expenses.

9.  The undersigned has no expectation that Chester will turn over those amounts which the August 17, 2004, Judgment required.

Signed under the pains and penalties of perjury this 27th day of August, 2004.

Anthony M. Metaxas (BBO #

G:\Chalupowski\Documents\Affidavit of AMM.doc

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
Docket No. 00E 0127 GC1

IN RE:                                                )
                                                      )
    Petition of Donna M. Chalupowski          )
    To Remove Chester J. Chalupowski, Jr.     )
    As Trustee of the Mary Jane O.            )
    Chalupowski and the Chester               )
    Chalupowski, Jr. Family Trust and as      )
    Trustee of the 26-30 Andrew Street        )
    Realty Trust                              )
                                                      )

## AFFIDAVIT OF SHARON D. MEYERS

I, Sharon D. Meyers, under oath do hereby depose and state:

1. My name is Sharon D. Meyers and I am a duly licensed attorney in the Commonwealth of Massachusetts and in Vermont, having a principal office at 30 Federal Street, Suite 200, Salem, MA.

2. The Court, Stevens, J., appointed me as Guardian Ad Litem to Judith M. Chalupowski Venuto, also known as Judith M. Chal-Venuto.

3. I have reviewed the Judgment entered by this court on August 17, 2004 and have calculated the amounts to be repaid to the Chalupowski Family Trust and to the 26-30 Andrew Street Realty Trust.

4. As to the Chalupowski Family Trust, the Court in Paragraph 4 of its judgment order that Chester transfer **$174,055.10** which had been standing in the name of the Trust as of April 15, 2004.

5. The Court in Paragraph 5 of its judgment, ordered that Chester pay back into the Family Trust $24,977.08, plus 6% per annum since October 15, 1997 and $38,908.20, plus interest at the rate of 6% per annum since August 1, 1998.

6. Chester should pay back into the Family Trust **$92,712.67,** as calculated as follows:

$24,977.08 @ 6% annual interest rate for period from October 15, 1997 to August 27, 2004:

1

| 10/15/97—10/14/98 | $24,977.08 |
| + Interest rate of 6% | 1,498.62 |
| | $26,475.70 |

| 10/15/98—10/14/99 | $26,475.70 |
| + 6% | 1,588.54 |
| | $28,064.24 |

| 10/15/99—10/14/00 | $28,064.24 |
| + 6% | 1,683.85 |
| | $29,748.09 |

| 10/15/00—10/14/01 | $29,748.09 |
| + 6% | 1,784.89 |
| | $31,532.99 |

| 10/15/01—10/14/02 | $31,532.99 |
| + 6% | 1,891.98 |
| | $33,424.97 |

| 10/15/02—10/14/03 | $33,424.97 |
| + 6% | 2,005.50 |
| | $35,430.47 |

| 10/15/03—8/27/04 | $35,430.47 |
| 6% x 317 days | 1,845.33 |
| | $37,275.80 |

|         **TOTAL** | **$37,275.80** |

$38,908.20 @ 6% annual interest rate for period from August 1, 1998 to August 17, 2004

| 8/1/98—7/31/99 | $38,908.20 |
| + Interest rate of 6% | 2,334.49 |
| | $41,242.69 |

| 8/1/99—7/31/00 | $41,242.69 |
| + 6% | 2,474.56 |
| | $43,717.25 |

| 8/1/00—7/31/01 | $43,717.25 |
| + 6% | 2,623.04 |
| | $46,340.29 |

| 8/1/01—7/31/02 | $46,340.29 |

9. In Paragraph 94 of its Judgment, the Court ordered that Chester repay to the Realty Trust as income for the benefit of the life tenant, the equivalent of what was paid to Harbor Management as a fee from May 1997 through June 2001

10. I have calculated that amount to be $14,700.00. (49 months x $300 = $14,700).

11. In Paragraph 89 of its Judgment, the Court found that the payment of rent to Chester to be inappropriate. I have reviewed the checks written by Chester to himself as rent, and have determined that the amount of "rent" wrongfully taken by Chester to be $38,000. This sum is incorporated in the amounts wrongfully taken from the Eastern Bank account and should not be double counted.

12. Based on my calculations, the total sum of money that should be transferred to the Trustee for the Family Trust is **$266,767.77.** ($174,055.10 + $92,712.67 = $266,7676.77).

13. Based on my calculations, the total sum of money that should be transferred to the Trustee for the Realty Trust is **$157,360.96** ($14,700.00 +$91,579.41 + $28,517.04 + $22,564.51 = $157,360.96

14. The total amount of the Judgment against Chester Chalupowski, Jr. is $424,128.73.

15. In addition to these sums, the attorney, Joseph Corona and the two Guardian Ad Litem's, Sharon Meyers and John Welch, have requested attorneys fees in the amount of $204,623.61.

Signed under the pains and penalties of perjury, this 27th day of August, 2004.

Sharon D. Meyers

4

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
Docket No. 00E 0127 GC1

IN RE:                                           )
                                                 )
    Petition of Donna M. Chalupowski             )
    To Remove Chester J. Chalupowski, Jr.        )
    As Trustee of the Mary Jane O.               )
    Chalupowski and the Chester                  )
    Chalupowski, Jr. Family Trust and as         )
    Trustee of the 26-30 Andrew Street           )
    Realty Trust                                 )
                                                 )

```
ESSEX, ss,              PROBATE & FAMILY COURT
                        20
                                        allowed
The within action is hereby denied -

Justice of Probate & Family Court
```

### EX PARTE MOTION OF GUARDIAN AD LITEM
### FOR SEIZURE AND ATTACHEMENT OF FUNDS

Now comes the Guardian Ad Litem for Judith Chalupowski, Sharon D. Meyers,

and moves this court to attach funds belonging to or standing in the name of Chester J.

Chalupowski, Jr., sufficient to cover any attorneys' fee award, and to place these funds in

escrow with the Court or with another appointed escrow agent.

As grounds therefore, the Guardian state, that Paragraph 25 of the Judgment

entered August 17, 2004 by DiGangi, J., it states: "The Court shall hold a hearing on the

issue of fees for Susan Meyers, John Welch and Joseph Corona." If the three counsels

were to be awarded all requested fees, the amount awarded would be no less than

$204,624.11, as Attorney Corona has requested $92,500.00, Attorney Meyers,

$79,025.61 and Attorney Welch, $33,098.50.

Wherefore, the Guardian Ad Litem respectfully requests this court seize no less

than $205,000.00 and place the same with the Court or another designated escrow agent,

1

pending a hearing on the issue of attorney's fees.

Respectfully submitted,

**JUDITH CHALUPOWSKI
VENUTO,**
A/k/a **JUDITH CHAL-VENUTO**

By her Guardian Ad Litem,

Sharon D. Meyers, Esq.
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

Dated: 8. 31. 04

2

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

PROBATE & FAMILY COURT
Docket No. 00E 0127 GC1

IN RE:                                               )
                                                     )
Petition of Donna M. Chalupowski                     )
To Remove Chester J. Chalupowski, Jr.                )
As Trustee of the Mary Jane O.                       )
Chalupowski and the Chester                          )
Chalupowski, Jr. Family Trust and as                 )
Trustee of the 26-30 Andrew Street                   )
Realty Trust                                         )
_____             )

SUPPLEMENTAL MOTION FOR ATTORNEY'S FEES

Now comes Sharon D. Meyers, Guardian Ad Litem for Judith Chalupowski

Venuto, also known as Judith Chal-Venuto, and moves this court to award her additional

attorney's fees, in the amount of $6,750.00.

As grounds therefore, the Guardian Ad Litem states:

1. This Court appointed the Guardian Ad Litem for Judith Chalupowski Venuto on

   October 29, 2001.

2. During the course of her appointment, the Guardian Ad Litem performed the

   services reflected on the attached bill, attached hereto as Exhibit A.

3. These services do not reflect any time or expenses incurred as a result of a Motion

   for Contempt filed in the Appeals Court. For the Court's reference, a copy of the

   bill reflecting those services is attached hereto as Exhibit B.

4. These services were performed at the Guardian Ad Litem's usual and customary

   rate, which the Guardian Ad Litem suggests are fair and reasonable.

1

In addition, the Guardian Ad Litem requests this Court to order Chester Chalupowski and/or the estate consisting of the Chalupowski Family Trust and the 26-30 Andrew Street Realty Trust, to pay for additional fees and expenses, not currently reflected on the either bill, Exhibit A or B. Even though Chester Chalupowski, Jr., had been removed from his position as Trustee of the 26-30 Andrew Street Realty Trust, and had been discharged from holding the Power of Attorney for his mother, Mary Jane Chalupowski, he, as well as his fiancé, Malgorzata B. Nabialcyzk issued a deposition subpoena for the Guardian Ad Litem to give testimony concerning a Superior Court matter entitled, *Chester Chalupowski, Jr., in his capacity as the Trustee of the 26-30 Andrew Street Realty Trust, Trustee of the Chalupowski Realty Trust, and individually, and Malgorzata B. Nabialcyzk v. Donna M. Chalupowski*, Essex Superior Court Docket No. 04-0879-A, with this deposition to occur on October 4, 2004.

The Guardian Ad Litem has no knowledge of the litigants outside the scope of her appointment as Guardian Ad Litem. There is no special friendship or other relationship between the Guardian Ad Litem and any of the litigants. As a result, in order to protect her rights and not be subjected to vexatious, harassing or annoying questions, it will be necessary to hire counsel. Counsel must become acquainted with the volumes of litigation involving the various litigants, prior to the time of the deposition. Although the acts complained of in the Superior Court Complaint do not raise issues as between Chester Chalupowski and Malgorzata B. Nabialcyzk and Judith Chalupowski Venuto, nonetheless, the Plaintiffs in that action have informed the Guardian that she should anticipate two days of deposition.

2

Therefore, the Guardian Ad Litem, Sharon D. Meyers, requests this Court award her not only her fair and reasonable attorney's fees, but also, fees and expenses related to the appearance and testimony at a deposition, currently scheduled for October 4 and 5, 2004, which it is anticipated could require counsel approximately ten hours to become acquainted with all of the material, and, if the deposition extends as long as suggested by Ms. Nabialicyzk, eight hours each day of October 4 and October 5, 2004, approximately 26-30 hours of attorney time.

Wherefore, the Guardian Ad Litem requests an additional sum of $6,750.00 to be used for the preparation and appearance at this deposition.

Respectfully submitted,

SHARON D. MEYERS, GUARDIAN AD LITEM FOR JUDITH (CHALUPOWSKI) VENUTO

Sharon D. Meyers
BBO #344680
30 Federal Street, Suite 200
Salem, MA 01970
(978) 745-0575

Dated: September 27, 2004

3

Attorney at Law
3C Federal Street
Suite 200
Salem, MA  01970-3520

Judith Chalupowski Venuto

|  | |
|---|---|
| Page: | 1 |
| | 12/16/01 |
| Account No: | 2211-00M |
| Statement No: | 1 |

| | | Hours | |
|---|---|---|---|
| **11/14/01** | | | |
| | SDM Review of pleadings | 2.00 | |
| **11/15/01** | | | |
| | SDM Draft Request for Restraining Order; draft Motion for Leave to File Documents; draft Orders; draft request to have additional time to file pleadings; telephone conference with Joe Corona; telephone conference with Jay Wheeler, potential buyer | 2.30 | |
| **11/16/01** | | | |
| | SDM Travel to and appearance at Newburyport Probate Court for Short Order of Notice; Multiple telephone conferences with Karl Stammen; telephone messages with Joe Corona; conference with client | 3.00 | |
| **11/17/01** | | | |
| | SDM Review of voicemails from client | 0.20 | |
| | For Professional Services Rendered | 7.50 | 1,687.50 |
| | Total Current Work | | 1,687.50 |
| | Balance Due | | $1,687.50 |

PAYMENT DUE UPON RECEIPT
INTEREST AT 18% PER ANNUM  ASSESSED AFTER 30 DAYS

Carney at Law
3. Federal Street
Suite 200
Salem, MA  01970-3520

Judith Chalupowski Venuto

                                              Page: 1
                                           01/17/02
                              Account No:  2211-00M
                              Statement No:      2

Previous Balance                          $1,687.50

                                        Hours

12/03/01
    KT  Telephone conference with client.      0.20

12/04/01
    SDM Legal research                         2.00

12/05/01
    SDM Legal research and draft memorandum    5.30

12/06/01
    KT  Preparation of documents for transmission to
        court                                  0.50
                                              ----
        For Professional Services Rendered     8.00   1,702.00

        Total Current Work                            1,702.00


        Finance Charge                                    1.66

        Balance Due                               $3,391.16
                                              ==========

        Your account is 30 days past due.


                    PAYMENT DUE UPON RECEIPT
        INTEREST AT 18% PER ANNUM  ASSESSED AFTER 30 DAYS

Attorney at Law
3. Federal Street
Suite 200
Salem, MA  01970-3520

Judith Chalupowski Venuto

Page: 1
02/07/02
Account No:  2211-00M
Statement No:       3

Previous Balance                                    $3,391.16

                                                Hours

01/02/02
     SDM Telephone conference with all parties to review
         settlement options and possible meeting         0.60

01/03/02
     SDM Telephone conference with Joe Corona             0.50

01/09/02
     SDM Telephone conference with client; telephone
         conference with Karl Stammen                     0.60

01/16/02
     SDM Conference with client                           1.20

01/21/02
     SDM Preparation for hearing; telephone conference
         with client                                      0.50

01/22/02
     SDM Travel to and appearance at Salem Probate Court
         for hearing on various motions; conference with
         client                                           2.50
     SDM Travel to and appearance at Salem Probate Court
         for hearing on motions; conference with client   2.30

01/25/02
     SDM Draft motion for further clarification; draft
         affidavit of Sharon D. Meyers; telephone
         conference with Karl Stammen                     1.50

01/29/02
     SDM Telephone conference with opposing attorney Joe
         Corona                                           0.20
                                                        _____  _____
         For Professional Services Rendered               9.90  2,227.50

A. ley at Law
3. ederal Street
Suite 200
Salem, MA 01970-3520

Judith Chalupowski Venuto

Page: 1
04/10/02
Account No:  2211-00M
Statement No:      4

Previous Balance                                          $5,636.14

                                                     Hours
02/05/02
     SDM Telephone conference with Ashley Ahearn, Clerk of
         Appeals Court                                 0.50
     KT  Telephone conference with Attorney Corona
         regarding single justice order; telephone
         conference with SDM regarding same.           0.20

02/06/02
     SDM Telephone conference with Joe Corona; telephone
         conference with Karl Stammen                  0.50

02/19/02
     SDM Travel to and appearance at Salem Probate Court  1.00

02/20/02
     SDM Telephone conference with other attorneys and
         client                                        0.40

03/06/02
     SDM Telephone conference with client.             0.20

03/20/02
     SDM Telephone conference with client.             0.20

03/21/02
     SDM Telephone conference with Stewart Snyder, Esq.
         regarding refinancing of house                0.60
                                                     ------
         For Professional Services Rendered            3.60    782.00

         Total Current Work                                    782.00


         Finance Charge                                        131.55

30 Federal Street
Suite 200
Salem, MA  01970-3520


Judith Chalupowski Venuto

Page: 1
05/10/02
Account No:  2211-00M
Statement No:        5


Previous Balance                                    $6,549.69


Finance Charge                                          83.38

Balance Due                                         $6,633.07
                                                    =========

Your account is 120 days past due.


PAYMENT DUE UPON RECEIPT
INTEREST AT 18% PER ANNUM  ASSESSED AFTER 30 DAYS

30 Federal Street
Suite 200
Salem, MA 01970-3520

Judith Chalupowski Venuto

                                              Page: 1
                                              07/06/02
                            Account No:    2211-00M
                            Statement No:         6

Previous Balance                                   $6,633.07

                                          Hours

06/04/02
    SDM Telephone conference with Joe Corona         0.50

06/06/02
    SDM Telephone conference with Appeals Court      0.30

06/21/02
    SDM Telephone conferences with Karl Stammen; Joseph
        Corona; draft status letter to Justice Barry    1.50

06/24/02
    SDM Conference with mediator                    0.80

    For Professional Services Rendered         3.10      697.50

    Total Current Work                                   697.50

    Finance Charge                                       185.22

    Balance Due                                       $7,515.79

    Your account is 180 days past due.

PAYMENT DUE UPON RECEIPT
INTEREST AT 18% PER ANNUM  ASSESSED AFTER 30 DAYS

SHARON D. METERS
30 Federal Street
Suite 200
Salem, MA 01970-3520

Judith Chalupowski Venuto

Page: 1
09/21/2004
Account No: 2211-00C
Statement No:        23

Draft Statement

Previous Balance                              $7,432.41

|  |  | Hours |  |
|---|---|---|---|
| 07/01/02 |  |  |  |
| SDM | Telephone conference with Joe Corona, client | 0.30 | 67.50 |
| 07/02/02 |  |  |  |
| SDM | Conference with client and other members of family at mediation with David Moran, Esq. | 2.80 | 630.00 |
| 07/03/02 |  |  |  |
| SDM | Telephone conference with Joe Corona; draft letter to Justice Berry; draft motion to continue; telephone conference with Clerk Stanton of Appeals Court; telephone conference with client | 1.30 | 292.50 |
| 07/22/02 |  |  |  |
| SDM | Conference with client; telephone conference with client | 1.80 | 405.00 |
| 07/23/02 |  |  |  |
| SDM | Travel to and appearance at Appeals Court for status conference | 3.50 | 787.50 |
| 07/27/02 |  |  |  |
| SDM | Draft pretrial conference memorandum | 1.00 | 225.00 |
| 08/01/02 |  |  |  |
| SDM | Telephone conference with Joe Corona; revision to pretrial conference memorandum; draft memo to Appeals Court regarding jurisdiction and stay | 1.80 | 405.00 |
| 08/02/02 |  |  |  |
| SDM | Travel to and appearance at Newburyport for pretrial conference | 3.50 | 787.50 |
| 08/07/02 |  |  |  |
| SDM | Conference with client | 1.00 | 225.00 |

|  |  | Hours |  |
|---|---|---|---|
| 09/16/02 |  |  |  |
| SDM | Telephone conference with Joe Corona | 0.20 | 45.00 |
| 10/16/02 |  |  |  |
| SV | Preparation and hand-filing of motion and accompanying affidavit (in opposition to Chester's motion) | 0.50 | 42.50 |
| 10/17/02 |  |  |  |
| SV | Preparation of Contempt Summons, correspondence to Sheriff with Summons and Complaint |  | n/c |
| 10/21/02 |  |  |  |
| SDM | Travel to and appearance at Salem Probate Court on hearing for removal of GAL | 2.70 | 607.50 |
| 11/06/02 |  |  |  |
| SV | Preparation of Notice of Deposition of Chester; letter to opposing counsel enclosing same; Preparation of Deposition Subpoena to Harbor Realty; letter to sheriff enclosing same; Letter to court for filing of Contempt Summons | 1.50 | 127.50 |
| 12/02/02 |  |  |  |
| NAB | Review of Court file; Draft memo regarding same | 3.10 | 263.50 |
| 12/03/02 |  |  |  |
| NAB | Review of court file; Conference w/SDM regarding same | 4.70 | 399.50 |
| 12/04/02 |  |  |  |
| SDM | Telephone conference with opposing attorney Karl Stammen | 0.30 | 67.50 |
| 12/05/02 |  |  |  |
| SDM | Telephone conference with Joe Corona | 0.30 | 67.50 |
| 12/09/02 |  |  |  |
| NAB | Review of court file | 0.50 | 42.50 |
| 12/10/02 |  |  |  |
| NAB | Review of file in Probate Court regarding C. Chalupowski accounting of Family Trust | 5.50 | 467.50 |
| 12/11/02 |  |  |  |
| SV | Preparation of Motion to Continue | 0.20 | 17.00 |
| SDM | Telephone conference with opposing attorney. | 0.30 | 67.50 |
| 12/12/02 |  |  |  |
| SLD | Draft motion to dismiss for Housing Court Action CHAL-Venuto v. Meyers | 2.00 | 250.00 |
| SV | Drafted Judith's phone messages | 0.40 | 34.00 |

|  |  | Hours |  |
|---|---|---|---|
| 12/13/02 |  |  |  |
| NAB | Review of documentation obtained from Probate Court | 3.20 | 272.00 |
| SDM | Revision to motion to quash subpoena; revision to motion to dismiss | 1.00 | 225.00 |
| SV | Letter to opposing counsel regarding deposition |  | n/c |
| 12/16/02 |  |  |  |
| NAB | Review of documents produced by Harbor Realty | 1.20 | 102.00 |
| SDM | Revision to affidavit | 0.30 | 67.50 |
| 12/17/02 |  |  |  |
| SLD | Appearance in housing court matter | 2.00 | 250.00 |
| 12/30/02 |  |  |  |
| NAB | Conference with SDM regarding docs produced by Harbor Realty; draft affidavit investigator Fees. support of complaint for contempt; review of Harbor Realty documents | 1.80 | 153.00 |
| 12/31/02 |  |  |  |
| NAB | Review of Harbor Realty documents | 2.10 | 178.50 |
| 01/02/03 |  |  |  |
| SLD | Appearance in civil (housing court) matter | 2.50 | 312.50 |
| 01/03/03 |  |  |  |
| NAB | Review of Harbor Realty documents and draft memo regarding same; telephone conference with Anne White; draft motion to compel deposition of Chester Chalupowski; telephone conference with Fidelity regarding Subpoena | 4.60 | 391.00 |
| 01/06/03 |  |  |  |
| NAB | Revision of memo regarding Harbor Realty documents | 4.10 | 348.50 |
| 01/13/03 |  |  |  |
| SV | Memorandum to file re: client phone calls | 0.30 | 25.50 |
| 01/15/03 |  |  |  |
| SDM | Conference with client | 1.30 | 292.50 |
| 01/21/03 |  |  |  |
| NAB | Telephone conference with J. Corona regarding trial | 0.20 | 17.00 |
| SV | Letter to client re: Judgment on Complaint for Civil Contempt | 0.20 | 17.00 |
| 01/27/03 |  |  |  |
| NAB | Review of Appeals Court file; discussion with other counsel about trial documents; |  |  |

|  | Hours |  |
|---|---|---|
| review of Harbor Realty documents obtained from Joe Corona | 3.40 | 289.00 |

**01/28/03**

| SDM Preparation for and taking of deposition of Chester Chalupowski | 2.00 | 450.00 |
| NAB Telephone conference with SDM regarding Harbor Realty documents |  | n/c |

**01/31/03**

| NAB Review of documents rec'd from Donna Chalupowski; telephone conference with Harbor Realty; draft memo regarding same | 3.10 | 263.50 |

**02/03/03**

| NAB Draft memo regarding conversation w/Anne White; telephone conference with Sherry Kerr, Harbor Realty; draft Subpoena for Fidelity Records; review "Accounts" for Family Trust; telephone conference with Salem Five | 3.70 | 314.50 |

**02/04/03**

| NAB Telephone conference with S. Kerr, former partner at Harbor Realty and memo regarding same; review Rob Wall Letter; revision of motion to compel | 4.60 | 391.00 |

**02/10/03**

| NAB Review of Harbor Realty documents regarding accounting calculations and draft memo re same | 3.30 | 280.50 |

**02/11/03**

| NAB Telephone conference with Salem Five Cents Bank Custodian of Records regarding deposition subpoena; review and organize documents to prepare for trial | 5.20 | 442.00 |

**02/13/03**

| SDM Telephone conference with Chester Chalupowski; telephone message with Joe Corona | 0.30 | 67.50 |

**02/19/03**

| SV Letter to Chester Chalupowski | 0.20 | 17.00 |
| SV Traveled to Eastern Bank to pick up documents produced pursuant to subpoena |  | n/c |

**02/21/03**

| SV Preparation of Affidavit of Notice, traveled to post office to send motion via priority mail to Chester Chalupowski | 0.60 | 51.00 |
| NAB Review of Eastern Bank documents; review of Eastern Bank documents; travel to Eastern Bank to obtain documents; telephone conference with Eastern Bank |  |  |

|  | | Hours | |
|---|---|---|---|
| and with Salem Five custodian | | 5.10 | 433.50 |

**02/24/03**

| SDM Travel to and appearance at Probate Court for hearing on motion to continue trial; prepare for deposition of Chester Chalupowski; prepare for trial | | 7.00 | 1,575.00 |
| SV Preparation of Trial Subpoenas; letters to Sheriff, hand-delivered; photocopied exhibits; conferences with witnesses | | 4.50 | 382.50 |
| NAB Conference with SDM regarding preparation for Chester Chalupowski's deposition; review of Eastern documents regarding allegations of fraud | | 7.30 | 620.50 |

**02/25/03**

| SV Preparation of documents for deposition | | 0.50 | 42.50 |
| NAB Review of documents in preparation for proposed statement of facts for trial | | 3.20 | 272.00 |
| SDM Deposition of Chester Chalupowski; negotiation of potential settlement terms; prepare for trial | | 12.00 | 2,700.00 |

**02/26/03**

| SDM Preparation for trial; appearance in Salem Probate Court for trial; draft settlement agreement; telephone conferences with Joe Corona and Lindsey Straus. | | 8.70 | 1,957.50 |

**02/27/03**

| SDM Telephone conference with Lindsay Straus, Joe Corona | | 0.70 | 157.50 |

**03/04/03**

| SV Drafted Judy's messages | | 1.00 | 85.00 |
| SDM Telephone conference with opposing attorney (Strauss) | | 0.60 | 135.00 |

**03/07/03**

| SDM Telephone conference with Paula Smith, Esq. proposed Guardian Ad Litem for Mary Jane | | 1.00 | 225.00 |

**03/10/03**

| SDM Travel to and appearance at Salem Probate Court for hearing | | 1.00 | 225.00 |

**03/12/03**

| SDM Telephone conference with opposing attorney (Strauss) regarding GAL selection | | 0.30 | 67.50 |

**03/20/03**

| SDM Telephone conference with Debbie Bystrom regarding change of date for hearing; telephone conference with client | | 0.50 | 112.50 |

|  |  | Hours |  |
|---|---|---|---|
| **03/24/03** | | | |
| SV | Multiple conferences with opposing counsels to reschedule hearing; draft Judy messages | 0.50 | 42.50 |
| **04/07/03** | | | |
| SDM | Telephone conference with opposing attorney | 0.60 | 135.00 |
| **04/11/03** | | | |
| SDM | Telephone conference with client. | 0.30 | 67.50 |
| **04/15/03** | | | |
| NAB | Telephone conference with co-counsel Corona regarding enforcement of settlement agreement and draft memo re same | | n/c |
| **04/23/03** | | | |
| SV | Draft of client's phone message | 0.20 | 17.00 |
| **04/24/03** | | | |
| SDM | Telephone conference with opposing attorney (Corona) | 0.70 | 157.50 |
| **04/25/03** | | | |
| SDM | Telephone conference with opposing attorney (Strauss) | 0.60 | 135.00 |
| **04/28/03** | | | |
| SDM | Travel to and appearance at Salem Probate Court for hearing on various motions | 3.20 | 720.00 |
| **06/09/03** | | | |
| SDM | Telephone conference with John Welch | 0.70 | 157.50 |
| **06/18/03** | | | |
| SDM | Telephone conference with John Welch | 0.60 | 135.00 |
| **06/19/03** | | | |
| SV | Review of file for pertinent orders/memorandums, copied same, letter to John Welch, GAL, enclosing same | 1.00 | 85.00 |
| **08/04/03** | | | |
| SV | Letter to Welch, GAL, copied docs | | n/c |
| **08/05/03** | | | |
| SDM | Letter to client; telephone conference with John Welch | 0.60 | 135.00 |
| **08/06/03** | | | |
| SDM | Telephone conference with client; telephone conference with John Welch; letter to client | 0.50 | 112.50 |

|  |  | Hours |  |
|---|---|---|---|
| **08/08/03** | | | |
| SV | Conference with Welch, GAL | 0.10 | 8.50 |
| **09/15/03** | | | |
| NAB | Draft Subpoenas for Chester Chalupowski; Conf w/SDM regarding same | 3.10 | 263.50 |
| **09/16/03** | | | |
| SDM | Legal research; review of court documentation concerning accounting | 1.50 | 337.50 |
| **09/17/03** | | | |
| SV | Letter to sheriff | | n/c |
| **09/19/03** | | | |
| SDM | Telephone conference with Atty. Welch; Atty Corona | 0.70 | 157.50 |
| **10/08/03** | | | |
| SV | Letter to client | | n/c |
| SDM | Telephone conference with Trooper LaPlata | 1.00 | 225.00 |
| **10/09/03** | | | |
| SDM | Telephone conference with John Welch | 0.30 | 67.50 |
| **10/10/03** | | | |
| NAB | Conference with SDM regarding client | | n/c |
| **10/15/03** | | | |
| SV | Letter to Sheriff, hand-delivered | 0.30 | 25.50 |
| **10/23/03** | | | |
| SV | Review of file for specific order, faxed to Trooper LaPlata, hand-filed motions with court | 0.60 | 51.00 |
| **11/04/03** | | | |
| SDM | Telephone conference with Trooper LaPlata | 0.40 | 90.00 |
| **11/05/03** | | | |
| SDM | Telephone conference with Joe Corona; preparation of witness list; preparation of exhibit list | 1.80 | 405.00 |
| **11/07/03** | | | |
| SV | Preparation of Motions, hand-filed with court | 0.20 | 17.00 |
| SDM | Telephone conference with client. | 0.20 | 45.00 |
| **11/10/03** | | | |
| SV | Letter to client | | n/c |
| SDM | Preparation for trial | 4.00 | 900.00 |
| **11/11/03** | | | |
| NAB | Prepare for trial | 0.60 | 51.00 |
| SDM | Preparation for trial; conference with Joe Corona; telephone conference with Jim | | |

|  |  | Hours |  |
|---|---|---|---|
| | Tewhey; telephone conference with John Welch | 2.30 | 517.50 |
| **11/12/03** | | | |
| | SDM Telephone conference with Joseph Brodigan | 0.20 | 45.00 |
| **11/14/03** | | | |
| | SV  Letter to opposing counsel regarding deposition exhibits | | n/c |
| | SDM Telephone conference with Joseph Brodigan; telephone conference with Accountant Kelliher | 0.30 | 67.50 |
| **11/17/03** | | | |
| | SV  Draft Motion to Dismiss Contempt, telephone conferences with multiple opposing counsel | 1.00 | 85.00 |
| | SDM Telephone conference with opposing attorney, James Tewhey; telephone conference with John Welch; telephone conference with Astrid afKlintenberg | 1.10 | 247.50 |
| **11/18/03** | | | |
| | SV  Conference with client | | n/c |
| | NAB Preparation of exhibits for trial | 4.20 | 357.00 |
| | SDM Telephone conference with Jim Tewhey; telephone conference with John Welch; telephone conference with Joe Corona; telephone conference with Astrid AfKlintenberg; conference with Trooper La Plata | 2.40 | 540.00 |
| **11/19/03** | | | |
| | SDM Telephone conferences with all attorneys regarding continuance | 1.20 | 270.00 |
| **11/20/03** | | | |
| | SV  Telephone conference with opposing counsel | | n/c |
| | SDM Telephone conference with opposing attorney. | 0.20 | 45.00 |
| **11/21/03** | | | |
| | SDM Conference with client; prepare for trial | 4.00 | 900.00 |
| **11/25/03** | | | |
| | SV  Draft Motion to Compel, Affidavit of Notice, letter to all counsel | 1.30 | 110.50 |
| **12/01/03** | | | |
| | SDM Telephone conference with opposing attorney and others; letter to Jim Tewehy; telephone conference with court clerk | 0.60 | 135.00 |
| | SV  Letter to opposing counsel, telephone conference with Court | 0.40 | 34.00 |

|  | Hours | |
|---|---|---|
| **12/03/03** | | |
| SDM Telephone conference with Trooper LaPlata; telephone conference with John Welch; draft motion to compel production of documents | 1.40 | 315.00 |
| SV  Draft Motion for Short Order of Notice | 0.40 | 34.00 |
| **12/04/03** | | |
| SDM Letter to counsel | 0.20 | 45.00 |
| SV  Letter to opposing counsel | | n/c |
| **12/05/03** | | |
| SDM Review of documents produced by Chester | 1.00 | 225.00 |
| SV  Letter to opposing counsel, hand-delivered | 0.50 | 42.50 |
| **12/08/03** | | |
| SDM Conference with Jim Tewehy and John Welch; telephone conference with Joe Corona | 2.50 | 562.50 |
| **12/09/03** | | |
| SDM Travel to and appearance at Lawrence Probate Court for hearing on motion to compel | 2.50 | 562.50 |
| **12/10/03** | | |
| SDM Draft letter to Tewehy; draft proposed findings; review documents; telephone conference with Jeff Sweeney, Esq.; telephone conference with client | 2.20 | 495.00 |
| **12/12/03** | | |
| NAB Review of documents produced by def. Chester Chalupowski | 2.70 | 229.50 |
| **12/18/03** | | |
| SDM Review of documents; review of documents; telephone conference with Trooper LaPlata; telephone conference with Astrid afKlintenberg | 1.50 | 337.50 |
| SV  Letter to all opposing counsel, photocopy documents from Sovereign Bank | | n/c |
| **12/19/03** | | |
| SDM Telephone conference with Joe Corona | 0.30 | 67.50 |
| **12/23/03** | | |
| SDM Telephone conference with Trooper LaPlata | 0.30 | 67.50 |
| **12/29/03** | | |
| SV  Letter to Chester Chalupowski, letter to all counsel | 0.40 | 34.00 |
| **12/30/03** | | |
| SDM Telephone conference with Jeff Sweeney; telephone conference with John Welch; | | |

|  | Hours |  |
|---|---|---|
| telephone conference with Jim tewhey | 1.00 | 225.00 |
| SV Letter to all counsel | 0.20 | 17.00 |
| NAB Review Fidelity documents; | 2.10 | 178.50 |

**12/31/03**
SDM Telephone conference with John Welch;
telephone message with Jamie Robrado    0.60    135.00

**01/02/04**
SDM Telephone conference with opposing
attorney; telephone conference with
Astrid AfKlintenberg    0.40    90.00

**01/05/04**
NAB Telephone conference with J. Corona; Conf
w/SAV regarding status of case    n/c

**01/06/04**
NAB Review of produced documents    5.10    433.50
SDM Telephone conference with Jamie Robredo,
case worker    0.40    90.00

**01/08/04**
SV  Telephone conference with Appeals Court
regarding hearing continuance    n/c
SDM Telephone conference with Jamie Robredo    0.20    45.00

**01/09/04**
SDM Telephone conference with Joe Corona    0.30    67.50

**01/13/04**
SDM Telephone conference with Donna
Chalupowski; telephone conference with
Joe Corona    0.50    112.50

**01/20/04**
NAB Telephone conference with co-counsel
Welch regarding trial    n/c

**01/22/04**
SDM Travel to and appearance at Salem Probate
Court for status and settlement
conference; telephone conference with Jim
Tewhey and Donna Chalupowski regarding
keys    4.30    967.50

**01/23/04**
SDM Conference with all counsel: settlement
discussions and preparation for trial;
telephone conference with Jamie Robredo    6.40    1,440.00
SV  Preparation for trial    1.00    85.00
NAB Preparation for Trial    7.00    595.00

**01/24/04**
SDM Preparation for trial; telephone
conferences with all counsel    9.00    2,025.00
NAB Preparation for Trial    8.00    680.00

|  |  | Hours |  |
|---|---|---|---|
| 01/25/04 |  |  |  |
| SDM | Preparation for trial and further settlement discussions | 8.00 | 1,800.00 |
| 01/26/04 |  |  |  |
| SDM | Travel to and appearance at Salem Probate court for trial and further negotiations | 5.00 | 1,125.00 |
| NAB | Travel to and appearance at probate court hearing; Review documents regarding settlement | 5.60 | 476.00 |
| 01/27/04 |  |  |  |
| NAB | Telephone conference with opposing counsel regarding settlement; TCT Sovereign Bank regarding LOC to Chester Chalupowski; Review Sovereign Bank documents recd from Tewey; Conf w/SDM regarding same | 4.50 | 382.50 |
| SDM | Conference with various counsel; telephone conference with client; telephone conference with case worker | 4.00 | 900.00 |
| 01/28/04 |  |  |  |
| SV | Review of checks from Sovereign Bank | 0.50 | 42.50 |
| 01/29/04 |  |  |  |
| SDM | Travel to and appearance at Salem Probate court for hearing on settlement; telephone conference regarding rejection of settlement with Joe Corona; telephone conference with Jamie Robredo | 3.20 | 720.00 |
| 01/30/04 |  |  |  |
| NAB | Review of and organization of files | 1.10 | 93.50 |
| 02/02/04 |  |  |  |
| SDM | Telephone conference with Donna Chalupowski; telephone conference with Joe Corona; telephone conference with John Welch; telephone conference with client | 1.10 | 247.50 |
| SDM | Telephone conference with client; telephone conference with John Welch; telephone conference with Joe Corona | 0.70 | 157.50 |
| 02/09/04 |  |  |  |
| NAB | Conference with SAV & SDM regarding status of case |  | n/c |
| SDM | Telephone conference with multiple attorneys and client | 0.40 | 90.00 |
| 02/11/04 |  |  |  |
| SDM | Telephone conference with John Welch; telephone conference with Elaine DePrisco, Sovereign Bank | 0.70 | 157.50 |

|                                                                      | Hours |        |
|----------------------------------------------------------------------|-------|--------|
| **02/23/04**                                                         |       |        |
| SDM Telephone conference with Jim Tewhey                             | 0.30  | 67.50  |
| **02/24/04**                                                         |       |        |
| SDM Conference with Donna Chalupowski, Joseph                        |       |        |
| Corona, Judy Venuto; telephone conference                            |       |        |
| with John Welch                                                      | 2.00  | 450.00 |
| NAB Conference with SDM regarding Soverign                           |       |        |
| Bank LOC; Review bank records                                        | 1.90  | 161.50 |
| **02/27/04**                                                         |       |        |
| SDM Telephone conference with Jim Tewhey                             | 0.20  | 45.00  |
| NAB Telephone conference with J. Welch                               |       |        |
| regarding Fidelity Bank documents and                                |       |        |
| status of arbitration; Conf w/SDM                                    |       |        |
| regarding same; Review Fidelity                                      |       |        |
| documents;                                                           | 2.10  | 178.50 |
| **03/01/04**                                                         |       |        |
| NAB Conference with SDM regarding Sovereign                          |       |        |
| Bank LOC                                                             |       | n/c    |
| **03/02/04**                                                         |       |        |
| NAB Telephone conference with J. Welsh                               |       |        |
| regarding Salem Five Bank documents and                              |       |        |
| status of arbitration; Review Salem Five                             |       |        |
| documents                                                            |       | n/c    |
| **03/03/04**                                                         |       |        |
| SDM Telephone conference with John Welch;                            |       |        |
| telephone conference with Joseph Corona;                             |       |        |
| telephone conference with Jamie Robredo                              | 0.70  | 157.50 |
| **03/09/04**                                                         |       |        |
| NAB Telephone conference with J. Welsh                               |       |        |
| regarding Fidelity accounts; Draft memo                              |       |        |
| regarding same; Review C. Chalupowski                                |       |        |
| documents and Fidelity documents                                     | 2.40  | 204.00 |
| **03/10/04**                                                         |       |        |
| SDM Telephone conference with John Welch;                            |       |        |
| review documents from Fidelity; telephone                            |       |        |
| conference with Jim Tehwey                                           | 0.70  | 157.50 |
| **03/12/04**                                                         |       |        |
| NAB Conference with SDM regarding status of                          |       |        |
| case; Draft ltr to Tewey; Draft ltr to J.                            |       |        |
| Welsh                                                                | 0.90  | 76.50  |
| SDM Conference with all counsel                                      | 2.60  | 585.00 |
| **03/23/04**                                                         |       |        |
| NAB Telephone conference with J. Welsh                               |       |        |
| regarding Salem Five documents; organize                             |       |        |
| files; Review bank documents                                         | 3.90  | 331.50 |
| **04/01/04**                                                         |       |        |
| SV  Review of client receipts, sort through                          |       |        |

|                                                                                                              | Hours |        |
|--------------------------------------------------------------------------------------------------------------|-------|--------|
| to determine which receipts pertain to expenses for property                                                 | 1.20  | 102.00 |
| **04/09/04**                                                                                                 |       |        |
| NAB Telephone conference with J. Welch; Review Salem Five documents                                          | 1.10  | 93.50  |
| **04/12/04**                                                                                                 |       |        |
| NAB Conference with SDM regarding status of case                                                             |       | n/c    |
| **04/13/04**                                                                                                 |       |        |
| SDM Telephone conference with Trooper LaPlata; telephone conference with John Welch                          | 0.50  | 112.50 |
| **04/16/04**                                                                                                 |       |        |
| SDM Telephone conference with Joe Corona; telephone conference with Donna Shear (case worker)                | 1.30  | 292.50 |
| **04/19/04**                                                                                                 |       |        |
| SDM Telephone conference with Donna Shear                                                                    | 0.70  | 157.50 |
| **04/23/04**                                                                                                 |       |        |
| NAB Review of SDT to Fidelity issued by Welch                                                                |       | n/c    |
| **04/26/04**                                                                                                 |       |        |
| SDM Telephone conference with John Welch                                                                     | 0.30  | 67.50  |
| **04/28/04**                                                                                                 |       |        |
| SV Review of receipts, draft Summary of Expenses, copy as trial exhibit                                      | 1.80  | 153.00 |
| **04/29/04**                                                                                                 |       |        |
| SV Letter to opposing counsel                                                                                | 0.20  | 17.00  |
| **04/30/04**                                                                                                 |       |        |
| NAB Conference with SDM; TCF J. Welsh                                                                         |       | n/c    |
| **05/03/04**                                                                                                 |       |        |
| NAB Telephone call to Atty Corona; Draft memo regarding same; TCF J. Welsh regarding same                    | 1.00  | 85.00  |
| **05/04/04**                                                                                                 |       |        |
| NAB Telephone conference w/Atty Corona regarding Opposition to M/Withdraw; TCT Atty Welsh regarding same; Draft memo regarding same; Conf w/SAV regarding same | 2.10  | 178.50 |
| **05/07/04**                                                                                                 |       |        |
| NAB Telephone conference with J. Welsh; Draft ltr to Welsh regarding client's signature                      | 0.80  | 68.00  |
| **05/10/04**                                                                                                 |       |        |
| NAB Conference with SDM regarding trial                                                                       |       | n/c    |

|  |  | Hours |  |
|---|---|---|---|
| SDM | Travel to and appearance at Salem Probate Court; telephone conference with client; telephone conference with opposing counsel | 2.50 | 562.50 |

**05/11/04**

| NAB | Telephone conference with J. Welsh regarding status of case; Draft memo regarding same; Conf w/SDM regarding same; Review documents for trial exhibits | 4.40 | 374.00 |
|---|---|---|---|

**05/12/04**

| SDM | Travel to and appearance at Salem Probate Court; draft proposed order; telephone conference with opposing attorney; telephone conference with Anthony Metaxas | 3.60 | 810.00 |
|---|---|---|---|

**05/13/04**

| SV | Draft summary of expenses | 0.30 | 25.50 |
|---|---|---|---|
| SDM | Travel to and appearance at Salem Probate Court; multiple telephone calls to opposing attorney; revisions to motion | 1.80 | 405.00 |

**05/14/04**

| NAB | Conference with SDM regarding status of case; TCF J. Welsh; Prepare for trial | 3.10 | 263.50 |
|---|---|---|---|
| SDM | Travel to and appearance at Salem Probate Court; telephone conference with Jim Tewhey; telephone conference with Anthony Metaxes; telephone conference with Sovereign Bank; telephone conference with Salem Five | 3.40 | 765.00 |

**05/17/04**

| NAB | Prepare for trial; Organize trial exhibits; Conf w/SDM regarding same; TCF J. Welsh regarding trial; Review new bank documents; Draft ltr to escrow agent | 3.90 | 331.50 |
|---|---|---|---|
| SDM | Travel to and appearance at Salem Probate court; various conferences with client, Anthony Metaxas, other counsel; telephone conference with Sovereign Bank | 5.50 | 1,237.50 |

**05/18/04**

| NAB | Preparation of exhibits for trial; Conf w/SDM regarding same | 4.10 | 348.50 |
|---|---|---|---|
| SDM | Preparation for trial; telephone conference with Attorney Metaxas and with other counsel | 3.70 | 832.50 |

**05/19/04**

| SV | Telephone conference with Rose Insurance, draft Deposition Subpoena, letter to Rose Insurance | 0.80 | 68.00 |
|---|---|---|---|
| SDM | Conference with all counsel; multiple telephone conferences with all counsel; conference with client | 5.20 | 1,170.00 |

|  |  | Hours |  |
|---|---|---|---|
| **05/20/04** | | | |
| SDM | Conference with client; telephone conference with all counsel; telephone conference with Anthony Metaxas; prepare for trial | 2.10 | 472.50 |
| **05/21/04** | | | |
| NAB | Prepare for trial | 0.90 | 76.50 |
| SV | Draft Trial Subpoena for Stuart Steinberg, letter to sheriff, hand-deliver to sheriff, telephone conference with Steinberg, travel to Steinberg's office to pick up documents | 1.20 | 102.00 |
| **05/23/04** | | | |
| SDM | Preparation for trial | 4.00 | 900.00 |
| **05/24/04** | | | |
| NAB | Prepare for and attend trial | 6.50 | 552.50 |
| SDM | Travel to and appearance at Trial; preparation for trial | 13.30 | 2,992.50 |
| **05/25/04** | | | |
| NAB | Preparation for and attendance at trial; Conf w/SDM and J. Welsh regarding judgment; Conf w/SDM regarding Statement of Facts | | n/c |
| SDM | Travel to and appearance at Trial; draft proposed findings; multiple telephone conferences with Appeals Court | 12.00 | 2,700.00 |
| **05/26/04** | | | |
| SV | Review of bills, prepare summary | 2.00 | 170.00 |
| SDM | Draft findings of fact; multiple telephone conferences with all counsel | 4.50 | 1,012.50 |
| **05/27/04** | | | |
| SDM | Telephone conference with opposing attorney; telephone conference with John Welch; review proposed changes to Findings | 0.50 | 112.50 |
| **05/28/04** | | | |
| SDM | Preparation of bill | | n/c |
| **05/31/04** | | | |
| SDM | Preparation and revision of Proposed findings; draft affidavit of attorney's fees and motion | 4.00 | 900.00 |
| **06/01/04** | | | |
| NAB | Review of and organization of files | 3.10 | 263.50 |
| **06/02/04** | | | |
| SDM | Telephone conference with opposing attorney; telephone conference with Elaine DePrisco. (Appeals Court) | 0.40 | 90.00 |

|  |  | Hours |  |
|--|--|--|--|

**06/04/04**
SDM Telephone conference with Jim Tewhey (x2).  —  0.30  67.50

**06/14/04**
NAB Draft ltr to opposing counsel regarding evidentiary hearing; Conf w/SDM regarding same  —  0.70  59.50

**06/15/04**
NAB Draft ltr to Tewey  —  0.60  51.00

**08/11/04**
SDM Telephone conference with John Welch  —  0.30  67.50

**08/12/04**
SDM Draft motion for protective order; ex parte motion for short order of notice and protective order  —  3.20  720.00

**08/13/04**
SV Multiple letters to sheriff's department, hand-delivered  —  0.40  34.00

**08/19/04**
SDM Review of decision  —  1.00  225.00

For Professional Services Rendered  —  416.50  67,330.50

Recapitulation

| Timekeeper | Hours | Hourly Rate | Total |
|--|--|--|--|
| Sharon D. Meyers | 226.20 | $225.00 | $50,895.00 |
| Samantha L Dean | 6.50 | 125.00 | 812.50 |
| Sandra Valaitis | 26.40 | 85.00 | 2,244.00 |
| Nicoli Ann Bailey | 157.40 | 85.00 | 13,379.00 |

| | |
|--|--|
| 11/07/02 Sheriff's fee | 27.20 |
| 11/18/02 Sheriff's fee | 28.35 |
| 02/01/03 Sheriff's fee | 26.05 |
| 02/03/03 Postage. | 13.65 |
| 02/21/03 Postage. | 13.65 |
| 03/05/03 Sheriff's fee | 31.25 |
| 03/05/03 Sheriff's fee (Salem Five) | 25.65 |
| 03/05/03 Sheriff's fee (Chester) | 55.65 |
| 03/05/03 Copies (Eastern Bank records) | 88.75 |
| 03/05/03 Copies (Salem Five bank records) | 76.00 |
| 03/05/03 Sheriff's fee (Mary Jane) | 55.65 |
| 03/05/03 Sheriff's fee (Judy) | 21.95 |
| 03/19/03 Deposition expense: Chester Chalupowski | 636.00 |
| 03/28/03 Deposition expense: Chester (cancellation fee) | 150.00 |
| 10/09/03 Sheriff's fee | 89.50 |
| 11/04/03 Sheriff's fee | 77.70 |
| 11/20/03 Certified Copy Fee: Salem District Court | 20.00 |
| 12/05/03 Research/copy fees: Sovereign Bank | 86.00 |

```
02/02/04 Copies: Sovereign Bank                             41.00
04/28/04 Federal Express                                    12.67
05/21/04 Sheriff's fee :   Stuart Steinberg                 47.30
05/27/04 Sheriff's fee :   Chester Chalupowski              43.70
06/02/04 Sheriff's fee. Service of Stuart Steinberg of
         Trial subpoena.                                    47.30
06/02/04 Sheriff's fee: Chester Chalupowski                 90.50
07/09/04 Sheriff's fee:   Chester Chalupowski               90.50
08/16/04 Sheriff's fee. Service to Donna.                   40.70
08/18/04 Sheriff's fee. Service to Malgorzata Nabialczyk    40.70
08/18/04 Sheriff's fee. Service to Chester                  40.70
                                                          ─────────
         Total Expenses                                  2,018.07

         Total Current Work                             69,348.57


         Balance Due                                   $76,780.98
                                                       ══════════
```

Your account is 180 days past due.

30 Federal Street
Suite 200
Salem, MA 01970-3520


Judith Chalupowski Venuto
30 Andrew Street
Salem  MA  01970

Page: 1
09/27/2004
Account No: 2211-04M
Statement No:        1


Appeals Court Contempt


|  | Hours |  |
|---|---|---|
| **12/23/03** | | |
| SDM Draft motion for contempt | 1.30 | 292.50 |
| **12/24/03** | | |
| SDM Telephone conference with Appeals Court; revision to motion | 0.70 | 157.50 |
| **12/29/03** | | |
| SDM Telephone conference with Appeals Court | 0.20 | 45.00 |
| **01/12/04** | | |
| SDM Telephone conference with client; telephone conference with Joe Corona; telephone conference with Donna Chalupowski | 0.70 | 157.50 |
| **01/15/04** | | |
| SDM Travel to and appearance at Appeals Court for hearing; preparation for hearing | 4.50 | 1,012.50 |
| **02/03/04** | | |
| NAB Telephone conference with Sovereign Bank | 0.50 | 42.50 |
| **02/04/04** | | |
| SV  Letter to Appeals Court | 0.20 | 17.00 |
| SDM Telephone conference with John Welch | 0.30 | 67.50 |
| **02/06/04** | | |
| SDM Telephone conference with Trooper LaPlata | 0.40 | 90.00 |
| **02/10/04** | | |
| NAB Conference with SDM regarding Sovereign Bank | 0.50 | 42.50 |
| **02/11/04** | | |
| SDM Conference with client, conference with state trooper | 1.80 | 405.00 |
| **02/25/04** | | |
| SDM Conference with Heritage Bank personnel; telephone conference with Sovereign Bank | | |

Appeals Court Contempt

|  | Hours |  |
|---|---|---|
| investigator; telephone conference with Sovereign Bank counsel; telephone conference with John Welch | 1.80 | 405.00 |
| **02/26/04** | | |
| SDM Telephone conference with Ashley Ahearn, Clerk, Appeals Court | 0.60 | 135.00 |
| **03/01/04** | | |
| SDM Telephone conference with Denise Gaudet, V.P. Sovereign Bank | 1.00 | 225.00 |
| **03/12/04** | | |
| SDM Conference with all counsel; letter to Appeals Court regarding status | 0.90 | 202.50 |
| **05/25/04** | | |
| SV Draft Witness Subpoena for Elaine DePrisco, letter to DePrisco, letter to sheriff, draft summary of expenses, copy invoices, draft Subpoena to Chester Chalupowski, letter to sheriff, hand-deliver to sheriff | 2.50 | 212.50 |
| SDM Multiple telephone calls to/from Appeals Court; telephone conference with Joe Stanton, Appeals Court | 0.90 | 202.50 |
| **05/26/04** | | |
| SDM Multiple telephone conferences with Appeals Court; draft status report for Appeals Court; multiple telephone conferences with all counsel | 2.20 | 495.00 |
| **06/04/04** | | |
| SDM Letter to Appeals Court; draft Certificate of Service; preparation for hearing; multiple telephone calls to all counsel and client | 1.40 | 315.00 |
| **06/07/04** | | |
| SDM Telephone conference with Ashley Ahearn; letter to Appeals Court; research UCC/secured transaction | 1.70 | 382.50 |
| **06/08/04** | | |
| SDM Telephone conference with counsel; prepare documents for hearing; telephone conference with client and with Donna Chalupowski; preparation of subpoenas | 2.50 | 562.50 |
| **06/09/04** | | |
| SDM Preparation for hearing; travel to Sovereign Bank to interview Elaine DePrisco (with counsel); telephone conferences with counsel and with client; letter to all counsel | 4.80 | 1,080.00 |

Appeals Court Contempt

|  |  | Hours |  |
|---|---|---|---|
| **06/10/04** |  |  |  |
| SDM | Travel to and appearance at Appeals Court for hearing; preparation for second day of hearing | 10.00 | 2,250.00 |
| **06/11/04** |  |  |  |
| SDM | Travel to and appearance at second day of hearing | 5.50 | 1,237.50 |
| **07/02/04** |  |  |  |
| SDM | Review of transcript and prepare edits | 3.00 | 675.00 |
| **07/08/04** |  |  |  |
| SDM | Multiple telephone conferences with Attorney Tewhey | 0.50 | 112.50 |
| **07/14/04** |  |  |  |
| SDM | Telephone conference with Attorney Tewhey to review transcript | 0.70 | 157.50 |
| **07/15/04** |  |  |  |
| SDM | Legal research | 1.50 | 337.50 |
| **07/22/04** |  |  |  |
| SDM | Legal research | 4.00 | 900.00 |
| **07/23/04** |  |  |  |
| SDM | Draft Memorandum of Law | 5.00 | 1,125.00 |
| **07/28/04** |  |  |  |
| SDM | Revision of Memorandum and draft motion and affidavit | 3.00 | 675.00 |
| **07/29/04** |  |  |  |
| SDM | Final revisions to affidavit, memorandum and motion | 2.50 | 562.50 |
|  | For Professional Services Rendered | 67.10 | 14,579.50 |

| | |
|---|---|
| 05/26/04 Sheriff's fee: Service of Chester Chalupowski | 90.50 |
| 05/27/04 Sheriff's fee: Service of Chester Chalupowski, Witness Subpoena | 53.70 |
| 05/27/04 Sheriff's fee: Service of Elaine DePrisco c/o Denise Gaudet, Sovereign Bank | 56.70 |
| 06/07/04 Sheriff's fee: Service of Elaine DePrisco, Subpoena Duces Tecum | 90.30 |
| 06/08/04 Sheriff's fee: Service of Donna Chalupowski | 86.90 |
| 06/09/04 Sheriff's fee: In-Hand Service of Chester Chalupowski (James Tewhey, Esq.) | 96.70 |
| 06/09/04 Parking on multiple days ($15.00 x $5.00) | 75.00 |
| 06/11/04 Guardian ad Litem John Welch: see affidavit attached hereto | 700.50 |
| 07/07/04 Transcript (vol.1) | 280.00 |
| 07/07/04 Transcript (vol. 2) | 225.00 |

Judith Miller/Vanity

Appeals Court Contempt

|                     |             |
|---------------------|-------------|
| Total Expenses      | 1,755.30    |
| Total Current Work  | 16,334.80   |
| Balance Due         | $16,334.80  |

**PLEASE NOTE THAT THIS BILL IS FOR SERVICES THROUGH
AUGUST 2004**